**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| ESTATE OF LANE CAVINESS, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 22-cv-23519-KMM-LFL |
| ATLAS AIR, INC., *et al.*, | |
| Defendants. | |

**DEFENDANTS' CONSOLIDATED MEMORANDUM IN SUPPORT OF**
**INCORPORATED MOTIONS TO DISMISS PURSUANT TO**
**RULES 12(B)(1), 12(B)(2), AND 12(B)(6)**

# TABLE OF CONTENTS

**Page**

I.    The Vast Majority of Plaintiffs' Claims Against Atlas and All the Claims Against FSI and Encompass Should Be Dismissed for Lack of Personal Jurisdiction. ................. 5

    A.    Atlas Is Not Subject to General Jurisdiction in Florida. ........................................ 6

    B.    Atlas Is Not Subject to Specific Jurisdiction As to Claims of Plaintiffs Who Work Outside of Florida. .................................................................................... 9

II.   FSI Is Not Subject to Personal Jurisdiction As to Any Claims. ..................................... 11

    A.    FSI Is Not Subject to General Personal Jurisdiction in Florida. ......................... 11

    B.    FSI Is Not Subject to Specific Personal Jurisdiction in Florida. ........................ 12

III.  Encompass Is Not Subject to Personal Jurisdiction As to Any Claims. .......................... 12

IV.   All Claims Against FSI Must Be Dismissed Due to a Mandatory Arbitration Clause. .......................................................................................................................... 13

V.    The Scattershot Complaint Fails to State Any Claim Upon Which Relief Can Be Granted Against Any Defendant. ................................................................................... 17

    A.    Plaintiffs' Complaint Is a "Shotgun" Pleading That Should Be Dismissed. ....... 17

    B.    Plaintiffs' Claims Against Atlas, FSI, and Encompass under Title VII and GINA Must Be Dismissed. ................................................................................. 18

        1.    Counts I, II, IV, and V: Plaintiffs Do Not Allege They Exhausted Administrative Remedies. ......................................................................... 18

        2.    Plaintiffs' Allegations Fail to State Title VII and GINA Claims. ............ 20

            (a)    Count I: Plaintiffs Fail Plausibly To Allege a Religious Accommodations Claim. .............................................................. 20

            (b)    Count II: Plaintiffs Fail Plausibly To State a Retaliation Claim. ............................................................................................ 24

            (c)    Counts IV and V: Plaintiffs Fail Plausibly To State a GINA Claim. ........................................................................................... 25

    C.    Count III: Plaintiffs' Section 1983 Constitutional Claims Against Atlas Fail. .................................................................................................................... 27

        1.    Plaintiffs' Claims Do Not State Any Constitutional Violations. ............. 27

        2.    Atlas Is Not a State Actor That Could Violate the Constitution. ............. 29

    D.    Count VI: The Court Lacks Subject Matter Jurisdiction Over the Atlas Pilot Employees' Claims for Breach of Their Collective Bargaining Agreement. ......................................................................................................... 32

    E.    Count VII: Plaintiffs' Fraud Claims Against All Defendants Fail. ..................... 33

# TABLE OF CONTENTS
(continued)

**Page**

F.   Count VIII: Plaintiffs' Intentional Infliction of Emotional Distress ("IIED") Claims Against All Defendants Fail to Allege the Required Elements.................................................................................................. 37

    1.   Defendants' Actions Involve Ordinary Workplace Conduct That Is Not Outrageous as a Matter of Law........................................................ 37

    2.   The Complaint Does Not Plausibly Allege Intent. ................................. 39

    3.   The Complaint Does Not Plausibly Allege Severe Suffering.................. 40

## TABLE OF AUTHORITIES

Page

CASES

*AFL-CIO v. City of Miami,*
637 F.3d 1178 (11th Cir. 2011) ...................................................................4, 35, 36

*Agher v. Envoy Air Inc.,*
2018 WL 6444888 (C.D. Cal. Oct. 12, 2018)...........................................................8

*Air Line Pilots Ass'n, Int'l v. U.S. Airways Grp., Inc.,*
609 F.3d 338 (4th Cir. 2010) ..................................................................................33

*Ananias v. St. Vincent Med. Grp., Inc.,*
2022 WL 17752208 (S.D. Ind. Dec. 19, 2022).......................................................22

*Anderson v. United Airlines, Inc.,*
577 F. Supp. 3d 1324 (M.D. Fla. 2021) .....................................................17, 18, 29

*Ansonia Bd. of Educ. v. Philbrook,*
479 U.S. 60 (1986)...................................................................................................23

*Arnold v. United Parcel Serv., Inc.,*
2012 WL 1035441 (M.D. Ga. Mar. 27, 2012)........................................................20

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...................................................................................................4

*AT&T Techs., Inc. v. Commc'ns Workers of Am.,*
475 U.S. 643 (1986).................................................................................................16

*Banks v. Am. Airlines,*
2019 WL 5579479 (N.D. Cal. Oct. 29, 2019) ........................................................10

*Barmapov v. Amuial,*
986 F.3d 1321 (11th Cir. 2021) .........................................................................17, 18

*Beckerich v. St. Elizabeth Med. Ctr.,*
563 F. Supp. 3d 633 (E.D. Ky. 2021) ...............................................................29, 31

*BNSF Ry. Co. v. Tyrrell,*
581 U.S. 402 (2017)...................................................................................................7

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*,
137 S. Ct. 1773 (2017) ................................................................................9, 11

*Brooks v. Blue Cross and Blue Shield of Fla., Inc.*,
116 F.3d 1364 (11th Cir. 1997) ....................................................................37

*Brown v. Royal Carib. Cruises, Ltd.*,
2017 WL 3773709 (S.D. Fla. Mar. 17, 2017) ...............................................37

*Butler v. Yusem*,
44 So. 3d 102 (Fla. 2010) .............................................................................35

*Cala v. Moorings Park Cmty. Health, Inc.*,
2022 WL 17405581 (M.D. Fla. Dec. 2, 2022) ...............................................39

*Capps Agency, Inc. v. MCI Telecomms. Corp.*,
863 F. Supp. 1555 (M.D. Fla. 1993) .............................................................35

*Caravello v. Am. Airlines, Inc.*,
315 F. Supp. 2d 1346 (S.D. Fla. 2004) .........................................................32

*Carmouche v. Tamborlee Mgmt., Inc.*,
789 F.3d 1201 (11th Cir. 2015) ......................................................................9

*Carswell v. Air Line Pilots Ass'n, Int'l*,
540 F. Supp. 2d 107 (D.D.C. 2008) ..............................................................33

*Children's Health Def. v. Facebook Inc.*,
546 F. Supp. 3d 909 (N.D. Cal. 2021) ..........................................................29

*Ciraci v. J. M. Smucker Co.*,
2021 WL 6064748 (N.D. Ohio Dec. 22, 2021) .........................................29, 31

*Ciraci v. J. M. Smucker Co.*,
2022 WL 1170421 (N.D. Ohio Apr. 20, 2022) ...............................................29

*Coffey v. Mesa Airlines Inc.*,
2019 WL 4492952 (C.D. Cal. Apr. 15, 2019) ................................................10

*Cox v. Nobles*,
15 F.4th 1350 (11th Cir. 2021) ..................................................................5, 23

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ............................................................................ *passim*

*Decius v. Nat'l Serv. Indus., Inc.,*
  2001 WL 1621924 (S.D. Fla. Nov. 1, 2001)..........................................................................40

*Dobbs v. Jackson Women's Health Org.,*
  142 S. Ct. 2228 (2022)..........................................................................................................29

*Dollar v. Goleta Water Dist.,*
  2022 WL 5176904 (C.D. Cal. Oct. 3, 2022)..........................................................................24

*Duberry v. Postmaster Gen.,*
  652 F. App'x 770 (11th Cir. 2016) .........................................................................................18

*Echols v. R.J. Reynolds Tobacco Co.,*
  2014 WL 12199984 (S.D. Fla. Feb. 18, 2014) ........................................................................4

*Edwards v. Ambient Healthcare of Ga., Inc.,*
  674 F. App'x 926 (11th Cir. 2017) .........................................................................................24

*EEOC v. N. Mem'l Health Care,*
  262 F. Supp. 3d 863 (D. Minn. 2017).....................................................................................25

*Ertle v. Cont'l Airlines, Inc.,*
  136 F.3d 690 (10th Cir. 1998) ...............................................................................................33

*Estate of McCall ex  rel. McCall  v. United States,*
  642 F.3d 944 (11th Cir. 2011) ...............................................................................................28

*Fed. Exp. Corp. v. Holowecki,*
  552 U.S. 389 (2008)...............................................................................................................26

*Finkbeiner v. Geisinger Clinic,*
  2022 WL 3702004  (M.D. Penn. Aug. 26, 2022) ...................................................................39

*Flamenbaum v. Orient Lines, Inc.,*
  2004 WL 1773207 (S.D. Fla. July 20, 2004)..........................................................................34

*Florida v. Dep't of Health & Hum. Servs.,*
  19 F.4th 1271 (11th Cir. 2021) ..............................................................................................28

*Ford Motor Co. v. Mont. Eight Jud. Dist. Ct.,*
  141 S. Ct. 1017 (2021)........................................................................................................9, 10

*Fraser v. Smith,*
  594 F. 3d 842 (11th Cir. 2010) ..............................................................................................12

*Fresenius Med. Care Holdings, Inc. v. Tucker*,
704 F.3d 935 (11th Cir. 2013) ....................................................................................28, 29

*Garcia v. Carnival Corp.*,
838 F. Supp. 2d 1334 (S.D. Fla. 2012) ................................................................................37

*Geddes v. Am. Airlines, Inc.*,
321 F.3d 1349 (11th Cir. 2003) ..........................................................................................32

*Gonzalez v. Brand Energy & Infra. Servs., Inc.*,
2013 WL 1188136 (S.D. Tex. Mar. 20, 2013)....................................................................15

*Grimes v. CSX Transp., Inc.*,
338 F. App'x 522 (7th Cir. 2009) ........................................................................................33

*Gross v. N.D. Univ. Sys.*,
2022 WL 2612121 (D.N.D. Jan. 10, 2022).........................................................................27

*Gustino v. Stoneybrook W. Master Assoc., Inc.*,
842 F. App'x 323 (11th Cir. 2021) ................................................................................29, 30

*Habitat for Human. Int'l v. Morris*,
2020 WL 1677304 (M.D. Fla. Apr. 6, 2020).......................................................................21

*Hard Candy, LLC v. Hard Candy Fitness, LLC*,
106 F. Supp. 3d 1231 (S.D. Fla. 2015) .................................................................................6

*Hart v. United States*,
894 F.2d 1539 (11th Cir. 1990) ..........................................................................................39

*Harvey v. Harvey*,
949 F.2d 1127 (11th Cir. 1992) ..........................................................................................30

*Haw. Airlines, Inc. v. Norris*,
512 U.S. 246 (1994).............................................................................................................32

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984).....................................................................................................11, 13

*Hencey v. United Airlines, Inc.*,
2021 WL 3634630 (S.D. Fla. Aug. 17, 2021)......................................................................17

*Henry v. DeSantis*,
461 F. Supp. 3d 1244 (S.D. Fla. 2020) ...............................................................................28

*Horsley v. Feldt*,
    304 F.3d 1125 (11th Cir. 2002) .................................................................33

*Interim Healthcare, Inc. v. Interim Healthcare of Se. La., Inc.*,
    2020 WL 3078531 (S.D. Fla. June 10, 2020) ...................................3, 10

*Jacobson v. Massachusetts*,
    197 U.S. 11 (1905)...........................................................................27, 28

*Jensen v. Delta Airlines, Inc.*,
    2019 WL 922509 (6th Cir. Feb. 12, 2019) ..............................................33

*Johnson v. Golfcrest Healthcare Ctr.*,
    2019 WL 1900968 (S.D. Fla. Apr. 29, 2019) .........................................18

*Johnson v. Tyson Foods, Inc.*,
    2022 WL 2161520 (W.D. Tenn. June 15, 2022) .....................................30

*Kautz v. Residence Inn by Marriott, LLC*,
    2014 WL 4416012 (M.D. Fla. Sept. 5, 2014)..........................................38

*Khanthapixay v. Loyola Marymount Univ.*,
    2021 WL 4025796 (C.D. Cal. Aug. 9, 2021)...........................................29

*Klaassen v. Trs. of Ind. Univ.*,
    7 F.4th 592 (7th Cir. 2021) ...............................................................27, 28

*Knezevich v. United States*,
    2019 WL 1093449 (M.D. Fla. Jan. 15, 2019)..........................................39

*Lane v. Piedmont Healthcare*,
    2021 WL 5074494 (N.D. Ga. Oct. 13, 2021) ..........................................29

*Leigh v. Artis-Naples, Inc.*,
    2022 WL 18027780 (M.D. Fla. Dec. 30, 2022)........................................25

*Lloyd v. Sch. Bd. of Palm Beach Cnty.*,
    570 F. Supp. 3d 1165 (S.D. Fla. 2021) (Moore, J.) .................1, 28, 29, 38

*Louisiana v. Biden*,
    55 F. 4th 1017 (5th Cir. 2022) ................................................................30

*Manhattan Cmty. Access Corp. v. Halleck*,
    139 S. Ct. 1921 (2019)..................................................................30, 31

- vii -

*Marrache v. Bacardi U.S.A., Inc.*,
  17 F.4th 1084 (11th Cir. 2021) ....................................................................5, 36

*Martz v. Munroe Reg'l Med. Ctr., Inc.*,
  2007 WL 2044247 (M.D. Fla. July 10, 2007) ...............................................37, 38

*McCormack v. Aircraft Mechs. Frat. Ass'n*,
  340 F.3d 642 (8th Cir. 2003) ......................................................................33

*Miller v. SLT Dealer Grp. Ltd.*,
  2008 WL 11389413 (S.D. Tex. Aug. 8, 2008) ....................................................15

*Moore v. Pederson*,
  806 F.3d 1036 (11th Cir. 2015) ....................................................................37

*Morrissette-Brown v. Mobile Infirmary Ctr.*,
  506 F.3d 1317 (11th Cir. 2007) ....................................................................21

*Nat'l Broad. Co. v. Commc'ns Workers of Am.*,
  860 F.2d 1022 (11th Cir. 1988) ....................................................................31

*Negron v. CitiMortg. Inc.*,
  2016 WL 10953267 (S.D. Fla. Oct. 19, 2016) ....................................................40

*N.N.J. v. Broward Cnty. Sch. Bd.*,
  2007 WL 3120299 (S.D. Fla. Oct. 23, 2007) (Moore, J.)...........................................4

*Omnipol, A.S. v. Multinat'l Def. Servs., LLC*,
  32 F.4th 1298 (11th Cir. 2022) ........................................................... *passim*

*Parr v. Stevens Transp., Inc.*,
  2020 WL 2200858 (N.D. Tex. May 5, 2020) ..............................................15, 16

*Payne v. Salazar*,
  899 F. Supp. 2d 42 (D.D.C. 2012)..................................................................25

*Perlman v. Mayor & City Council of Balt.*,
  2016 WL 640772 (D. Md. Feb. 18, 2016) ..........................................................25

*Phillips v. Harbor Venice Mgmt., LLC*,
  2020 WL 495224 (M.D. Fla. Jan. 30, 2020)........................................................21

*Pilkington v. United Airlines, Inc.*,
  112 F.3d 1532 (11th Cir. 1997) ....................................................................33

*Price v. M & H Valve Co.*,
    177 F. App'x 1 (11th Cir. 2006) ........................................................19

*Pyles v. United Air Lines, Inc.*,
    79 F.3d 1046 (11th Cir. 1996) ..................................................32, 33

*Rayburn ex rel. Rayburn v. Hogue*,
    241 F.3d 1341 (11th Cir. 2001) ........................................................27

*Regueiro v. Am. Airlines, Inc.*,
    2022 WL 2352414 (S.D. Fla. June 30, 2022) ....................................7

*Rodriguez v. John Eagle Sport City Motors, LLP*,
    2014 WL 2587599 (N.D. Tex. June 10, 2014) ..........................15, 16

*Roof & Rack Prods., Inc. v. GYB Invs., LLC*,
    2014 WL 3116413 (S.D. Fla. July 8, 2014) ....................................12

*Ross v. Blake*,
    578 U.S. 632 (2016) ..................................................................18, 19

*Safer v. Nelson Fin. Grp., Inc.*,
    422 F.3d 289 (5th Cir. 2005) ..........................................................16

*Sambrano v. United Airlines, Inc.*,
    2021 WL 5178829 (N.D. Tex. Nov. 8, 2021) ..............................7, 10

*Sanchez v. Marathon Oil Co.*,
    2021 WL 1201677 (S.D. Tex. Jan. 21, 2021) ..................................15

*Santasiero v. Martin*,
    2021 WL 2856622 (M.D. Fla. July 8, 2021) ..............................39, 40

*Sculptchair, Inc. v. Century Arts, Ltd.*,
    94 F.3d 623 (11th Cir. 1996) ............................................................3

*Se. Floating Docks, Inc. v. Auto-Owners Ins. Co.*,
    82 So. 3d 73 (Fla. 2012) ..................................................................14

*Shea v. BBVA Compass Bancshares, Inc.*,
    2013 WL 869526 (S.D. Fla. Mar. 7, 2013) (Moore, J.) ..............3, 14

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
    549 U.S. 422 (2007) ..........................................................................4

*Smith v. City of Fort Pierce*,
   2018 WL 5787269 (S.D. Fla. Nov. 5, 2018)..............................................................36, 37

*Staple v. Sch. Bd. of Broward Cnty.*,
   2021 WL 2000373 (S.D. Fla. Apr. 30, 2021) .............................................................22, 23

*Stewart v. Spirit Airlines, Inc.*,
   503 F. App'x 814 (11th Cir. 2013) ..............................................................................3, 32

*Thompson v. Carnival Corp.*,
   174 F. Supp. 3d 1327 (S.D. Fla. 2016) (Moore, J.) ...........................................................6

*United Techs. Corp. v. Mazer*,
   556 F.3d 1260 (11th Cir. 2009) ...................................................................................3, 10

*Urdaneta v. J.P. Morgan Chase Bank, N.A.*,
   2010 WL 11504729 (S.D. Fla. Jan. 22, 2010) ................................................20, 34, 35

*US Freedom Flyers, et al.* v. *Atlas Air, Inc., et al.*,
   Case No. 1:22-cv-21477 (S.D. Fla.) ....................................................................................1

*Vallarta v. United Airlines, Inc.*,
   497 F. Supp. 3d 790 (N.D. Cal. 2020) .................................................................................8

*Victor Elias Photography, LLC v. Leonardo Worldwide Corp.*,
   2019 WL 3713724 (S.D. Tex. Jan. 25, 2019) .....................................................................7

*Viridis Corp. v. TCA Glob. Credit Master Fund, LP*,
   721 F. App'x 865 (11th Cir. 2018) ...................................................................................14

*Wagner v. Demo Sales, Inc.*,
   2020 WL 2527230 (M.D. Fla. Apr. 28, 2020) ...................................................................23

*Waite v. All Acquisition Corp.*,
   901 F.3d 1307 (11th Cir. 2018) ....................................................................................7, 10

*Walden v. Fiore*,
   571 U.S. 277 (2014)...........................................................................................5, 10, 11

*Washington v. Glucksberg*,
   521 U.S. 702 (1997)...........................................................................................................29

*Washington v. Sears Logis. Servs., Inc.*,
   2014 WL 2159253 (N.D. Tex. May 23, 2014) ..................................................................15

*We The Patriots USA, Inc. v. Hochul*,
    17 F.4th 266 (2d Cir. 2021) ..................................................................28

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
    792 F.3d 1313 (11th Cir. 2015) ...........................................................17

## STATUTES AND REGULATIONS

29 C.F.R. § 1635 ...........................................................................................27

29 U.S.C. § 626 .............................................................................................19

42 U.S.C. § 2000e ..................................................................................*passim*

42 U.S.C. § 2000ff .............................................................................18, 26, 27

45 U.S.C. § 151 .............................................................................................32

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 9 ............................................................3, 33

Federal Rule of Civil Procedure 12 .....................................................3, 4, 14

Defendants Atlas Air, Inc. ("Atlas") and John W. Dietrich, Patricia Goodwin-Peters, and Jeffrey Carlson (the "Atlas Executive Defendants" and, collectively, with Atlas, the "Atlas Defendants"); EncompassAir, LLC ("Encompass"); and Flight Services International, LLC ("FSI") (collectively, "Defendants") hereby move to dismiss the Complaint (ECF No. 1) with prejudice under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6).

## INTRODUCTION

Plaintiffs are over 100 employees of Atlas, FSI, or Encompass. *See* Compl. ¶¶ 21–127.[1] They object to the nation's overall response to the COVID-19 pandemic, ranging from the FDA's approval of COVID-19 vaccines, to the government and public health authorities' encouragement of vaccination, to public health officials' masking and testing recommendations. *E.g.*, *id.* ¶¶ 141–144, 243, 272 n.6, 308. Rejecting a similar challenge to the wisdom of COVID-19 policy, this Court explained that such questions are "best left to the scientific community and participants in the democratic process" and that courts should not "short circuit that debate." *Lloyd v. Sch. Bd. of Palm Beach Cnty.*, 570 F. Supp. 3d 1165, 1185 (S.D. Fla. 2021) (Moore, J.). Despite that, as part of a public-relations gambit,[2] Plaintiffs filed this mass-action lawsuit—a copycat of the case they voluntarily dismissed in July 2022[3]—claiming that Defendants' COVID-19 vaccine, masking, and

---

[1] Atlas, FSI, and Encompass are wholly independent of each other and have no ownership over one another.

[2] *See* Compl. ¶ 5 (explaining that a goal of the litigation is "to bring attention to [the] situation"); Enrico Trigoso, *18 Major Airlines, FAA and DOT to be Sued Over COVID Vaccine Mandates*, Eᴘᴏᴄʜ Tɪᴍᴇs, May 28, 2022 (Lead attorney for Plaintiffs, John Pierce, stating, "It's going to require a big fix ultimately. And that's probably going to require legislation and kind of getting all the stakeholders at the table, but the first step is civil litigation."), available at https://www.theepochtimes.com/mkt_app/18-major-airlines-faa-and-dot-to-be-sued-over-covid-vaccine-mandates_4484295.html

[3] *See US Freedom Flyers, et al.* v. *Atlas Air, Inc., et al.*, Case No. 1:22-cv-21477, ECF No. 1 (S.D. Fla.) (Altonaga, C.J.).

testing policies violated federal employment statutes, the U.S. Constitution, and state law.

Perhaps because of their ideological aims, Plaintiffs seek to advance a legally infirm case. They bring suit in a court that lacks personal jurisdiction over the bulk of Plaintiffs' claims, in breach of the binding arbitration clauses they signed with FSI, and without exhausting mandatory administrative remedies. Plaintiffs also recycle claims against private employers' COVID-19 vaccine policies that courts nationwide routinely reject. Plaintiffs likewise fail to allege sufficient facts to justify any of their wide-ranging legal claims. Indeed, for a case purportedly about Defendants' "unlawful vaccine mandates" and "religious and medical discrimination" (Compl. ¶ 1), noticeably absent from Plaintiffs' 391-paragraph Complaint are:

- Facts identifying any Plaintiff who requested and was denied an exemption from vaccination for religious or medical reasons under any Defendant's COVID-19 policy;

- Facts identifying any Plaintiff who purportedly suffered an adverse employment action (*i.e.*, disciplined, discharged, or placed on a leave) for not taking a COVID-19 vaccine; or

- Facts identifying the specific circumstances of the 107 Plaintiffs with Defendants' policies.

This Court should dismiss Plaintiffs' newly refiled Complaint with prejudice on numerous grounds. *First*, all of Plaintiffs' claims against Atlas, FSI, and Encompass that do not arise in or relate to Florida must be dismissed for lack of personal jurisdiction, and all claims against FSI should be dismissed with prejudice in light of the above-mentioned arbitration agreement. (Part I-IV.) *Second*, the Complaint is an impermissible shotgun pleading. (Part V.A.) *Third*, Plaintiffs' Title VII and Genetic Information Nondiscrimination Act ("GINA") claims fail on two independent grounds: (i) Plaintiffs have failed to allege or establish that they exhausted administrative remedies before pursuing these claims, and (ii) Plaintiffs' Title VII and GINA claims fail to state a claim upon which relief can be granted, especially given that Plaintiffs bring over 100 individual claims under Title VII and GINA without a single specific allegation about

*any* of their individual circumstances and without alleging *any* adverse employment action. (Part V.B.) *Fourth*, as courts uniformly recognize, objections to COVID-19 vaccine requirements by private companies infringe no constitutional rights. (Part V.C.) *Fifth*, blackletter law divests courts of subject matter jurisdiction over claims alleging breach of a collective bargaining agreement ("CBA") subject to the Railway Labor Act. (Part V.D.) *Sixth*, Plaintiffs' fraud claims fall well-short of Rule 9(b)'s particularity requirement and Plaintiffs' intentional infliction of emotional distress claims fail plausibly to allege this difficult-to-plead tort. (Part V.E.-V.F.)

## LEGAL STANDARDS

Jurisdiction—Rule 12(b)(2) and Rule 12(b)(1).

Plaintiffs bear the burden of demonstrating personal jurisdiction when confronted with a Rule 12(b)(2) motion. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). If the defendant submits evidence against jurisdiction, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.*; *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996). "[W]hen the plaintiff offers no competent evidence to the contrary, [the] court may find that the defendant's unrebutted denials [are] sufficient to negate plaintiff's jurisdictional allegations." *Interim Healthcare, Inc. v. Interim Healthcare of Se. La., Inc.*, 2020 WL 3078531, at *7 (S.D. Fla. June 10, 2020).

In the Eleventh Circuit, motions to compel arbitration "are treated generally as motions to dismiss for lack of subject matter jurisdiction pursuant to [Rule] 12(b)(1)." *Shea v. BBVA Compass Bancshares, Inc.*, 2013 WL 869526, at *2 n.3 (S.D. Fla. Mar. 7, 2013) (Moore, J.). In addition, because "federal courts lack subject matter jurisdiction" over claims that are preempted by the Railway Labor Act, this "warrant[s] dismissal under Rule 12(b)(1)." *Stewart v. Spirit Airlines, Inc.*, 503 F. App'x 814, 817 (11th Cir. 2013).

Although "jurisdictional questions ordinarily must precede merits determinations in

dispositional order," the Supreme Court "recognize[s] that a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007). Thus, here, the Court "may dismiss for lack of personal jurisdiction without first establishing subject-matter jurisdiction," or vice versa. *Id.* As to FSI, regardless of which jurisdictional ground for dismissal the Court resolves first, it should dismiss in full—and not retain jurisdiction—as all claims against FSI are subject to arbitration, and no claims against FSI are subject to personal jurisdiction in this Court.[4]

Failure to State a Claim—Rule 12(b)(6).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *N.N.J. v. Broward Cnty. Sch. Bd.*, 2007 WL 3120299, at *1 (S.D. Fla. Oct. 23, 2007) (Moore, J.). "Thus, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Echols v. R.J. Reynolds Tobacco Co.*, 2014 WL 12199984, at *3 (S.D. Fla. Feb. 18, 2014) (Moore, J.).

In order to meet the plausibility standard, "a plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Thus, for each claim, the plaintiff must set forth plausible factual allegations that establish all "the material elements of a cause of action." *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011). Well-pled facts must demonstrate "more than

---

[4] FSI requests the Court, prior to considering FSI's personal jurisdiction argument, first resolve its jurisdictional argument that Plaintiffs' claims against it should be dismissed with prejudice for lack of subject matter jurisdiction, as these Plaintiffs' claims are subject to mandatory arbitration. (Part IV.)

a sheer possibility that a defendant has acted unlawfully," and facts "merely consistent with a defendant's liability" are not enough. *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1099 (11th Cir. 2021). A court should "dismiss a complaint if it rests only on conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts." *Cox v. Nobles*, 15 F.4th 1350, 1357 (11th Cir. 2021).

## ARGUMENT

Plaintiffs have *not* brought a putative class action; rather, each of the over 100 Plaintiffs seeks to pursue separate claims pursuant to some (or all) of eight causes of action. *See* Compl. ¶¶ 245–391. According to the Complaint, 98 Plaintiffs are employees of Atlas, six are employees of FSI, and one is an employee of Encompass.[5] *Id.* ¶¶ 21–127. All of Plaintiffs' many claims fail.

**I.     The Vast Majority of Plaintiffs' Claims Against Atlas and All the Claims Against FSI and Encompass Should Be Dismissed for Lack of Personal Jurisdiction.**

Plaintiffs cannot establish general personal jurisdiction under the Due Process Clause over Atlas, FSI, or Encompass under the demanding test set forth in *Daimler AG v. Bauman*, 571 U.S. 117 (2014). As to specific personal jurisdiction, for constitutionally sufficient "minimum contacts," "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014); *see also id.* at 284 (explaining that "the relationship must arise out of contacts that the defendant *himself* creates with the forum State"). Here, the Complaint fails to allege *any* suit-related contacts Atlas, FSI, or Encompass created with Florida. Plaintiffs' theory of specific jurisdiction appears to be that "acts outside the state of Florida . . . caused harm to numerous plaintiffs in the state of Florida." Compl. ¶ 137. But,

---

[5] Two additional Plaintiffs seek to bring claims on behalf of the Estate of former Atlas employee Lane Caviness. Compl. ¶¶ 21–22.

as described below, that "injury-only theory" is not only legally flawed, but it also cannot factually support specific personal jurisdiction for the vast majority of the Plaintiffs, who neither work nor live in Florida—and, therefore, lack even a Florida-based injury. The Court therefore should dismiss the vast majority of claims against Atlas, and all of the claims against FSI and Encompass.

A.     **Atlas Is Not Subject to General Jurisdiction in Florida.**

Absent an "exceptional case," a corporation is "at home"—and thus subject to general personal jurisdiction consistent with due process—*only* in the states where it is incorporated or where it has its principal place of business. *Daimler*, 571 U.S. at 138-39, 139 n.19. Here, as Plaintiffs admit, Atlas's "paradigm forum[s]" for "the exercise of general jurisdiction" are Delaware and New York. *Id.* at 137; *see* Compl. ¶ 128 (alleging Atlas is "a Delaware corporation with its principal place of business in Purchase, New York"); Ybarra Decl. ¶ 3, Ex. A.

"The Due Process Clause imposes a high standard" for a corporation to "be subject to the exercise of general jurisdiction [outside these paradigm forums]." *Hard Candy, LLC v. Hard Candy Fitness, LLC*, 106 F. Supp. 3d 1231, 1250 (S.D. Fla. 2015). "[T]he inquiry is not whether a foreign corporation's in-forum contacts can be said to be in some sense continuous and systematic, it is whether that corporation's affiliations with the State *are so continuous and systematic as to render it essentially at home in the forum State*." *Id.* (emphasis added). It is, therefore, "*incredibly difficult* to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1336 n.7 (S.D. Fla. 2016) (Moore, J.). The facts of *Daimler* reinforce this. There, the Supreme Court held the federal court in California could not exercise general jurisdiction over Mercedes-Benz USA despite the company being "the largest supplier of luxury vehicles to the California market" and despite it having "multiple California-based facilities, including a regional office in Costa Mesa, a Vehicle Preparation Center in Carson, and a Classic Center in Irvine." *Daimler*, 571

- 6 -

U.S. at 123, 136–37, 139.

Plaintiffs cannot carry their "heavy burden" to establish Atlas is "at home" in Florida. *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1317 (11th Cir. 2018). Only "14.5% of Atlas's U.S. workforce has a Florida duty station." Ybarra Decl. ¶ 6. From January 2021 through October 2022 (when Plaintiffs sued), take offs and landings in Florida *never* represented more than 9% of Atlas's total monthly flights. *Id.* Atlas maintains operational centers at airports across the United States, including in Alaska, California, Illinois, Kentucky, Florida, and New York. *Id.* ¶ 5. These facts cannot support general personal jurisdiction over Atlas in Florida. *See BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 414 (2017) (no general jurisdiction over railroad in Montana despite over 2,000 miles of railroad track and 2,000 employees there because improper to "focus solely on the magnitude of the defendant's in-state contacts"); *Victor Elias Photography, LLC v. Leonardo Worldwide Corp.*, 2019 WL 3713724, at *2 (S.D. Tex. Jan. 25, 2019) (no general jurisdiction over Marriot in Texas despite having "487 properties in Texas compris[ing] . . . seven-percent of the Marriot-branded properties worldwide").

In cases involving airlines with ties to forum states equal-or-greater than those of Atlas to Florida, courts have found those ties fall short of establishing general jurisdiction under *Daimler*. *See, e.g.*, *Regueiro v. Am. Airlines, Inc.*, 2022 WL 2352414, at *2 (S.D. Fla. June 30, 2022) (rejecting general jurisdiction over American Airlines despite its "significant business operations in Florida" and collecting authorities that "have declined to exercise general jurisdiction over airlines with a hub in the state"); *Sambrano v. United Airlines, Inc.*, 2021 WL 5178829, at *4 (N.D. Tex. Nov. 8, 2021) (concluding that *Daimler* "compel[led] the Court to conclude [the airline defendant was] Texas's guest"—not subject to general jurisdiction—despite it "maintain[ing] a constant and significant presence in Texas" with (i) *one of its hub airports* in Texas, (ii) "*roughly*

*a quarter* of its daily *flights tak*[*ing*]*-off or land*[*ing*] in Texas, and [(iii)] *16% of its employees work*[*ing*] *[in Texas*]") (emphasis added); *Vallarta v. United Airlines, Inc.*, 497 F. Supp. 3d 790, 799 (N.D. Cal. 2020) (airline not subject to general jurisdiction in California even though it had two hubs and a substantial number of employees there); *Agher v. Envoy Air Inc.*, 2018 WL 6444888, at *2 (C.D. Cal. Oct. 12, 2018) (airline not subject to general jurisdiction in California where 8,500 employees were based).

Plaintiffs cannot establish general jurisdiction in Florida based on Atlas having "a hub, its training center and other operations" within the state. Compl. ¶ 130. Concluding these in-state activities are sufficiently "exceptional" to confer general jurisdiction would violate the Supreme Court's admonition in *Daimler* that "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler*, 571 U.S. at 139 n.20. To illustrate, Plaintiffs allege that Atlas's Miami training center has "30,000 square feet of administrative and instructional space." Compl. ¶ 130. Yet, Atlas has over 150,000 square feet of space in Kentucky, over 100,000 square feet in California, and over 65,000 square feet in New York, as well as significant physical plants at locations across the country (and internationally). Ybarra Decl. ¶ 8. Atlas has twice as many employees in Kentucky (*i.e.*, 1,365 employees) as in Florida, and Atlas has 537 employees in Alaska, 538 employees in California, 731 in New York, 206 in Illinois, 163 in Texas, and other employees based in 14 other states and various foreign countries. *Id.* ¶ 9. By contrast to its Florida operations that Plaintiffs incorrectly characterize as "home," it is New York—Atlas's "principal place of business" (Compl. ¶ 128)—where Atlas's Ground Operations Support and Facilities, Accounting, Finance, Financial Planning and Analysis, Safety, Administration, Systems Operations, Defense & Government Programs, Sales & Marketing, Communications, Legal, and Human Resources functions are based. Ybarra Decl. ¶ 10. New York also houses Atlas's principal

executive offices. *Id.* ¶ 11. Atlas's Flight Operations are based in New York and Kentucky. *Id.* ¶ 10. And Atlas's board meetings, including the most recent, are often held in New York. *Id.* ¶ 12.

Simply put, this is not an "exceptional case" where Atlas—a New York and Delaware corporation—is "at home" outside of those paradigmatic locations. *See, e.g.*, *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (applying *Daimler* to reject general jurisdiction, concluding defendant's Florida connections were "not so substantial as to make [it] one [of] those exceptional cases in which a foreign corporation is at home in a forum other than its place of incorporation or principal place of business").

**B.     Atlas Is Not Subject to Specific Jurisdiction As to Claims of Plaintiffs Who Work Outside of Florida.**

For a court to have specific personal jurisdiction over a plaintiff's claim, the claim must "arise out of or relate to" the defendant's forum-state contacts. *Ford Motor Co. v. Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021). Plaintiffs cannot clear this basic prerequisite for the substantial majority of the Plaintiffs' claims. And, the Supreme Court has made clear that—in a mass action like this—specific jurisdiction over the defendant must be judged *as to each individual Plaintiff's claims*. *See Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1781 (2017) ("[M]ere fact that other plaintiffs . . . allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims."). Here, Plaintiffs contest Atlas's vaccination policies for employees nationwide, making clear the underlying controversy arises from their employment relationship. The Complaint seeks to premise specific jurisdiction on the allegation that Defendants "caused harm to numerous plaintiffs in the state of Florida." Compl. ¶ 137. Yet Plaintiffs fail to disclose the state where *any* individual Plaintiff *works*. Instead, Plaintiffs *selectively* disclose that 30 Plaintiffs allegedly "reside[] in the state of Florida." *See, e.g., id.* ¶¶ 24, 29, 35, 36.

- 9 -

The full facts are that 62 Plaintiff employees of Atlas *both work and live outside of Florida.* Ybarra Decl. ¶ 14 (detailing the work and home location of each of the Plaintiffs alleged to work for Atlas). *See Interim Healthcare, Inc.*, 2020 WL 3078531, at *7 (court may rely on unrebutted facts by defendant in resolving personal jurisdiction); *United Techs. Corp.*, 556 F.3d at 1283 (same). These 62 Plaintiffs do not—and cannot—demonstrate that their injuries occurred in Florida, and they allege no Florida-specific conduct by Atlas underlying their claims. *See* Ybarra Decl. ¶ 4 (explaining that Atlas's vaccine policy was "developed and executed primarily by employees based in New York and, during pandemic conditions, working from other states in the Northeast."). Thus, their claims do not "arise out of or relate" to any Florida contacts by Atlas and must be dismissed. *Ford Motor Co.*, 141 S. Ct. at 1026; *Waite*, 901 F.3d at 1314 (specific jurisdiction focuses on the suit-related "activity or occurrence" in the forum state, ignoring "defendant's unconnected activities in the State"); *see also Sambrano*, 2021 WL 5178829, at *7 (dismissing claims contesting COVID-19 accommodations of airline-pilot plaintiff with Illinois flight base and Illinois residence as "not relate[d] to the forum state" of Texas).

Furthermore, 15 additional Atlas Plaintiffs are not based in Florida for their work with Atlas, but merely reside in Florida. Ybarra Decl. ¶ 14. A plaintiff who only resides in the forum state, however, cannot establish specific personal jurisdiction over claims involving his or her employment *outside* the forum state. *See Walden*, 571 U.S. at 285 (explaining that "the plaintiff cannot be the only link between the defendant and the forum"); *Banks v. Am. Airlines*, 2019 WL 5579479, at *4 (N.D. Cal. Oct. 29, 2019) (California resident's discrimination claims arising from her work as a flight attendant based out of Arizona did not arise from airline's contacts with California); *Coffey v. Mesa Airlines Inc.*, 2019 WL 4492952, at *6 (C.D. Cal. Apr. 15, 2019) (no specific jurisdiction over airline in California for claims of pilot who resided in California and was

based out of Texas in challenge to out-of-state employment decisions). This is because the "analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285. Therefore, personal jurisdiction is also absent as to these additional 15 Atlas Plaintiffs.

In sum, this Court should dismiss for lack of personal jurisdiction every Plaintiff's claim that lacks a legally relevant connection to Florida: this undeniably includes the 62 Atlas Plaintiffs who *neither* live *nor* work in Florida and, under a proper application of precedent, also includes the claims of the additional 15 Atlas Plaintiffs who live in Florida but work elsewhere. *See Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781 (2017); *id.* at 1789 (Sotomayor, J., dissenting) ("[E]ffect of the Court's opinion [in *Bristol-Myers Squibb*] is to eliminate nationwide mass actions in any State other than those in which a defendant is 'essentially at home'" (quoting *Daimler*, 571 U.S. at 754)).

## II.    FSI Is Not Subject to Personal Jurisdiction As to Any Claims.

### A.    FSI Is Not Subject to General Personal Jurisdiction in Florida.

As Plaintiffs admit, FSI "is a Texas limited liability company with its principal place of business in Houston, Texas." Compl. ¶ 131. Plaintiffs cannot carry their "heavy burden" to establish FSI is "at home" in Florida, so it not subject to general personal jurisdiction in this forum.

Here, the only allegation in the Complaint connecting FSI to Florida is the general allegation that "[a]ll [FSI's] employees receive all their training at the Atlas training facility in Miami." *Id.* This allegation alone, however, is insufficient to subject FSI to general jurisdiction in Florida. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 411, 418–19 (1984) (declining to find general jurisdiction when a defendant had not only purchased 80 percent of its helicopter fleet in the forum state but also sent its employees there for training).

Simply put, the exercise of general jurisdiction in Florida over FSI would violate due process, as FSI does not maintain "affiliations with the State are so continuous and systematic as

to render [it] essentially at home" here. *Daimler*, 571 U.S. at 127. FSI is a Texas limited liability company with its principal (and only) place of business in Houston, Texas.  Ffrench Decl. ¶ 5, Ex. B. FSI's offices and business records are located in Texas, all of FSI's financial, accounting, and operational decisions are made in Texas, and FSI has never owned, leased/rented, possessed, or maintained real property in Florida, never maintained an office in Florida, and never maintained a financial account in Florida. *Id*. ¶¶ 6–10; *see Roof & Rack Prods., Inc. v. GYB Invs., LLC*, 2014 WL 3116413, at *4 (S.D. Fla. July 8, 2014) (holding, under *Daimler*, that the exercise of general jurisdiction over a defendant with its principal place of business in Houston, Texas would violate due process despite the defendant sending its own employees to Florida to train); *Fraser v. Smith*, 594 F. 3d 842, 846–47 (11th Cir. 2010) (even pre-*Daimler*, no general jurisdiction in Florida though defendant sent employees and representatives to Florida for training). Thus, FSI is not subject to general jurisdiction in Florida.

### B.      FSI Is Not Subject to Specific Personal Jurisdiction in Florida.

Plaintiffs' Complaint seeks to premise specific jurisdiction on the allegation that Defendants "caused harm to numerous plaintiffs in the state of Florida." Compl. ¶ 137. Yet Plaintiffs do not allege that any of the six FSI Plaintiffs reside *or* work in the state of Florida. In fact, "since FSI's formation, none of the six Plaintiffs who are or were employed by FSI were or are based in Florida. Correspondingly, all FSI flight attendants, as a condition of employment, must relocate to within seventy-five (75) miles of Houston, Texas." Ffrench Decl. ¶ 13. These six Plaintiffs do not—and cannot—demonstrate that their purported injuries occurred in Florida, and they allege no Florida-specific conduct by FSI underlying their claims. Thus, each of these Plaintiffs' claims should be dismissed for lack of personal jurisdiction.

### III.      Encompass Is Not Subject to Personal Jurisdiction As to Any Claims.

<u>No General Jurisdiction</u>. Encompass is not "at home" in Florida. As Plaintiffs admit,

"Defendant Encompass, LLC is an Alaska limited liability company with its principal place of business in Anchorage, Alaska." Compl. ¶ 132. Plaintiffs fail to make any allegation connecting Encompass to Florida. Rather, Plaintiffs assert only that Encompass does business throughout the country and that it is contractually tied to Atlas. *Id*. ¶¶132, 205. Such allegations are clearly insufficient to subject Encompass to general jurisdiction in Florida. *See* Parts I.A & II.A; *Helicopteros*, 466 U.S. at 416–19. Further, Encompass's administrative offices, corporate records, executive officers, and financial, accounting, and operational decision-making are all in Alaska. Weber Decl. ¶ 2, Ex. C. Nor has Encompass ever been incorporated in Florida, had a bank account in Florida, or owned real property in Florida. *Id*. ¶ 3.

 <u>No Specific Jurisdiction</u>. As noted above, Plaintiffs fail to disclose the state where any individual Plaintiff, including the single Encompass employee, works. To be clear, the single Encompass Plaintiff was not based in Florida for his work for Encompass. Weber Decl. ¶ 4. Nor does this Plaintiff allege having a Florida personal residence, and Encompass understands that he does not live in Florida and has not throughout the time of his contract with Encompass. *Id*. Thus, all claims against Encompass should be dismissed for lack of personal jurisdiction.

**IV.** **All Claims Against FSI Must Be Dismissed Due to a Mandatory Arbitration Clause.**

 All six Plaintiffs asserting claims against FSI acknowledged receipt of FSI's Employee Handbook, via electronic signature, which includes an unambiguous mandatory arbitration clause.[6] Therefore, these Plaintiffs were required to petition for mandatory and binding arbitration regarding their alleged claims against FSI. Specifically, Cindy Barrionuevo (on February 28, 2016), Rebecca Robertson (on June 29, 2017), Elizabeth Stoneking (on October 4, 2018), Barbara

---

[6] The six FSI Plaintiffs' employee applications also included the same arbitration clause.

Surber (on May 6, 2014), Geri Tonda (on May 7, 2014), and Ricardo Torres (on May 24, 2015), acknowledged receipt of FSI's Employee Handbook and agreed to the following provision: [7]

> Further, I acknowledge and agree that (i) my employment with Company is an "at-will" relationship that has no specific duration and that is terminable by either me or FSI at any time, with or without advance notice, (ii) unless otherwise provided by law, all disputes, claims and controversies which I may have with FSI, whether individual, joint or as part of a class, shall be arbitrated in Harris County, Texas as administered by and pursuant to the rules of the American Arbitration Association (www.adr.org; 800.778.7879) and any decision or award shall be final, binding and enforceable in a court of law.  The arbitration shall be governed by the laws of the State of Texas and the U.S. Arbitration Act, 9 USC Sections 1-16 to the exclusion of provisions of state law inconsistent with the Federal Act.

Accordingly, these Plaintiffs' claims—the only claims against FSI in this lawsuit—should be dismissed with prejudice "for lack of subject matter jurisdiction." *Shea*, 2013 WL 869526, at *2 n.3 (motions to compel arbitration are treated as motions to dismiss under Rule 12(b)(1)).

**A.    Texas Law Governs the Enforceability of FSI's Arbitration Clause.**

To address FSI's arbitration argument, this Court must first decide what law governs. Here, the arbitration clause above provides that Texas law applies. A contractual choice-of-law provision is valid under Florida law: "An agreement between parties to be bound by the substantive laws of another jurisdiction is presumptively valid, and this Court will enforce a choice-of-law provision unless applying the chosen forum's law would contravene a strong public policy of this State." *Se. Floating Docks, Inc. v. Auto-Owners Ins. Co.*, 82 So. 3d 73, 80 (Fla. 2012); *Viridis Corp. v. TCA Glob. Credit Master Fund, LP*, 721 F. App'x 865, 873 (11th Cir. 2018). Because applying Texas law would not contravene any public policy of Florida—let alone any strong one—Texas law governs the enforceability of FSI's arbitration clause.

**B.    Under Texas Law, FSI's Arbitration Clause is Enforceable and Precludes the Six FSI Plaintiffs From Pursuing Claims Against FSI in This Forum.**

---

[7] *See* Composite Ex. G.

- 14 -

To determine whether the six FSI Plaintiffs' claims are subject to arbitration, this Court must consider: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Washington v. Sears Logis. Servs., Inc.*, 2014 WL 2159253, at *3 (N.D. Tex. May 23, 2014). "When faced with such an agreement, courts have no discretion but to compel arbitration unless the [arbitration] clause's validity is challenged on legal or public policy grounds." *Parr v. Stevens Transp., Inc.*, 2020 WL 2200858, at *4 (N.D. Tex. May 5, 2020) (applying Texas law).

### 1.    The Arbitration Agreement with FSI Plaintiffs Is Valid.

"[I]t is state law that controls the determination of whether parties have agreed to arbitrate." *Sanchez v. Marathon Oil Co.*, 2021 WL 1201677, at *4 (S.D. Tex. Jan. 21, 2021). To that end, this Court should "resolve all doubts concerning the arbitrability" of the six FSI Plaintiffs' claims "in favor of arbitration." *Gonzalez v. Brand Energy & Infra. Servs., Inc.*, 2013 WL 1188136, at *2 (S.D. Tex. Mar. 20, 2013). The arbitration clause set forth above unambiguously demonstrates the parties' intention to arbitrate the claims asserted against FSI in this case. The agreement provides that all disputes, claims and controversies which the six FSI Plaintiffs may have with FSI shall be arbitrated in Harris County, Texas and shall be governed by the laws of State of Texas and the U.S. Arbitration Act, 9 U.S.C. §§ 1–16. *See Rodriguez v. John Eagle Sport City Motors, LLP*, 2014 WL 2587599, at *2 (N.D. Tex. June 10, 2014) (similar arbitration clause enforceable and constituted a valid agreement to arbitrate); *Parr*, 2020 WL 2200858, at *4 (arbitration agreements signed by plaintiffs and filed by defendants are "evidence of a valid and enforceable agreement").

Thus, under Texas law, FSI and the FSI Plaintiffs entered into a valid and enforceable arbitration agreement. *Miller v. SLT Dealer Grp. Ltd.*, 2008 WL 11389413, at *3 (S.D. Tex. Aug. 8, 2008) ("It is a widely-accepted principle of contract that one who signs or accepts a written

instrument will normally be bound in accordance with its written terms."); *Washington*, 2014 WL 2159253, at *4 ("Under Texas law, an employer may enforce an arbitration agreement . . . if the employee received notice of the employer's arbitration policy and accepted it.").

## 2. All Claims Against FSI Fall Under the Arbitration Agreement.

The FSI Plaintiffs' claims against FSI are subject to the arbitration agreement set forth above, which requires "all disputes, claims and controversies" that these particular Plaintiffs may have with FSI are subject to mandatory and binding arbitration. When determining whether a dispute is covered by the scope of an arbitration agreement, the Fifth Circuit has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Safer v. Nelson Fin. Grp., Inc.,* 422 F.3d 289, 294 (5th Cir. 2005). To that end, an arbitration agreement providing "[a]ny dispute or difference between the parties arising out of this [contract] shall, at the request of either party, be referred to [arbitration]." *Id*.; *see also Rodriguez*, 2014 WL 2587599, at *2 (holding arbitration agreement, which contained "any dispute" language, enforceable). Further, "[i]n the absence of any express provision excluding a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

In this case, all six FSI Plaintiffs' claims against FSI fall within the scope of the above arbitration agreement and, thus, are subject to dismissal. *Parr*, 2020 WL 2200858, at *1–4 (holding an arbitration agreement that provided that "the resolution of all claims or controversies [] between the parties" whether or not related to employment required the claims be submitted to arbitration). Simply put, where, as here, the arbitration clause is broad, only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, would remove the six FSI Plaintiffs' claims from being subject to arbitration. At bottom, the

arbitration agreement is valid and enforceable under Texas law (and Florida law), and all claims asserted against FSI fall within arbitration agreement and thus should be dismissed with prejudice.

**V.     The Scattershot Complaint Fails to State Any Claim Upon Which Relief Can Be Granted Against Any Defendant.**

**A.     Plaintiffs' Complaint Is a "Shotgun" Pleading That Should Be Dismissed.**

The Complaint—Plaintiffs' second bite at the apple (*supra* n.3)—is an impermissible "shotgun" pleading. *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) ("A shotgun pleading is a complaint that violates either [Rule] 8(a)(2) or Rule 10(b), or both.") *First*, the Complaint commits the "mortal sin" of "containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1322–23 (11th Cir. 2015). Indeed, the Complaint does so *eight times*—despite asserting a wide variety of claims, ranging from contractual to constitutional, against six Defendants on behalf of 107 Plaintiffs. Compl. ¶¶ 245, 290, 300, 326, 343, 351, 365, 384; *see Anderson v. United Airlines, Inc.*, 577 F. Supp. 3d 1324, 1329 (M.D. Fla. 2021) (COVID-19 complaint filed by Plaintiffs' prior attorney was "an impermissible shotgun pleading [as] each count incorporate[d] each of the preceding counts").

*Second*, the Complaint commits "the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Weiland*, 792 F.3d at 1322. For example, the Complaint "does not state" the 107 Plaintiffs' "current or former positions" at Defendants or "explain how they specifically have been harmed by [Defendants' vaccine] policies." *Anderson*, 577 F. Supp. 3d at 1329; *see Hencey v. United Airlines, Inc.*, 2021 WL 3634630, at *2 (S.D. Fla. Aug. 17, 2021) (filing "read[] like a shotgun pleading" because "Plaintiffs reference[d] their rights under the Constitution and several federal statutes without explaining with any level of particularity their claims or how each Defendant ha[d] violated

Plaintiffs' rights"). Thus, this Court should dismiss this shotgun pleading with prejudice. *See Barmapov*, 986 F.3d at 1324–25.

**B.     Plaintiffs' Claims Against Atlas, FSI, and Encompass under Title VII and GINA Must Be Dismissed.**

**1.     Counts I, II, IV, and V: Plaintiffs Do Not Allege They Exhausted Administrative Remedies.**

Under Title VII and GINA, a plaintiff *must* exhaust administrative remedies *before* filing a lawsuit by (i) filing a charge of discrimination with the EEOC *and* (ii) receiving a right-to-sue notice from the EEOC. 42 U.S.C. § 2000e-5(b), (e)–(f) (Title VII); 42 U.S.C. § 2000ff-6(a)(1) (GINA). A claim under either Title VII or GINA must be dismissed when the plaintiff fails to exhaust administrative remedies. *See, e.g.*, *Duberry v. Postmaster Gen.*, 652 F. App'x 770, 772 (11th Cir. 2016) (affirming dismissal of Title VII claim, explaining failure-to-exhaust arguments "should be raised in a motion to dismiss"); *Johnson v. Golfcrest Healthcare Ctr.*, 2019 WL 1900968, at *4 (S.D. Fla. Apr. 29, 2019) (granting motion to dismiss unexhausted GINA claims).

Plaintiffs have not pleaded exhaustion sufficiently here. Indeed, the Complaint fails to allege that the Plaintiffs have filed charges with the EEOC *and* received a right-to-sue notices. The Court should dismiss the individual Title VII and GINA claims of each Plaintiff on this basis alone. *See* Compl. ¶ 289 (alleging only that unspecified Plaintiffs have filed charges with the EEOC or are currently in the process of doing so). Plaintiffs' failure to plead exhaustion of administrative remedies appears intentional. Indeed, Plaintiffs claim they "are not required to first seek recourse via the EEOC prior to bringing their discrimination and/or employment claims" (Compl. ¶ 242), because they allegedly will suffer "imminent" harm, and they believe "the EEOC lacks the institutional capacity" to process their charges (*id.* ¶¶ 243–44). But these excuses do not justify their failure to exhaust. *See Anderson*, 577 F. Supp. 3d at 1332 ("Presumption of failure does not excuse any attempt to exhaust required administrative remedies when required by law."); *Ross v.*

*Blake*, 578 U.S. 632, 633 (2016) (a federal statute's "mandatory language means a court may not excuse a failure to exhaust, even to take special circumstances into account").

Further, even for Plaintiffs who may have obtained right-to-sue notices, Plaintiffs' failure to allege facts regarding exhaustion unfairly prevents Defendants from identifying and raising applicable legal defenses to Plaintiffs' individual claims. For example, one Plaintiff who did file a charge of discrimination with the EEOC is Joshua Roberts. In his charge, filed on November 2, 2022, Roberts (a) admits he did not seek an accommodation from Defendants' COVID-19 policy, (b) admits he received a COVID-19 vaccination, (c) alleges no acts of discrimination or harassment that occurred after October 29, 2021, and (d) pursues claims only under the Americans with Disabilities Act ("ADA"). Ex. D, J. Roberts Charge of Discrimination. On January 3, 2023, the EEOC dismissed Roberts's charge "because [it] was not filed within the time limits under the law." Ex. E, J. Roberts Dismissal and Notice of Rights.

 Roberts's charge of discrimination provides the corporate Defendants (*i.e.*, Atlas, FSI, and Encompass) with multiple defenses to claims in the Complaint that are purportedly brought by Roberts. *First*, Roberts's claims under Title VII and GINA (*i.e.*, Counts I, II, IV, and V) must be dismissed because they are beyond the scope of Roberts' EEOC charge, which only alleged an ADA claim. *See Price v. M & H Valve Co.*, 177 F. App'x 1, 14 (11th Cir. 2006) ("[A] plaintiff is precluded from raising allegations in a civil action unless they are reasonably related to the underlying charges raised before the EEOC.") *Second*, those same claims also must be dismissed because the statute of limitations has run. An EEOC charge must be filed within 300 days if the discriminatory act complained of occurred in a "deferral state," or within 180 days if it occurred in a non-deferral state. 29 U.S.C. § 626(d)(1)(A)–(B).

Roberts filed his EEOC charge on November 2, 2022, complaining of discriminatory

conduct that allegedly occurred before October 29, 2021, which is 369 days before he filed his charge. It was thus proper for the EEOC to dismiss Roberts's charge as untimely, whether occurring in a deferral state or not, and this Court should do the same. *See Arnold v. United Parcel Serv., Inc.*, 2012 WL 1035441, at *2 (M.D. Ga. Mar. 27, 2012) (granting motion to dismiss Title VII claims because EEOC charge was not timely filed). There is no reason to believe other Plaintiffs' claims are not similarly barred, which properly pleaded facts regarding exhaustion of administrative remedies would reveal. The Court therefore should dismiss all Plaintiffs' Title VII and GINA claims for failing to plead exhaustion of administrative remedies.

**2.      Plaintiffs' Allegations Fail to State Title VII and GINA Claims.**

**(a)      Count I: Plaintiffs Fail Plausibly To Allege a Religious Accommodations Claim.**

Count I of this non-class action asserts over 100 individual Title VII claims of religious discrimination (Compl. ¶¶ 245–89) based upon the corporate Defendants' alleged "fail[ure] to provide Plaintiffs with reasonable accommodations for their sincere, religious beliefs." *Id.* ¶ 284. The Complaint's threadbare allegations are inadequate to plausibly plead a Title VII failure-to-accommodate claim for any Plaintiff. *See, e.g.*, *Urdaneta v. J.P. Morgan Chase Bank, N.A.*, 2010 WL 11504729, at *1 (S.D. Fla. Jan. 22, 2010) (*Iqbal/Twombly* plausibility standard requires "a plaintiff [to] plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

Each of the Title VII claims should thus be dismissed. *First*, Plaintiffs provide no factual allegations supporting any of their 107 individual experiences with the corporate Defendants' vaccine policies. Instead, without names or any individual detail, the Complaint relies only on generalized allegations about what "[m]ost of the Plaintiffs," "[a] few of the Plaintiffs," or "[m]any of the Plaintiffs" supposedly did or failed to do. *See* Compl. ¶¶ 278–282. The "reasonable

accommodation" inquiry under Title VII is fact-dependent for each Plaintiff's claim. Yet, fundamental facts are missing from the Complaint, such as which Plaintiffs requested accommodations (let alone on what grounds), how each Plaintiff's respective religious beliefs conflict with their respective employer's COVID-19 vaccine policy, their job title or responsibilities, or even an allegation that any accommodation request was denied. *See, e.g.*, *Habitat for Human. Int'l v. Morris*, 2020 WL 1677304, at *2 (M.D. Fla. Apr. 6, 2020) (dismissing discrimination claim as "conclusory and insufficient" where complaint "fail[ed] to cite specific dates or circumstances in which the allegedly discriminatory acts occurred"); *Phillips v. Harbor Venice Mgmt., LLC*, 2020 WL 495224, at *5 (M.D. Fla. Jan. 30, 2020) (dismissing failure-to-accommodate claim where plaintiff failed to "articulate when, where, or to whom [she] requested reasonable accommodations or what reasonable accommodations she requested").

Pleading in sufficient detail to state a plausible claim is crucial to survive dismissal in any case, but even more so here, where Plaintiffs' conclusory allegations show they are not all similarly situated. For instance, the Complaint alleges that "[n]umerous Plaintiffs applied for and received a medical or religious accommodation with respect to the [vaccine] mandate." Compl. ¶ 168. Other unidentified Plaintiffs "wanted to request" a religious accommodation, but never did. *Id.* ¶ 295. Still a third group of unknown Plaintiffs admittedly "took the vaccine" (*id.* ¶ 189), so presumably they needed no accommodation. Without plausible factual allegations regarding each individual, the Court cannot determine if any (and if so which) of the 107 Plaintiffs have a legally cognizable Title VII religious discrimination claim. *Morrissette-Brown v. Mobile Infirmary Ctr.*, 506 F.3d 1317, 1321 (11th Cir. 2007) (a religious discrimination claim requires, among other things, that "(1) [plaintiff] had a bona fide religious belief that conflicted with an employment requirement; [and that] (2) he informed his employer of his belief").

- 21 -

*Second*, Plaintiffs lack any plausible legal theory of a failure-to-accommodate claim under Title VII for any of the "categories" of Plaintiffs they vaguely sketch. The Complaint does not explain how Plaintiffs who, admittedly, received an accommodation exempting them from vaccination without consequence to their employment, or who never applied for an accommodation, or who "already made the choice to get vaccinated" could possibly have a claim. *See Ananias v. St. Vincent Med. Grp., Inc.*, 2022 WL 17752208, at \*5 (S.D. Ind. Dec. 19, 2022) (dismissing for lack of Article III standing Plaintiffs who could not demonstrate their employer's COVID-19 vaccine mandate caused a redressable Title VII injury). Moreover, Plaintiffs admit to harboring objections to COVID-19 vaccination that clearly are not protected by Title VII, such as those Plaintiffs who have "medical objections,"[8] or those who object that vaccination "will lead to increasing authoritarian control being asserted over him or her and society." Compl. ¶ 277(J).

*Third*, Plaintiffs' Title VII claims should be dismissed because the Complaint never identifies any Plaintiff who was disciplined or discharged—instead, the Title VII claims rest solely on allegations regarding *threats* of future consequences for unvaccinated employees that never materialized. *Id.* ¶¶ 285–86. *Staple v. Sch. Bd. of Broward Cnty.*, 2021 WL 2000373, at \*4 (S.D. Fla. Apr. 30, 2021) (stating "the Eleventh Circuit has made clear the third element of [the] prima facie case for failure to accommodate [requires] discharge or discipline"). While the Complaint claims that certain Atlas Executive Defendants threatened that "'unvaccinated' crews would be placed on unpaid leave or terminated" (Compl. ¶ 185), no Plaintiffs allege they actually suffered

---

[8] *See* Compl. ¶ 363 ("Several of the Plaintiffs have *either religious or medical objections* . . . to the COVID-19 treatment injections." (emphasis added)). Plaintiffs assert no Americans with Disabilities Act (ADA) claim, which itself prohibits discrimination because of disability—not medical objections—and Title VII solely prohibits discrimination "because of [an] individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a).

those consequences. To the contrary, the Complaint acknowledges that, on March 25, 2022, Atlas informed employees that "those who previously obtained a religious or medical exemption" would "be allowed to fly after the May 1, 2022 company vaccine mandate deadline so long as they undergo requisite COVID testing." *Id.* ¶ 195; *see also id.* ¶ 203 (confirming same). And while the Complaint also claims Plaintiffs are "potentially subject to impending discharge and termination . . . following the recent imposition of the May 1, 2022 company mandate," it is telling that Plaintiffs fail to identify any Plaintiff who has faced such consequences in the over nine months since that policy took effect.[9] *See Staple*, 2021 WL 2000373, at *4 ("The mere possibility that Defendant might, at some point in the future, act[ ] unlawfully is insufficient to survive a motion to dismiss.").

*Finally*, Plaintiffs' newly added allegations that they were restricted from flying to certain international destinations likewise do not give rise to a Title VII claim. As Plaintiffs concede, any international restrictions were not because of religion, but because of *vaccination status*. *See* Compl. ¶ 265 (alleging the availability of international flight routes "was limited by *vaccination status*"), ¶ 367 (alleging Plaintiffs were told certain "countries were off-limits to *unvaccinated* pilots and crew") (emphases added). To illustrate, the Complaint acknowledges that Atlas provided "medical exemptions to being 'vaccinated'" (*id.* ¶ 185) such that rules restricting unvaccinated pilots and crew drew no distinction "because of [any] individual's . . . religion." 42 U.S.C. § 2000e-2. Such measures cannot have violated Title VII. *See Wagner v. Demo Sales, Inc.*, 2020 WL 2527230, at *3 (M.D. Fla. Apr. 28, 2020) (claimant must allege plausible facts showing that his

---

[9] Moreover, Plaintiffs fail to allege facts to support their conclusory allegation that—had it materialized—"unpaid leave is not a reasonable accommodation," *id.* ¶ 285. *See Cox*, 15 F.4th at 1357 (directing courts to dismiss a complaint that "rests only on conclusory allegations . . . or legal conclusions masquerading as facts"); *see also Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 70 (1986) (explaining that unpaid leave "would generally be a reasonable" accommodation).

membership of a protected class was a "determinative factor" in the adverse employment action);
*cf. Dollar v. Goleta Water Dist.*, 2022 WL 5176904, at *5 (C.D. Cal. Oct. 3, 2022) ("[P]laintiffs
have not alleged that employees who receive exemptions [from employer's COVID-19 vaccination
policy] on religious grounds are treated any differently from employees who receive exemptions
on nonreligious grounds. Instead, plaintiffs have only alleged that the policy treats them differently
from other employees because of their vaccination status, not because of their religion.").

      **(b)**      **Count II: Plaintiffs Fail Plausibly To State a Retaliation Claim.**

Count II purports to assert a Title VII retaliation claim. Compl. ¶¶ 290–99. As an initial
matter, Plaintiffs appear to argue that the accommodation exempting them from vaccination they
received (or were offered) was itself retaliatory. *See id.* ¶ 168 (alleging "[n]umerous plaintiffs
applied for and received a medical or religious accommodation"); *id.* ¶ 296 (objecting to the
allegedly offered accommodation as retaliation). Such a theory must fail because it would enable
any plaintiff dissatisfied with the particulars of an accommodation to avoid litigating its
reasonableness and the associated burdens on the employer, and instead repackage the claim as
one for "retaliation." *See* 42 U.S.C. § 2000e(j) (calling for the "*reasonabl*[*e*] accomodat[ion] to an
employee's . . . religious observance or practice *without undue hardship* on the conduct of the
employer's business." (emphasis added)).

The Court should also dismiss Count II because Plaintiffs have not alleged that they
engaged in protected activity, a necessary element of a Title VII retaliation claim. *See Edwards v.
Ambient Healthcare of Ga., Inc.*, 674 F. App'x 926, 929 (11th Cir. 2017) (affirming dismissal for
failure to allege engagement in a protected activity under Title VII). Title VII's retaliation
provision makes it unlawful for an employer to discriminate against an employee who (1) "has
opposed any practice made an unlawful employment practice by [Title VII]" or (2) "has made a
charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing

under [Title VII]." 42 U.S.C. § 2000e-3(a). These are the only two categories of protected activity under Title VII. Here, Plaintiffs generally allege only that they "informed their employers of [their] [religious] beliefs and requested (or tried to request) religious accommodations from the vaccine mandate." Compl. ¶ 257. But requesting an accommodation, by itself, does not constitute protected activity because it is neither an expression of opposition to an unlawful employment practice nor participation in a proceeding under Title VII. *See EEOC v. N. Mem'l Health Care*, 262 F. Supp. 3d 863, 867 (D. Minn. 2017) ("Applying the plain language of the statute, the court concludes that requesting a religious accommodation is not a protected activity.").[10]

Further, as explained above, the Complaint does not allege any adverse action taken against any Plaintiff. Nor have Plaintiffs alleged that any purported retaliatory adverse action was motivated by their allegedly protected conduct as opposed to their vaccination status. To the contrary, the Complaint repeatedly concedes that any differences in treatment of Plaintiffs by Defendants were solely based on vaccination status. *See, e.g.*, Compl. ¶ 177 (alleging one Plaintiff was "subjected to retaliatory discipline after he became known . . . [as] unvaccinated"), ¶ 313 (alleging "those vaccinated were treated superior to and provided more preferential treatment than those who were not"); ¶¶ 314, 315 (similar).

      **(c)**      **Counts IV and V: Plaintiffs Fail Plausibly To State a GINA Claim.**

Counts IV and V invoke GINA. *Id.* ¶¶ 326–50. Count IV alleges that COVID-19 vaccines "inject[t] genetic information into a person and chang[e] or manipulat[e] the person's genetic information," which means (according to Plaintiffs) that "those who have been injected with a

---

[10] *See Leigh v. Artis-Naples, Inc*., 2022 WL 18027780, at *13 (M.D. Fla. Dec. 30, 2022); *Payne v. Salazar*, 899 F. Supp. 2d 42, 53 n.7 (D.D.C. 2012); *Perlman v. Mayor & City Council of Balt.*, 2016 WL 640772, at *6 (D. Md. Feb. 18, 2016).

COVID-19 vaccine necessarily possess different genetic material or genetic information than those who do not." *Id.* ¶¶ 332, 337. Even accepting these allegations as true (they are not), Plaintiffs fail to state a claim for discrimination "because of genetic information" under GINA, 42 U.S.C. § 2000ff-1(a), since these allegations do not implicate GINA's definition of "genetic information." GINA expressly defines "genetic information" to "mean[], with respect to any individual, information about" (i) "such individual's genetic tests," (ii) "the genetic tests of family members," and (iii) "the manifestation of a disease or disorder in family members of such individual." 42 U.S.C. § 2000ff(4)(A). "Genetic test," in turn, means "an analysis of human DNA, RNA, chromosomes, proteins, or metabolites, that detects genotypes, mutations, or chromosomal changes." 42 U.S.C. § 2000ff(7)(A). Consistent with GINA's definition, the EEOC determined that "administering a COVID-19 vaccine does not involve the use of the employee's genetic information to make employment decisions or the acquisition or disclosure of genetic information and, therefore, does not implicate Title II of GINA." *See* What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws, E.E.O.C. (updated July 12, 2022), https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws, § K.14; *see also Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 399 (2008) (EEOC's interpretive statements "reflect a body of experience and informed judgment to which courts and litigants may properly resort to guidance"). Accordingly, Count IV fails because the COVID-19 vaccine does not involve "genetic information" for purposes of GINA.

Plaintiffs' second set of GINA claims (Count V) assert that testing for COVID-19 and requests for vaccination status of employees constitutes "genetic" testing. *See* Compl. ¶ 346. But, as the GINA regulations reflect, "[a] medical examination that tests for the presence of a virus that is not composed of human DNA, RNA, chromosomes, proteins, or metabolites" is "not [a] genetic

test." 29 C.F.R. § 1635.3(f)(3)(ii). Plaintiffs do not (and cannot) allege that SARS-CoV-2 is composed of human DNA or RNA, and, thus, testing for that virus is not "genetic testing." *See Gross v. N.D. Univ. Sys.*, 2022 WL 2612121, at *3 (D.N.D. Jan. 10, 2022) (dismissing GINA claim based, in part, on the principle that "detection . . . of the COVID-19 virus would [not] constitute genetic information for purposes of GINA"). As for Plaintiffs' allegation that Defendants "violate GINA when they request their employee's vaccination status" (Compl. ¶ 347), this fails to state a claim because GINA only bars adverse actions "*because of genetic information* with respect to the employee," 42 U.S.C. § 2000ff-1(a)(1), (2) (emphasis added). Here, Plaintiffs admit that the actions they complain of were based on COVID-19 *vaccination status* (*e.g.*, Compl. ¶¶ 332, 347), rather than "genetic information" as defined by GINA. Plaintiffs also entirely fail to allege any adverse action. The Court therefore should dismiss Plaintiffs' GINA claims.

### C. Count III: Plaintiffs' Section 1983 Constitutional Claims Against Atlas Fail.

Plaintiffs bring assorted claims against Atlas under 42 U.S.C. § 1983, claiming that Atlas violated Plaintiffs' rights to due process, privacy, and equal protection under the U.S. Constitution. Compl. ¶¶ 300–25. To survive dismissal on these claims, Plaintiffs must plausibly (i) state their constitutional claims, *and* (ii) allege Atlas is a state actor subject to the Constitution. *See Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) (explaining that "§ 1983 only provides for claims to redress State action"). The Complaint does neither and, thus, the Court can dismiss these claims against Atlas on either basis.

#### 1. Plaintiffs' Claims Do Not State Any Constitutional Violations.

Plaintiffs fail to state any constitutional claims. *First*, the Supreme Court has rejected arguments that requiring vaccination violates the Constitution. *Jacobson v. Massachusetts*, 197 U.S. 11, 31 (1905). As Judge Easterbrook explained, "[g]iven [*Jacobson*], which holds that a state may require all members of the public to be vaccinated against smallpox, there can't be a

constitutional problem with vaccination against SARS-CoV-2." *Klaassen v. Trs. of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021); *accord Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1288 (11th Cir. 2021).

*Second*, even without *Jacobson*, Plaintiffs' constitutional claims fail. Plaintiffs allege that they have a *fundamental* right to privacy that includes "the reasonable expectation to not be coerced . . . by Atlas to inject an unwanted, experimental, foreign gene therapy into their body to save their livelihoods." Compl. ¶ 310. There is no such fundamental right. *See We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 293 (2d Cir. 2021) (affirming that the Constitution does not embody a fundamental right that would "render vaccine requirements imposed in the public interest, in the face a public health emergency, unconstitutional"); *Klaassen*, 7 F.4th at 593. Because of this, Plaintiffs' constitutional claims are judged under rational basis review,[11] which the COVID-19 vaccination policy at issue here clearly satisfies. *See Henry v. DeSantis*, 461 F. Supp. 3d 1244, 1255 (S.D. Fla. 2020) (government's interest in "public health and slowing the spread of COVID-19" upheld under rational basis test). Rejecting a constitutional challenge to a Florida school board's mask mandate, this Court explained, "there is no dispute that Defendants have a legitimate interest in combatting the spread of COVID-19." *Lloyd v. Sch. Bd. of Palm Beach Cnty.*, 570 F. Supp. 3d 1165, 1183 (S.D. Fla. 2021) (Moore, J.). Likewise, here, this Court "cannot find that Defendants are irrational for following the recommendations of the CDC." *Id.* at 1185.

This reasoning controls and defeats Plaintiffs claims under the Equal Protection Clause and substantive due process doctrine rooted in the Fourteenth Amendment. *See Fresenius Med. Care*

---

[11]   Rational basis review requires courts to uphold an action as constitutional "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Estate of McCall ex rel. McCall v. United States*, 642 F.3d 944, 950 (11th Cir. 2011). That requires Plaintiffs to negate "every conceivable basis which might support" it. *Id.*

*Holdings, Inc. v. Tucker*, 704 F.3d 935, 945 (11th Cir. 2013) (courts review laws not infringing on fundamental rights for a rational basis); *see also Lloyd*, 2021 WL 5353879, at *11 ("Courts have noted that the standards for rational basis review for equal protection claims and substantive due process claims are virtually identical."). Freedom from unwanted COVID-19 vaccinations, testing, or masking (Compl. ¶ 317) is not "so deeply rooted in our history and traditions, or so fundamental to our concept of constitutionally ordered liberty, that they are protected" by substantive due process or the right to privacy. *Washington v. Glucksberg*, 521 U.S. 702, 727 (1997); *see Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2242 (2022) (substantive due process right "not mentioned in the Constitution" must be "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty").

### 2.    Atlas Is Not a State Actor That Could Violate the Constitution.

Plaintiffs' constitutional claims fail for the independent reason that Plaintiffs do not (and cannot) plausibly allege that Atlas is a state actor. Indeed, *every* court to consider similar arguments in the context of the COVID-19 pandemic, including in a decision by Chief Judge Corrigan of the Middle District of Florida against another airline, has rejected efforts to transform private employers into state actors subject to constitutional claims.[12] A plaintiff raising a "section 1983 claim must show the deprivation of a federal right by a person acting under color of state law. For a party to act under color of law, its conduct must be fairly attributable to the state" and "the party must be a state actor." *See Gustino v. Stoneybrook W. Master Assoc., Inc.*, 842 F. App'x 323, 328

---

[12]  *See, e.g.*, *Anderson*, 577 F. Supp. 3d at 1330; *Ciraci v. J. M. Smucker Co.*, 2021 WL 6064748, at *2 (N.D. Ohio Dec. 22, 2021); *Ciraci v. J. M. Smucker Co.*, 2022 WL 1170421, at *2 (N.D. Ohio Apr. 20, 2022); *Lane v. Piedmont Healthcare*, 2021 WL 5074494, at *3 (N.D. Ga. Oct. 13, 2021); *Beckerich v. St. Elizabeth Med. Ctr.*, 563 F. Supp. 3d 633, 639–40 (E.D. Ky. 2021); *Khanthapixay v. Loyola Marymount Univ.*, 2021 WL 4025796, at *3 (C.D. Cal. Aug. 9, 2021); *Children's Health Def. v. Facebook Inc.*, 546 F. Supp. 3d 909, 928-32 (N.D. Cal. 2021).

(11th Cir. 2021) (citations omitted). This determination is made using three tests: (1) the public function test, (2) the state compulsion test, and (3) the nexus/joint action test. *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992). "Only in rare circumstances can a private party be viewed as a state actor for section 1983 purposes." *Id.* Plaintiffs cannot allege such circumstances here.

Public Function Test. Plaintiffs cannot plausibly allege that imposing an employee vaccination policy is a power *exclusively* reserved to the State. *See Johnson v. Tyson Foods, Inc.*, 2022 WL 2161520, at *4 (W.D. Tenn. June 15, 2022) (applying public function test to determine private party was not a state actor for implementing employee vaccination policy). Indeed, "[f]ew activities are 'exclusively reserved to the states.'" *Harvey*, 949 F.2d at 1131.

State Compulsion Test. Nor do Plaintiffs satisfy the state compulsion test. Plaintiffs attempt to satisfy this test by relying on the President's Federal Contractor Executive Order ("Contractor E.O.") and the OSHA COVID-19 Vaccine and Testing Emergency Temporary Standard ("OSHA ETS") concerning COVID-19 vaccines. *See* Compl. ¶¶ 172, 213–17. As a threshold matter, Plaintiffs' logic cannot be correct, as it would lead to a drastic reordering of our Constitutional system—where the government, not private companies, are subject to constitutional limits. Indeed, "one-fifth of all employees in the United States" were impacted by the Contractor E.O., *Louisiana v. Biden*, 55 F. 4th 1017, 1019 (5th Cir. 2022). Under Plaintiffs' logic, the employers of each of those employees would be transformed into a "state actor[]." *See Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1932 (2019) (rejecting, as unquestionably "not the law," argument that would make "a large swath of private entities in America . . . state actors").

Moreover, the Complaint acknowledges that Atlas *continued* to require COVID-19 vaccines even after the Supreme Court invalidated the OSHA ETS and after federal courts enjoined the Contractor E.O. *See, e.g.*, Compl. ¶ 218. Indeed, Plaintiffs admit that "after the Biden

Administration's mandate was enjoined by various federal courts around the country, Atlas immediately *reverted to a company-directed mandate.*" *Id.* ¶ 161 (emphasis added). A "company-directed mandate," plainly, is not "state action." Relatedly, the Complaint contests Atlas's COVID-19 policy that became effective on May 1, 2022. *See id.* ¶ 10 (explaining that Plaintiffs' claims concern "the recent imposition of the May 1, 2022 company mandate"); ¶ 201 (describing "[t]he Policy [as] stat[ing] that 'Employees who travel as an essential function of their position must be fully vaccinated against COVID-19 by May 1, 2022.'"). Because Plaintiffs challenge a May 1, 2022 COVID-19 policy implemented well after the OSHA ETS and Contractor E.O. were invalidated and enjoined, respectively, and which differs from the contours of those federal policies, Plaintiffs cannot establish state action under the compulsion test. *See, e.g.*, *Ciraci*, 2021 WL 6064748, at *2 (no state action at injunction-stage where employer "announced its formal [vaccine] policy" on "a date that does not correspond to any action by the federal government").

Nexus/Joint Action Test. In an attempt to plead a joint enterprise between the federal government and Atlas, Plaintiffs primarily rely on three allegations: (1) Atlas and the government had similar goals with respect to COVID-19 vaccination (Compl. ¶¶ 234, 238, 272 n.6, 308); (2) some Atlas executives allegedly met with members of the Biden Administration to discuss COVID-19 precautions (*id.* ¶¶ 239, 240, 308); and (3) Atlas accepted COVID-19 relief funding (*id.* ¶¶ 152, 153, 235). But "mere approval of or acquiescence" by the government in a private actor's decision (or vice versa) "is insufficient to constitute state action." *Nat'l Broad. Co. v. Commc'ns Workers of Am.*, 860 F.2d 1022, 1028 (11th Cir. 1988). Nor does accepting government funding (Compl. ¶ 235) convert Atlas into a state actor. *See Halleck*, 139 S. Ct. at 1932; *Beckerich*, 2021 WL 4722915, at *1. In sum, even if Plaintiffs raised viable constitutional claims (they do not), such claims could not be asserted against Atlas, a private actor.

**D.     Count VI: The Court Lacks Subject Matter Jurisdiction Over the Atlas Pilot Employees' Claims for Breach of Their Collective Bargaining Agreement.**

Count VI alleges that the Atlas Defendants "violated, and continue to violate," various provisions of the CBA between Atlas and the union that represents Atlas's pilots. Compl. ¶¶ 351–64. Under governing law, such claims against airlines are preempted by the Railway Labor Act ("RLA"), 45 U.S.C. § 151, *et seq.*, and must be dismissed for lack of subject matter jurisdiction. "The RLA was designed to avoid interruptions to commerce or to the operation of the railway or airline industries caused by labor management disputes." *Stewart*, 503 F. App'x at 817. As such, the RLA establishes a mandatory framework for disputes involving the interpretation or application of CBAs—referred to as "minor" disputes—which must be resolved through arbitration before the appropriate board of adjustment. *Haw. Airlines, Inc. v. Norris*, 512 U.S. 246, 252–53 (1994); *see also Geddes v. Am. Airlines, Inc.*, 321 F.3d 1349, 1354 (11th Cir. 2003) ("This comprehensive framework establishes a system of adjustment boards with exclusive and mandatory jurisdiction to handle minor disputes, *see* 45 U.S.C. § 184, thus keeping them out of courts altogether."); *Pyles v. United Air Lines, Inc.*, 79 F.3d 1046, 1050 (11th Cir. 1996) (same). When a plaintiff's claim involves a minor dispute, the Court must dismiss it for lack of subject matter jurisdiction. *See Stewart*, 503 F. App'x at 819; *Caravello v. Am. Airlines, Inc.*, 315 F. Supp. 2d 1346, 1351 (S.D. Fla. 2004).

Because Count VI alleges that the Atlas Defendants violated the CBA in various ways (*e.g.*, Compl. ¶¶ 356–59), its resolution plainly requires interpretation of the CBA, rendering it a non-justiciable minor dispute. In *Pyles*, for instance, the plaintiff brought a claim for violation of a letter of agreement that modified the CBA between the airline and its pilot union. The Court held that to interpret the letter of agreement "is thus to interpret a portion of the CBA." Accordingly, because the claim was "rooted in the CBA itself and the alleged breach," it was a minor dispute

preempted by the RLA. *Pyles*, 79 F.3d at 1050. *See also Pilkington v. United Airlines, Inc.*, 112 F.3d 1532, 1539–40 (11th Cir. 1997) (contract claims preempted because they required interpretation of CBA). Numerous other courts have dismissed claims on this basis as well.[13]

RLA preemption deprives the Court of subject matter jurisdiction over the CBA claims against the Atlas Defendants, including the individual Atlas Executive Defendants. The claims against the Atlas Executive Defendants, however, are fatally defective for yet another reason. As is clear on the face of the pilots' CBA,[14] the Atlas Executive Defendants are *not parties* to the CBA. *See* Ex. F. Thus, the Atlas Executive Defendants could not be liable even if the CBA claims were not preempted. *See Air Line Pilots Ass'n, Int'l v. U.S. Airways Grp., Inc.*, 609 F.3d 338, 347 (4th Cir. 2010) (airline holding company did not breach CBA by failing to arbitrate dispute "when it . . . was never listed as a party to arbitration"); *Carswell v. Air Line Pilots Ass'n, Int'l*, 540 F. Supp. 2d 107, 121 (D.D.C. 2008) (dismissing breach of contract claim against union's parent, recognizing that "any suit for breach of [a CBA] must be directed toward [its] parties").

### E.  Count VII: Plaintiffs' Fraud Claims Against All Defendants Fail.

Count VII must satisfy Rule 9(b)'s particularity requirement for fraud, in addition to other requirements, to state a claim. Pleading "with particularity" means "identifying the who, what, when, where, and how of the fraud alleged." *Omnipol, A.S. v. Multinat'l Def. Servs., LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022). Specifically, the Eleventh Circuit requires a plaintiff to plead:

(1) precisely what statements were made in what documents or oral representations

---

[13] *See, e.g.*, *Jensen v. Delta Airlines, Inc.*, 2019 WL 922509, at *2 (6th Cir. Feb. 12, 2019); *Grimes v. CSX Transp., Inc.*, 338 F. App'x 522, 524 (7th Cir. 2009); *McCormack v. Aircraft Mechs. Frat. Ass'n*, 340 F.3d 642, 646 (8th Cir. 2003); *Ertle v. Cont'l Airlines, Inc.*, 136 F.3d 690, 694 (10th Cir. 1998).

[14] The Court can consider the CBA referenced in the Complaint (¶ 210) because it is central to Plaintiffs' breach of contract claim and is undisputedly authentic. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

> or what omissions were made, and (2) the time and place of each such statement
> and the person responsible for making (or, in the case of omissions, not making)
> same, and (3) the content of such statements and the manner in which they misled
> the plaintiff, and (4) what the defendants "obtained as a consequence of the fraud."

*Urdaneta*, 2010 WL 11504729, at *2. Also, "Plaintiffs cannot lump together all defendants in an

allegation of fraud." *Flamenbaum v. Orient Lines, Inc.*, 2004 WL 1773207, at *6 (S.D. Fla. July

20, 2004).

Here, Plaintiffs' fraud claim must be dismissed on numerous grounds. *First*, the Complaint

makes the fatal error of lumping all Defendants together in impermissible group pleading. *See*

Compl. ¶ 366. As such, the Defendants—three separate businesses (*i.e.*, Atlas, FSI, and

Encompass) and three different Atlas Executives—each lacks "reasonabl[e] noti[ce]" of its alleged

misrepresentations. *Flamenbaum*, 2004 WL 1773207, at *6. *Second*, Plaintiffs fail to allege the

"who, what, when, where, and how" of the supposed fraud. *Omnipol*, 32 F.4th at 1307. Though

impermissibly conclusory, Plaintiffs appear to contest three broad categories of representations—

(i) vaccine efficacy, (ii) the reasonable accommodations process, and (iii) international travel

restrictions. As to the first two categories, Plaintiffs make the conclusory statement that

"Defendants made (or participated in or approved the making of) numerous false statements to

Plaintiffs . . . *including regarding the efficacy of the COVID-19 vaccines* and the *fact that Atlas*

*would offer reasonable accommodations* for those with religious or medical objections to take

COVID-19 vaccines." Compl. ¶ 366 (emphasis added). But the Complaint identifies no specific

statements made by Defendants vouching for the efficacy of the COVID-19 vaccine. Nor can

Plaintiffs clear the plausibility standard, *see Urdaneta*, 2010 WL 11504729, at *2, with their

allegations about "reasonable accommodations" since elsewhere they concede that many Plaintiffs

"have [received] religious or medical exemptions from being injected with . . . COVID-19

'vaccines' . . . from Atlas and other Defendants." Compl. ¶ 10; *id.* ¶ 168 ("Numerous Plaintiffs

applied for and received a medical or religious accommodation . . .").

Further, the Complaint identifies no Plaintiff whose request for accommodation was denied. If Plaintiffs' fraud claim instead rests on a dispute about whether the accommodations Defendants provided were "reasonable"—this legal conclusion cannot support a fraud claim. *See, e.g.*, *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (explaining that a fraud tort must be based on "a false statement concerning a material fact"); *Capps Agency, Inc. v. MCI Telecomms. Corp.*, 863 F. Supp. 1555, 1558 (M.D. Fla. 1993) (fraud claim cannot be based on "opinion or a misrepresentation of law"). Plaintiffs' allegations about supposed misstatements "regarding vaccine requirements of different countries, including Germany and the countries of South America" (Compl. ¶ 367) fare no better. Again, Plaintiffs provide no details about what Defendants allegedly said, when they said it, and in what context. *Omnipol*, 32 F.4th at 1307. But even if they had, Plaintiffs still fail to allege with *plausibility* and *particularity* the elements of fraud for this (or any other) statement, such as the requisite knowledge of falsity by the Defendants.

*Third*, Plaintiffs fail to adequately allege the elements of fraud: "(1) a false statement concerning a material fact, (2) the representor's knowledge that the representation is false, (3) an intention that the representation induce another to act on it, and (4) consequent injury by the party acting in reliance on the representation." *Butler*, 44 So. 3d at 105. To illustrate, the Complaint lacks factual allegations plausibly suggesting that any statements were, indeed, false, let alone that any Defendant *knew* the statements were false. In order to meet the "plausibility standard, a plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Urdaneta*, 2010 WL 11504729, at *1. Thus, for each claim, the plaintiff must set forth plausible factual allegations that establish all "the material elements of a cause of action." *Miami*, 637 F.3d at 1186. Well-pled facts must show "more than

a sheer possibility that a defendant has acted unlawfully"—facts "merely consistent with a defendant's liability" are not enough. *Marrache*, 17 F.4th at 1099.

With respect to international restrictions, Plaintiffs claim that Defendants "falsely stated that [Germany, South America, and certain other areas] legally required people flying into those areas to be vaccinated with more than a single dose of the Johnson & Johnson vaccine, but the Company knew that these areas had no restrictions." Compl. ¶ 374. Missing are any allegations about the supposedly true state of COVID-19 restrictions or what enables the Court to draw the "reasonable inference" that Defendants lied about such facts. *Miami*, 637 F.3d at 1186. This pleading deficiency is little wonder, since public information shows that countries like Germany did, in fact, define fully vaccinated for travel as individuals who received two COVID-19 shots.[15]

As to purported injury, although Plaintiffs include generalized statements about supposed future harms arising from the COVID-19 vaccine, they never connect any specific injury suffered by any specific Plaintiff to any specific Defendant's allegedly fraudulent statement. Plaintiffs appear to refer to "the death of [former] lead Plaintiff Lane Caviness" (Compl. ¶ 280) as a vaccine complication, but the Court cannot credit this as a well-pled factual allegation because, elsewhere, Plaintiffs admit that Mr. Caviness died in "a violent confrontation with law enforcement." *Id.* ¶ 179; *see Smith v. City of Fort Pierce*, 2018 WL 5787269, at *6 (S.D. Fla. Nov. 5, 2018) (in "ruling

---

[15] *See* German Missions in the United States ("For vaccinations with Johnson & Johnson (Janssen-Cilag) a second dose with one of the vaccines specified on the website of the Paul-Ehrlich-Institute is necessary."), available at https://web.archive.org/web/20220204204955/https://www.germany.info/us-en/coronavirus/2317268 (archived version last visited Feb. 5, 2023, withdrawn in March 2022); *see also* Proof of vaccination within the meaning of the Infection Protection Act (IfSG) (Paul-Ehrlich-Institute specifying that, as of January 2022, for COVID-19 Vaccine Janssen (*i.e.*, Johnson & Johnson) two shots were required), available at www.pei.de/EN/newsroom/dossier/coronavirus/coronavirus-content.html;jsessionid=204993DA49B650D6323F75907B1743D6.intranet221?cms_pos=3.

on a motion to dismiss . . . need not accept factual claims that are internally inconsistent.").

*Fourth*, fraud claims against the Atlas Executive Defendants fail for the further reason that Plaintiffs do not specify what, if any, specific statements or omissions by these three individuals (John Dietrich, Patricia Goodwin-Peters, and Jeffrey Carlson) were fraudulent or why or how each of these Defendants had the necessary intent. *See Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364 (11th Cir. 1997); *Omnipol*, 32 F.4th at 1307. Moreover, nowhere does the Complaint include *any* statement by Defendant Jeffrey Carlson.

**F.    Count VIII: Plaintiffs' Intentional Infliction of Emotional Distress ("IIED") Claims Against All Defendants Fail to Allege the Required Elements.**

An IIED plaintiff must allege (1) the wrongdoer's conduct was intentional or reckless, (2) the conduct was outrageous; that is, as to go beyond all bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community, (3) the conduct caused emotional distress, and (4) the emotional distress was severe. *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1339 (S.D. Fla. 2012). Plaintiffs' IIED claims fail adequately to allege this exacting tort.

**1.    Defendants' Actions Involve Ordinary Workplace Conduct That Is Not Outrageous as a Matter of Law.**

To sustain an IIED claim, the tortfeasor's conduct must be "*so outrageous* in character, and *so extreme* in degree, as to *go beyond all possible bounds of decency*, and to be regarded as *atrocious*, and *utterly intolerable* in *a civilized community*." *Moore v. Pederson*, 806 F.3d 1036, 1053 (11th Cir. 2015) (emphasis added). Thus, "[a] plaintiff alleging IIED faces an extremely high burden." *Brown v. Royal Carib. Cruises, Ltd.*, 2017 WL 3773709, at *3 (S.D. Fla. Mar. 17, 2017). Outrageousness is a question of law, not fact. *Garcia*, 838 F. Supp. 2d at 1339. "Conduct such as mere insults, indignities, threats, or false accusations will not result in liability." *Martz v. Munroe Reg'l Med. Ctr., Inc.*, 2007 WL 2044247, at *3 (M.D. Fla. July 10, 2007). Moreover, "[c]laims of intentional infliction of emotional distress related to employment discrimination cases have been

consistently rejected as failing to meet the threshold burden." *Id.*; *see also Kautz v. Residence Inn by Marriott, LLC*, 2014 WL 4416012, at *4 (M.D. Fla. Sept. 5, 2014). Here, Plaintiffs vaguely refer "to the conduct set forth in this Complaint" to support their IIED claims. Compl. ¶ 385. Even if the Court looks past this shotgun-approach (Part V.A), the Complaint does not come close to alleging the outrageousness required for an IIED claim. Plaintiffs assert that Defendants:

- Sought to comply with the Contractor E.O, OSHA's ETS, and CDC guidelines (Compl. ¶¶ 160–61, 172);

- Revised vaccine policies in light of dynamic regulatory landscapes (*id.* ¶¶ 172, 193, 195–96, 200–03);

- Modified vaccine policy deadlines for employees (*id.* ¶¶ 162–66, 174);

- Permitted (and granted) vaccine exemptions (*id.* ¶¶ 162, 168, 175, 198, 203, 216); and

- Required COVID-19 testing or masking (*id.* ¶¶ 188, 195, 198).

In sum, the supposedly "*outrageous*" conduct consists of employers complying with health and safety laws and regulations, and implementing precautions against COVID-19 in the workplace, including following the CDC's recommendations, which *is objectively reasonable*. *See Lloyd*, 570 F. Supp. 3d at 1183–84 (noting the legitimacy of following CDC guidance).

Seeking to salvage their IIED claims from those they dismissed in July 2022, Plaintiffs now allege "[t]here is a high degree of probability that Plaintiffs would suffer from severe emotional distress by getting fired, retaliation from the Defendants, being forced to get the vaccine, or a pay cut" (Compl. ¶ 385), even though the Complaint alleges no Plaintiff who was fired, forced to get the vaccine, or suffered a pay cut. The IIED count also now alleges Defendants' conduct included "threats, harassment, embarrassment, yelling, and intimidation that is so extreme in degree, as to go beyond all bounds of decency." *Id.* ¶ 386. Although couched in conclusory legal language, the well-pled facts do not describe anything that could be "regarded as atrocious, and

utterly intolerable in a civilized community," as an IIED claim requires. Indeed, allegations of extreme abuse, including yelling, verbal harassment, intimidation, and even threats to feel "pain," are *not* sufficient to sustain an IIED claim. *See Santasiero v. Martin*, 2021 WL 2856622, at *6 (M.D. Fla. July 8, 2021). Recently, several courts have rejected IIED claims premised on employer COVID-19 policies. *See Cala v. Moorings Park Cmty. Health, Inc.*, 2022 WL 17405581, at *4–5 (M.D. Fla. Dec. 2, 2022) (dismissing IIED claim in which Plaintiff "allege[d] that she was deliberately terminated because she refused to take the COVID-19 vaccination"); *Finkbeiner v. Geisinger Clinic*, 2022 WL 3702004, at *7 (M.D. Penn. Aug. 26, 2022) (dismissing IIED claim premised on employer's COVID-19 vaccinate-or-test policy and finding that giving employees "the choice of a jab, a swab, or their job" was not outrageous as a matter of law).

### 2.    The Complaint Does Not Plausibly Allege Intent.

To establish intent, Plaintiffs must plausibly allege that Defendants enforced vaccine policies knowing "that severe distress [was] certain, or substantially certain to result." *Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir. 1990); *accord Knezevich v. United States*, 2019 WL 1093449, at *5 (M.D. Fla. Jan. 15, 2019). Plaintiffs, however, fail to plausibly allege that Defendants had reason to doubt the safety of COVID-19 vaccines, which the Complaint acknowledges (i) were approved by the FDA (Compl. ¶ 141), (ii) mandated in various settings by the federal government (*id.* ¶ 213), and (iii) recommended by the CDC (*id.* ¶ 160). As such, Plaintiffs do not (and cannot) allege that Defendants adopted their vaccination policies knowing that "severe distress [was] certain or substantially certain to result." *Knezevich*, 2019 WL 1093449, at *5. Instead, Plaintiffs seek to infer intent based on the supposedly "high degree of probability [of] emotional distress" stemming from—as explained above—workplace injuries that cannot support an IIED claim. Compl. ¶ 385.

### 3. The Complaint Does Not Plausibly Allege Severe Suffering.

Plaintiffs allegedly face worry, workplace bullying, disparate treatment based upon vaccination status, threats of job loss, and invasions of privacy. Compl. ¶¶ 3, 221, 313, 386–87. Yet, those harms are not sufficiently severe to be actionable. *See Negron v. CitiMortg. Inc.*, 2016 WL 10953267, at \*12 (S.D. Fla. Oct. 19, 2016). Plaintiffs' new allegation as to Lane Caviness likewise fails this element. According to the Complaint, "Atlas pilot Lane Caviness was a leading plaintiff in the original complaint filed in this dispute and took a lead role in finding counsel and sharing his grievances with Atlas mandates and related imposition. When Caviness became known as an anti-mandate activist within the company, he became a target for discrimination and lost prospects. The distress stemming from Caviness's isolation within Atlas Air ultimately contributed to a violent confrontation with law enforcement in August 2022 in which Caviness was tragically killed." Compl. ¶ 179.

These allegations are insufficient for at least two reasons. *First*, Plaintiffs do not support their allegation that Mr. Caviness "became a target for discrimination and lost prospects" with any substantive factual allegations of wrongdoing by Defendants. *Decius v. Nat'l Serv. Indus., Inc.*, 2001 WL 1621924, at \*2 (S.D. Fla. Nov. 1, 2001) (dismissing IIED claim where plaintiff alleged only opinions and legal conclusions). *Second*, even if Plaintiffs had plausibly alleged wrongdoing, Mr. Caviness's "subjective response to [Defendants'] conduct" does not control. *Santasiero*, 2021 WL 2856622, at \*7. Rather, measured against the proper objective standard, Mr. Caviness's alleged response and confrontation with police is not a reasonably predictable consequence of the Defendants' ordinary workplace conduct related to the vaccine policy. *Id.*

### CONCLUSION

The Court should dismiss the Complaint with prejudice, and Plaintiffs should not be afforded the opportunity to replead, as they amended their pleadings after their voluntary dismissal.

Dated: February 6, 2023

Respectfully submitted,

*/s/ Michelle Hogan*
Eliot Pedrosa
Florida Bar No. 182443
epedrosa@jonesday.com
Michelle Hogan
Florida Bar No. 1010992
mhogan@jonesday.com
JONES DAY
600 Brickell Avenue, Suite 3300
Miami, FL 33131
Telephone:  (305) 714-9700
Facsimile:  (305) 714-9799

Jonathan M. Linas (*pro hac vice*)
jlinas@jonesday.com
JONES DAY
110 N. Wacker Drive, Suite 4800
Chicago, IL 60606
Telephone: (312) 782-3939
Facsimile: (312) 782-8585

Alexander V. Maugeri (*pro hac vice*)
amaugeri@jonesday.com
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

***Attorneys for Atlas Defendants***

*/s/ Michael A. Grisham*
Michael A. Grisham (*pro hac vice forthcoming*)
grisham.michael@dorsey.com
DORSEY & WHITNEY LLP
1031 West Fourth Avenue, Suite 600
Anchorage, Alaska 99501
Telephone:  (907) 257-7829
Facsimile:  (907) 276-4152

***Attorney for EncompassAir, LLC***

*/s/ Matthew A. Green*
Matthew A. Green
Florida Bar No. 1019717
matthew.green@csklegal.com
S. Jonathan Vine
Florida Bar No. 10966
jonathan.vine@csklegal.com
COLE SCOTT KISSANE, PA
222 Lakeview Avenue, Suite 120
West Palm Beach, Florida 33401
Telephone:  (561) 383-9200
Facsimile:  (561) 683-8977

***Attorneys for Flight Services International LLC***

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on February 6, 2023, I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to all parties at the email addresses on file with the Clerk of Court.

<u>*/s/ Michelle Hogan*   </u>
Michelle Hogan