# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **ESTATE OF LANE CAVINESS (LANDON CAVINESS AND MORGAN CAVINESS), PATRICK AKERLUND, MICHAEL ALZATI, ERIC W ANDERSON, MICHAEL G. BALLARD JR. , CINDY BARRIONUEVO, LARRY JAMES BEARCE JR., ROBERT BELLMAN, BENJAMIN BENDIBURG, DOUGLAS BERRY, GREGORY BERRY, LYNETTE BOTHA, CALEB BUEHRER, RICHARD BULLOCK, JON CARROLL, VERGIL CASKEY, JAMES CASTOR, NATHAN CHARBONEAU, SHAWN CHURCHEL, JOEL COLON, MARK CONNOR, MATTHEW CRONAUER, FRED CUNNINGHAM, ROYAL DANZA, ELLIOT DE SOUSA, ERIC DESANDRO, STEVE DIXON, JAMES ERICKSON, LUIS ESQUIVIA, LEE ESTES, ROBERT FRATTI, JASON FRISBIE, TIMOTHY FRYE, JONATHAN FUSSLE, TONY GAMBOA, DENNIS GEBHARD, REZA GHODS, MARK GILMAN, ROBERT GIUDICE, ERIC GORDON, GREG GORDON, DANIEL GREER, REXFORD T. HEIVILIN, JASON HENNING, DAVID HEWSON III, TODD HONTZ, DANIEL HUDSON, ROGER JUSTICE, VENANCIUS KASSANDJI, JOHN KEARINS, RICKY KINDER, BETH KIRBY, ANDREAS N. KOUSTAS, CHAD KRAVETZ, CARL LINDBERG, JOSEPH LOSCHIAVO, ANDREW LUTZ, BLYTHE LUTZ, RAFAEL MACARIO, DOUGLAS P. MAYO JR, APRIL MCQUILLEN, CHRISTOPHER MCQUILLEN, STEVEN MEISSNER, JEFFREY MICHONSKI, ANDREW MICKLER, COREY MORRIS, STEVEN MURATORE, GREGORY MYERS, PETER NAPORA, JOEL PARDO,** | Cause No. 1:22-cv-23519-KMM<br><br><br><br><br>**FIRST AMENDED COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Amended Complaint and
Demand For Jury Trial-- 1

**LANCE PHILLIPS, PATRICK PHILLIPS, GLEN PRONK, CHARLES RANDALL, PETER RAYMOND, JOSHUA ROBERTS, REBECCA ROBERTSON, JASON ROGERS, KIMBERLY SCHRECK, WILLIAM SERRITELLA, GENTRY SHELTON, TODD SNAZA, DONALD SORRENTINO, MARK SOUTH, MICHAEL STARK, ELIZABETH STONEKING, FORREST STOWELLS, BARBARA JANEICE SURBER, JOHN SWIFT, NICK TAYLOR, MARK THIEN, WILLIAM THOMPSON, BRANDON THOROUGHMAN, GERI TONDA, RICARDO TORRES ABARCA, GUSTAVO VERDES, JAMES VILLELLA, FARSHAD ZARRABIAN**

individuals,

Plaintiffs,

v.

**ATLAS AIR INC**., a Delaware corporation, **FLIGHT SERVICES INTERNATIONAL, LLC**, a Texas limited liability company, **ENCOMPASSAIR, LLC,** an Alaska limited liability company, and **JOHN W. DIETRICH, PATRICIA GOODWIN-PETERS, JEFFREY**

**CARLSON,** individuals,

Defendants.

**Amended Complaint and Demand For Jury Trial-- 2**

**<u>NATURE OF THE CASE</u>**

1.      Plaintiffs are pilots, flight attendants, mechanics and other ground staff of Atlas Air, Inc. ("Atlas") and its affiliated companies Flight Services International, LLC ("FSI") and EncompassAir, LLC, ("ECA"), whose rights were brazenly violated in connection with Defendants' implementation of mandates, policies and procedures relating to COVID-19 vaccinations.

2.      This is an action for legal and equitable relief to redress Defendants' invasions of privacy, negligence, breach of contract, retaliation, failure to accommodate, disparate treatment, creation of a hostile work environment, violations of the Genetic Information Non-Disclosure Act ("GINA") and intentional and negligent infliction of emotional distress.  Such wrongful conduct was predicated on Defendants' unlawful discrimination, harassment, and retaliation against Plaintiffs.

3.      This lawsuit also seeks declaratory relief from the Defendants' vaccine mandate on the basis that Defendants' conduct was indistinguishable from that of the U.S. Government and Defendants' vaccine mandate, as applied, violates privacy, equal protection and due process protections secured by both the Constitution of Florida and the Constitution of the United States.

4.      Defendants used deception, discrimination, psychological manipulation, and physical isolation to force Plaintiffs, under threat of termination, to participate in a dangerous social and medical experiment.

5.      Defendants have made Plaintiffs second-class citizens within their respective companies and targeted them in a campaign of harassment designed to force Plaintiffs to submit to an injection of an unknown, experimental substance of questionable efficacy.

**Amended Complaint and
Demand For Jury Trial-- 3**

Defendants' vaccine mandate was illegally constituted, lacked a learned intermediary, and it engendered a hostile working environment for Plaintiffs.  Defendants' actions and workplace toxicity forced Plaintiffs into an impossible decision they never wanted to make: take an experimental gene-based therapy at the expense of their religious beliefs and/or health or lose their livelihoods and the means by which they provide for their families.

6.     Defendants granted Plaintiffs religious 'accommodation' with an ever-present possibility of termination and immediately proceeded to deny them benefits and equal opportunities and created a hostile work environment by forcing Plaintiffs to wear individually identifiable symbols distinguishing them from their peers and gave public disclosure of their private and protected health information.

7.     Defendants also violated the rule of informed consent, by coercing Plaintiffs to submit to the vaccine without any information on the potential risks or benefits. Several Plaintiffs (and other Atlas employees) have suffered adverse side-effects and harm as a result of submitting to the vaccine.  In addition to actual physical harm, Plaintiffs now face emotional distress as they worry about possible long-term side effects.  This suit is further brought to redress the harms Defendants have dispassionately brought upon their own employees after years of loyal service, to make them whole, and to help ensure the principles of medical freedom through informed consent are preserved.

**Amended Complaint and
Demand For Jury Trial-- 4**

8.      These risks may even extend to the public if pilots who submitted to Defendant pressure to take the vaccines suffer health effects while flying.[1]

## PARTIES

9.      Plaintiff **Landon Caviness** is an individual and joint personal representative of employee, the Estate of Lane Caviness

10.      Plaintiff **Morgan Caviness** is an individual and joint personal representative of employee, the Estate of Lane Caviness

11.      Plaintiff **Patrick Akerlund** is an individual and employee of Atlas.

12.      Plaintiff **Michael Alzati** is an individual and employee of Atlas. He resides in the state of Florida.

13.      Plaintiff **Eric W. Anderson** is an individual and employee of Atlas.

14.      Plaintiff **Michael G. Ballard Jr**. is an individual and employee of Atlas

15.      Plaintiff **Cindy Barrionuevo** is an individual and employee of FSI

---

[1] *See, e.g.*, Hoft, Jim. "Pilot dies suddenly after collapsing shortly after takeoff from Chicago airport," *Gateway Pundit.*  November 22, 2022 (detailing sudden death of a vaccinated pilot for another airline while in flight; only the skill of a copilot saved the lives of dozens of passengers). There is a long list of pilots and crew members who have been incapacitated or died during or shortly before or after flights following vaccination. Further, the FAA has now discouraged pilots from getting the Johnson & Johnson vaccine due to increased risk of stroke unless no other vaccination option is available. Clearly, the FAA is accepting the increased risk of stroke from the J&J vaccine as opposed to remaining vaccine free.  This is a safety of flight issue.

**Amended Complaint and
Demand For Jury Trial-- 5**

16.     Plaintiff **Larry James Bearce, Jr**. is an individual and employee of Atlas.

17.     Plaintiff **Robert Bellman** is an individual and employee of Atlas. He resides in the state of Florida.

18.     Plaintiff **Benjamin Bendiburg** is an individual and employee of Atlas.

19.     Plaintiff **Douglas Berry** is an individual and employee of Atlas.

20.     Plaintiff **Gregory Berry** is an individual and employee of Atlas.

21.     Plaintiff **Lynette Botha** is an individual and employee of Atlas.

22.     Plaintiff **Caleb Buehrer** is an individual and employee of Atlas. He resides in the state of Florida.

23.     Plaintiff **Richard Bullock** is an individual and employee of Atlas. He resides in the state of Florida.

24.     Plaintiff **Jon Carroll** is an individual and employee of Atlas.

25.     Plaintiff **Vergil Caskey** is an individual and employee of Atlas.

26.     Plaintiff **James Castor** is an individual and employee of Atlas.

27.     Plaintiff **Nathan Charboneau** is an individual and employee of Atlas.

28.     Plaintiff **Shawn Churchel** is an individual and employee of Atlas. He resides in the state of Florida.

29.     Plaintiff **Joel Colon** is an individual and employee of Atlas. He resides in the state of Florida.

30.     Plaintiff **Mark Connor** is an individual and employee of Atlas.

31.     Plaintiff **Matthew Cronauer** is an individual and employee of Atlas.

32.     Plaintiff **Fred Cunningham** is an individual and employee of Atlas.

33.     Plaintiff **Royal Danza** is an individual and employee of Atlas.

34.      Plaintiff **Elliot De Sousa** is an individual and employee of Atlas.

35.      Plaintiff **Eric Desandro** is an individual and employee of Atlas. He resides in the state of Florida

36.      Plaintiff **Steve Dixon** is an individual and employee of Atlas.

37.      Plaintiff **James Erickson** is an individual and employee of Atlas.

38.      Plaintiff **Luis Esquivia** is an individual and employee of Atlas. He resides in the state of Florida.

39.      Plaintiff **Lee Estes** is an individual and employee of Atlas.

40.      Plaintiff **Robert Fratti** is an individual and employee of Atlas.

41.      Plaintiff **Jason Frisbie** is an individual and employee of Atlas.

42.      Plaintiff **Timothy Frye** is an individual and employee of Atlas. He resides in the state of Florida.

43.      Plaintiff **Jonathan Fussle** is an individual and employee of Atlas.

44.      Plaintiff **Tony Gamboa** is an individual and employee of Atlas. He resides in the state of Florida.

45.      Plaintiff **Dennis Gebhard** is an individual and employee of Atlas. He resides in the state of Florida.

46.      Plaintiff **Reza Ghods** is an individual and employee of Atlas. He resides in the state of Florida.

47.      Plaintiff **Mark Gilman** is an individual and employee of Atlas.

48.      Plaintiff **Robert Giudice** is an individual and employee of Atlas.

49.      Plaintiff **Eric Gordon** is an individual and employee of Atlas.

50.      Plaintiff **Greg Gordon** is an individual and employee of Atlas.

**Amended Complaint and
Demand For Jury Trial-- 7**

51.      Plaintiff **Daniel Greer** is an individual and employee of Atlas.

52.      Plaintiff **Rexford T. Heivilin** is an individual and employee of Atlas.

53.      Plaintiff **Jason Henning** is an individual and employee of Atlas.

54.      Plaintiff **David Hewson III** is an individual and employee of Atlas. He resides in the state of Florida.

55.      Plaintiff **Todd Hontz** is an individual and employee of Atlas. He resides in the state of Florida.

56.      Plaintiff **Daniel Hudson** is an individual and employee of Atlas.

57.      Plaintiff **Roger Justice** is an individual and employee of Atlas.

58.      Plaintiff **Venancius Kassandji** is an individual and employee of Atlas. He resides in the state of Florida.

59.      Plaintiff **John Kearins** is an individual and employee of Atlas.

60.      Plaintiff **Ricky Kinder** is an individual and employee of Atlas.

61.      Plaintiff **Beth Kirby** is an individual and employee of Atlas. She resides in the state of Florida.

62.      Plaintiff **Andreas N. Koustas** is an individual and employee of Atlas.

63.      Plaintiff **Chad Kravetz** is an individual and employee of Atlas. He resides in the state of Florida.

64.      Plaintiff **Carl Lindberg** is an individual and employee of Atlas.

65.      Plaintiff **Joseph Loschiavo** is an individual and employee of Atlas.

66.      Plaintiff **Andrew Lutz** is an individual and employee of Atlas. He resides in the state of Florida.

**Amended Complaint and**
**Demand For Jury Trial-- 8**

67.     Plaintiff **Blythe Lutz** is an individual and employee of Atlas. She resides in the state of Florida.

68.     Plaintiff **Rafael Macario** is an individual and employee of Atlas. He resides in the state of Florida.

69.     Plaintiff **Douglas P. Mayo Jr.** is an individual and employee of Atlas. He resides in the state of Florida.

70.     Plaintiff **April McQuillen** is an individual and employee of Atlas. She resides in the state of Florida.

71.     Plaintiff **Christopher McQuillen** is an individual and employee of Atlas. He resides in the state of Florida.

72.     Plaintiff **Steven Meissner** is an individual and employee of Atlas. He resides in the state of Florida.

73.     Plaintiff **Jeffrey Michonski** is an individual and employee of Atlas.

74.     Plaintiff **Andrew Mickler** is an individual and employee of Atlas.

75.     Plaintiff **Corey Morris** is an individual and employee of Atlas. He resides in the state of Florida.

76.     Plaintiff **Steven Muratore** is an individual and employee of Atlas. He resides in the state of Florida.

77.     Plaintiff **Gregory Myers** is an individual and employee of Atlas.

78.     Plaintiff **Peter Napora** is an individual and employee of Atlas.

79.     Plaintiff **Joel Pardo** is an individual and employee of Atlas.

80.     Plaintiff **Lance Phillips** is an individual and employee of Atlas.

81.     Plaintiff **Patrick Phillips** is an individual and employee of Atlas.

**Amended Complaint and
Demand For Jury Trial-- 9**

82.     Plaintiff **Glen Pronk** is an individual and employee of Atlas.

83.     Plaintiff **Charles Randall** is an individual and employee of Atlas.

84.     Plaintiff **Peter Raymond** is an individual and employee of Atlas.

85.     Plaintiff **Joshua Roberts** is an individual and employee of Atlas.

86.     Plaintiff **Rebecca Robertson** is an individual and employee of FSI.

87.     Plaintiff **Jason Rogers** is an individual and employee of Atlas.

88.     Plaintiff **Kimberly Schreck** is an individual and employee of Atlas.

89.     Plaintiff **William Serritella** is an individual and employee of Atlas. He resides in the state of Florida.

90.     Plaintiff **Gentry Shelton** is an individual and employee of Atlas.

91.     Plaintiff **Todd Snaza** is an individual and employee of Atlas.

92.     Plaintiff **Donald Sorrentino** is an individual and employee of Atlas.

93.     Plaintiff **Mark South** is an individual and employee of Atlas.

94.     Plaintiff **Michael Stark** is an individual and employee of Atlas.

95.     Plaintiff **Elizabeth Stoneking** is an individual and employee of FSI.

96.     Plaintiff **Forrest Stowells** is an individual and employee of Atlas.

97.     Plaintiff **Barbara Janeice Surber** is an individual and employee of FSI.

98.     Plaintiff **John Swift** is an individual and employee of Atlas.

99.     Plaintiff **Nick Taylor** is an individual and employee of Atlas.

100.    Plaintiff **Mark Thien** is an individual and mechanic contracted to Atlas from Encompass Air LLC.

101.    Plaintiff **William Thompson** is an individual and employee of Atlas. He resides in the state of Florida.

**Amended Complaint and
Demand For Jury Trial-- 10**

102.     Plaintiff **Brandon Thoroughman** is an individual and employee of Atlas.

103.     Plaintiff **Geri Tonda** is an individual and employee of FSI.

104.     Plaintiff **Ricardo Torres Abarca** is an individual and employee of FSI.

105.     Plaintiff **Gustavo Verdes** is an individual and employee of Atlas.

106.     Plaintiff **James Villella** is an individual and employee of Atlas. He resides in the state of Florida.

107.     Plaintiff **Farshad Zarrabian** is an individual and employee of Atlas. He resides in the state of Florida.

108.     Defendant **Atlas Air, Inc.** ("Atlas") is a Delaware corporation with its principal place of business in Purchase, New York. It is a wholly owned subsidiary of Atlas Air Worldwide Holdings, is a cargo airline, passenger charter airline, and aircraft lessor.[2]

109.     Atlas is a common carrier as defined under federal law.

110.     Atlas has a massive presence in Florida, and specifically in this judicial district, with a hub, its training center and other operations. Its training center is located at 5600 NW 36th St., Miami, FL 33166. It consists of 30,000 square feet of administrative and instructional space, including the operation of six flight simulation training devices. It "provides a wide range of advanced training solutions, specializing in aircrew training for wide body B747 and B767s." It teaches "more than 10,000 pilots, flight engineers, flight attendants, and other

---

[2] A previous EEOC investigation into Polar Air, a subsidiary of Atlas, found that it had discriminated against female pilots by not allowing them to fly into the Middle East. Polar Air was ordered to pay the individual $50,000 and to modify their discrimination/harassment policy.

**Amended Complaint and
Demand For Jury Trial-- 11**

aviation professionals each year."[3] The Atlas Miami Training Center ("MTC") has more pilots in a day than any base or station on the globe. All Atlas pilots are trained at the MTC, including annual or biannual recurrent training. There is always a massive presence of Atlas pilots, crew and other personnel in Miami.

111.    Atlas' flight training has always, since inception, been in Miami. If Atlas were to cease all operations at the MTC, it would cause a significant and detrimental impact on the operations of Atlas world-wide. Pilots do *not* spend any significant time at Atlas' Purchase, New York location.

112.    Several very important departments are based in Miami. The Vice President of Ground Operations has his primary office at the MTC because he oversees the following departments that are based at the MTC: Dangerous Goods, Special Loads and Ground Operations Training.

113.    Defendant **Flight Services International, LLC** ("FSI") is a Texas limited liability company with its principal place of business in Houston, Texas. It is a company whose exclusive business is to contract flight attendants to Atlas Air. All the flight attendants who are staffed on Atlas Air flights are contracted through FSI. FSI was founded by an Atlas contract attorney and his spouse. All its employees receive all their training at the Atlas training facility in Miami. All FSI flight attendants are trained at the MTC, including annual or biannual recurrent training. There is always a significant presence of FSI personnel in Miami. FSI

_____

[3] See, https://www.atlasairworldwide.com/2022/04/training-new-atlas-air-pilots/ (noting that "as pilots get their Atlas career off the ground, their first stop is Miami, <u>home</u> to the Atlas Air's world class Training Center." (Emphasis added).

**Amended Complaint and**
**Demand For Jury Trial-- 12**

contracts its flight attendants to Atlas Air and receives millions in dollars from Atlas Air in return.

114.    Defendant **EncompassAir, LLC** ("ECA") is an Alaska limited liability company with its principal place of business in Anchorage, Alaska. It is a company whose business is to contract mechanics to Atlas Air and other airlines.

115.    Defendant **John W. Dietrich** ("Dietrich") is an individual and is President and Chief Executive Officer for Atlas, and is a Board Member of Atlas. He keeps an executive office in Miami, FL at the MTC.

116.    Defendant **Jeffrey Carlson** is an individual and is Senior Vice President for Flight Operations for Atlas. He keeps an executive office in Miami, FL.

117.    Defendant **Patricia Goodwin-Peters** ("Goodwin-Peters") is an individual and Senior Vice President for Human Resources for Atlas. She keeps an executive office in Miami, FL.

## **MISNOMER/ ALTER EGO**

118.    In the event any parties are misnamed or are not included herein, it is Plaintiffs' contention that such was a "misidentification", "misnomer," and/or such parties are/were "alter egos' of parties named herein.  Alternatively, Plaintiffs contend that any "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

## **JURISDICTION AND VENUE**

119.    This Court has subject matter jurisdiction over this case under 28 U.S. Code § 1331 because the case arises under the Constitution, laws, or treaties of the United States.

120.    This Court has personal jurisdiction over defendants because under *International Shoe* and its progeny, they have at least minimum contacts with Florida such that traditional

**Amended Complaint and
Demand For Jury Trial-- 13**

notions of fair play and substantial justice would not be offended by the exercise of jurisdiction. In addition, personal jurisdiction is appropriate under Florida's long-arm statute, 48.193. Defendants engaged in unlawful acts regarding the COVID-19 vaccine mandates through acts within the state of Florida as well as acts outside the state of Florida that caused harm to numerous plaintiffs in the state of Florida.

121.     Venue is proper in the U.S. Southern District of Florida because Atlas Air and its affiliates, and leadership do a high percentage of their business and stage a high percentage of their flights in and around southern Florida and the Miami International Airport. In addition, the 30,000 square foot Atlas Training Center, that trains 10,000 people per year, is located in this judicial district as set forth above.

## BACKGROUND

I.       **The COVID-19 Pandemic and Vaccine Response**

122.     The United States government responded to a public health emergency of respiratory diseases caused by a novel coronavirus named "severe acute respiratory syndrome coronavirus" (SARS-COV-2), commonly known as "COVID-19," that has been detected in over 190 countries internationally, all 50 states, the District of Columbia, and all U.S. territories.

123.     On January 30, 2020, the International Health Regulations Emergency Committee of the World Health Organization ("WHO") declared the outbreak a "Public Health Emergency of International Concern."

124.     Three (3) separate COVID-19 vaccines have been developed and used in the U.S. The manufacturers are Moderna, Pfizer-BioNTech, and Johnson & Johnson.  None of the products are vaccines in the traditional meaning of the word.  Vaccines developed to eliminate

**Amended Complaint and**
**Demand For Jury Trial-- 14**

diseases like polio, smallpox and the measles provide individuals with immunity from contracting the particular condition.  These products do not provide individuals with immunity from contracting COVID-19.  Instead, they are promoted on the grounds that they provide a "level of protection against contracting COVID-19" or that they may provide a level of protection against the "effects of COVID-19." Nevertheless, these medical products are commonly given the misnomer "vaccine."

125.     Traditional vaccines contain whole or part of a harmless bacteria or virus that is sought to provide inoculation by speeding up a process that occurs naturally.  These traditional vaccines allow one's cells to "learn" how to defend against the viral agent without suffering the consequence of a "live" virus.  In contrast, all three COVID-19 vaccines utilize (never-before tested on humans) technology which constitutes "gene therapy."  Two vaccines contain messenger ribonucleic acid ("mRNA"), inserted into the cell nucleus, which serve as instructions or a recipe for the creation of a spike protein that triggers an immune response; they are synthetic surrogates of the body's genetic information. Johnson & Johnson's medical product uses a different platform but retains same type of gene therapy outcome.

126.     The Food and Drug Administration ("FDA") issued an Emergency Use Authorization ("EUA") for the medical product manufactured by Pfizer-BioNTech on December 11, 2020.  One week later, the FDA issued an EUA for the Moderna COVID-19

**Amended Complaint and
Demand For Jury Trial-- 15**

medical product.  Finally, the FDA issued an EUA for the Johnson & Johnson COVID-19 medical product on February 27, 2021.[4]

127.    An EUA is not synonymous with FDA approval.  Instead, an EUA is an administrative mechanism that allows the use of an 'unapproved' medical product.  An EUA may be granted by the FDA to (among other reasons) facilitate medical countermeasures against the spread of infectious diseases.  EUA's may be terminated or revoked by the FDA as additional information about the use of the individual medical product becomes better known.

**II.      Recent History of Vaccination Mandates & Accompanying Litigation.**

128.    Three realms of employment have been the primary issue in COVID-19 litigation: (i) employees of federal contractors; (ii) private sector employees; and (iii) government employees and establishments that receive Medicare and Medicaid.

129.    First, the U.S. Court of Appeals for the Eleventh Circuit addressed the realm of litigation involving federal contractors.  On January, 20, 2021, President Joe Biden signed Executive Order 13991 ("EO 13991"), establishing the creation of the "Safe Federal Workforce Task Force" ("Task Force"), whose stated mission is to "provide ongoing guidance to heads of agencies on the operation of the Federal Government, the safety of its employees, and the continuity of Government functions during the COVID-19 pandemic.[5]  On September 9, 2021,

_____

[4] On August 23, 2021, the FDA issued an approval for the Pfizer vaccine, Comirnaty, for individuals sixteen (16) years of age and older.  On January 31, 2022, the FDA announced the approval of Moderna's COVID-19 vaccine that is marketed as Spikevax.  At this time, Johnson & Johnson's COVID-19 vaccine has yet to be FDA approved for anything other than EUA.

[5] 86 Fed. Reg. 7,045-48 (Jan. 20, 2021).

**Amended Complaint and
Demand For Jury Trial-- 16**

Biden signed Executive Order 14042 ("EO 14042"),[6] to "promote[ ] economy and efficiency in Federal procurement by ensuring that the parties that contract with the Federal Government provide adequate COVID-19 safeguards to their workers performing on or in connection with a Federal Government contract or contract-like instrument," which would "decrease worker absence, reduce labor costs, and improve the efficiency of contractors and subcontractors at sites where they are performing work for the Federal Government."[7]  On December 9, 2021, a Georgia federal district court judge issued a preliminary nationwide injunction that halted enforcement of EO 14042 in the case, *Georgia v. Biden*.[8]  The scope of this injunction was applicable to all federal contractors and subcontractors in all covered contracts in any state or territory of the U.S.  The Eleventh Circuit Court of Appeals subsequently held that the injunction should be narrowed to specific states, to a specific industry group, and in the narrow situation of deciding whether to grant a contract to those specific members or to other contract bidders.[9]

130.    Second, the U.S. Supreme Court tackled the issue of vaccine mandates on private sector employees on January 13, 2022, in the case, *NFIB v. OSHA*.[10]  On September 9, 2021,

---

[6] 86 Fed. Reg.  50,985-88 (Sept. 9, 2021).

[7] *Id.*

[8] *Georgia v. Biden*, 574 F.Supp.3d 1337 (S.D. Ga. 2021).

[9] *Georgia v. President of the U.S.*, 46 F.4th 1283 (11th Cir. 2022).

[10] *Nat'l Fed'n of Indep. Bus. v. Dep't. of Lab., Occupational Safety & Health Admin.*, 142 S.Ct. 661 (2022).

**Amended Complaint and Demand For Jury Trial-- 17**

Biden announced "a new plan to require more Americans to be vaccinated." This would be achieved by the Department of Labor issuing an emergency rule (OSHA's COVID-19 Emergency Temporary Standard (ETS)) requiring all employers with at least 100 employees to be vaccinated or show a negative test once a week.[11] The declared purpose of the mandate was to increase vaccination rates at "businesses all across America,"[12] forcing eighty-four (84) million Americans to submit to the medical products. Unvaccinated employees who did not comply with OSHA's rule would be "removed from the workplace." The rule allowed for individuals to submit religious or medical accommodation requests in accordance with the requirements of Title VII[13] of the Civil Rights Act of 1964, which prohibits employment discrimination based on race, color, religion, sex, and national origin. The U.S. Supreme Court described the rule as, "a significant encroachment into the lives – and health – of a vast number of employees" and ultimately struck down the ETS on January 13, 2022.[14]

131.    Third, the U.S. Supreme Court on January 13, 2022, simultaneously addressed the realm of healthcare service providers when the Court upheld a regulation issued by the Secretary of Health and Human Services ("HHS") that required facilities that accept Medicare

---

[11] *Id*. at 663.

[12] *Id*. (quoting Remarks on the COVID-19 Response and National Vaccination efforts, 2021 Daily Comp. of Pres. Doc. 775, p.2).

[13] *See*, Fed. Reg. 61402-551 (Nov. 5, 2021).

[14] *Id*.

**Amended Complaint and
Demand For Jury Trial-- 18**

and Medicaid funding to require their employees to be vaccinated.[15]  However, the Court held

that a facility *must recognize* an individual's religious and medical accommodation/ exemption

*requests* pursuant to the rule, and *must comport with* the obligations prescribed by *Title VII.*[16]

(Emphasis added).

### III.        Conflation of Issues and Strict Interpretation of Religion under Title VII

132.    Plaintiffs are of the belief that recent litigation efforts to redress unlawful

business practices have been to no avail because business entities, like Defendants, are able to

side-step their obligations under Title VII for two (2) primary reasons.  First, Plaintiffs contend

that recent litigation surrounding this developing area of the law has conflated the issues of

vaccination mandates with Title VII discrimination analysis.  Second, Plaintiffs also contend

that there has been too strict of an interpretation given to an individual's sincerely held

---

[15] *Biden v. Missouri*, 142 S.Ct. 647 (2022).

[16] 86 Fed. Reg. 61571-72.

**Amended Complaint and
Demand For Jury Trial-- 19**

religious beliefs and that Plaintiffs "sincerely held religious beliefs" are synonymous with Title VII's enumerated depiction of the word "religion."[17]

133.    In addressing the first issue, one of the purposes of this complaint is to seek applicable redress afforded to Plaintiffs pursuant to Title VII, which prohibits the unlawful employment practices undertaken by Defendants.[18]  While this suit also seeks to challenge the constitutionality of the Defendants' vaccine mandate, as applied, differentiation between these claims is necessary when conducting Title VII analysis.

134.    In addressing the second issue, Plaintiffs contend that there has been too strict of an interpretation of their "sincerely held religious beliefs" and that their religious beliefs are to

---

[17] Title VII of the Civil Rights Act of 1964 provides in pertinent part:

(a)    It shall be an unlawful employment practice for an employer-

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's…religion…; or

(2) to limit, segregate, or classify his employees or applicants for employment in a way which would deprive or tend to deprive any individual of employment opportunities or adversely affect his status as an employee, because of such individual's…religion.

42 U.S.C. § 2000e-(2)(a)(1) and (2) (emphasis added).

[18]See, 42 U.S.C. § 2000e et seq.

**Amended Complaint and**
**Demand For Jury Trial-- 20**

be considered synonymous with the Title VII's specific statement affording protections based on "religion."  Under Title VII, religion is defined broadly to include all aspects of an individual's belief, observance, and practice.[19]  Furthermore, this broad definition has been incorporated by the U.S. Equal Employment Opportunity Commission ("EEOC") in promulgation of regulations pertaining to religious discrimination.

135.    Plaintiffs sincerely held religious beliefs are congruent with Title VII's depiction of religion, U.S. Supreme Court precedent, applicable regulations pertaining to religion, and with EOCC guidance.

**IV.       Plaintiffs Possess Sincerely Held Religious Beliefs Recognized by Law**

136.    Plaintiffs possess sincerely held religious beliefs that their body is a temple, and that their Creator planned their existence upon their creation.   Plaintiffs conscience prohibits them from being inoculated with any experimental foreign substance or biological/medical material that violates their religious convictions and will alter the biological aspects of their human body.

137.    Plaintiffs' sincerely held religious beliefs are commonly shared by millions of people around the world.

138.    Plaintiffs religious beliefs are not based upon social, political, economic, or personal philosophies.

139.    Plaintiffs' religious beliefs are founded by the teachings of a globally accepted religion that espouses moral or theistic beliefs as to what is right and wrong and concerns ultimate ideas about an individual's life, purpose, and death.

---

[19] 42 U.S.C. § 2000e(j).

**Amended Complaint and
Demand For Jury Trial-- 21**

140.     Moreover, Plaintiffs contend that it is instrumental to note that the current three commercialized "vaccines" are not vaccines by any traditional definition; rather, these vaccines are gene-altering experimental therapies.  Plaintiffs contend that the introduction of mRNA into their body, or gene therapy, which contains a body-foreign biological/medical substance that delivers metaphorical instructions that alter cell behavior and design, is incongruent with their deeply held religious beliefs that their body is a temple and that their Creator planned their existence and biological design before birth.  Further, the introduction of gene therapy medical products causes a fundamental change in the genetic design that their Creator imparted within them.  This differentiation illustrates a fundamental difference between traditional vaccines, such as chicken pox or the measles, and the three commercialized COVID-19 "vaccines."

141.     Based on this interpretation, Plaintiffs contend there is a substantial difference between non-mRNA vaccinations and gene therapy vaccines in terms of their religious beliefs. Accordingly, Plaintiffs contend comparing a these two types of vaccines is a false equivalency.

142.     Plaintiffs have conducted themselves with grace in the face of Defendants' oppressive and discriminatory conduct and are entitled to the relief sought.

## GENERAL ALLEGATIONS

143.     By mid-March 2020, even though the untreated mortality rate was below one-half of one percent, COVID-19 had been declared a pandemic. The subsequent lockdowns and measures taken by governments and large corporations wreaked havoc on the global economy and tore at the societal fabric.

144.     The three "vaccines" developed as a response to the COVID-19 virus did not go through any standard form of clinical trials or normal FDA approval. Rather, they were rushed through pursuant to EUA's.

**Amended Complaint and**
**Demand For Jury Trial-- 22**

145.    A vaccine may be deemed unreasonably dangerous because of the absence of an adequate warning accompanying the product, as the product may be unavoidably unsafe without such warning. No warnings regarding these medical products were provided by Defendants to Plaintiffs.

146.    Nowhere in American law is there any authority to mandate EUA medicines without informed consent. "Informed" establishes that a person must be informed of known and potential benefits, known and potential risks of such use, and of the extent to which such benefits and risks are unknown.  "Consent" establishes that all persons must have the option to refuse administration of the product. Punishments or consequences for refusing medical products are strictly prohibited based on the express wording and intent of the law.[20]

147.    Further, the administration of these vaccines is performed through intermuscular injection and implicates significant, Constitutionally protected privacy interests, such as the right to be safe from battery.

148.     Plaintiffs are not unique or abhorrent. Millions of Americans refused to take these experimental medical products for numerous reasons, including for religious reasons.

149.    Those who chose to not take a COVID-19 "vaccine" were prescient. These vaccines are ineffective, dangerous and – in many cases – deadly, as shown both anecdotally and through the Vaccine Adverse Effects Reporting System ("VAERS") and Department of Defense Medical Epidemiology Database ("DOD DMED").[21]  These data were referenced to

---

[20] *See*, 21 U.S. Code Sec.360bbb-3(e)(1)(A)(ii)(III).

[21]*See*,https://openvaers.com/?utm_source=newsletter_31&utm_medium=email&utm_campaig

the Defendants before Defendant's mandate deadline.  Cases of myocarditis, pericarditis, Sudden Adult Death Syndrome (SADS), and other unexplainable deaths appear to be unique to people who did receive these COVID-19 vaccines.

150.    COVID-19 vaccines are Virus-Based Gene Therapies ("VBGT") according to the FDA's own definition.[22] These medical products are unequivocally based upon injecting genetic information into a person to change or manipulate the person's genetic information.

151.    According to the FDA: "Gene therapy products are all products that mediate their effects by transcription and/or translation of transferred genetic material and/or by integrating into the host genome and that are administered as nucleic acids, viruses, or genetically engineered microorganisms."[23]

---

n=the-openvaers-red-box-report ; *See also* https://health.mil/Military-Health-Topics/Health-Readiness/AFHSD/Data-Management-and-Technical-Support/Defense-Medical-Epidemiology-Database ; *See also* https://renz-law.com/dmed-data/

[22] *See*, https://www.fda.gov/vaccines-blood-biologics/cellular-gene-therapy-products/what-gene-therapy

[23] *See*, Section I, Ftn't 1 of FDA's guidance entitled: "Design and Analysis of Shedding Studies for Virus or Bacteria-Based Gene Therapy and Oncolytic Products" dated August, 2015. https://www.fda.gov/media/89036/download

**Amended Complaint and
Demand For Jury Trial-- 24**

152.     According to the Center for Disease Control ("CDC"): "Messenger RNA, or mRNA, is genetic material that tells your body how to make proteins."[24]

153.     According to Genome.gov: "mRNA acts as a cellular messenger. DNA, which is stored in a cell's nucleus, encodes the genetic information for making proteins. mRNA transfers a copy of this genetic information outside of the nucleus, to a cells' cytoplasm, where it is translated into amino acids by ribosomes and then folded into complete proteins."[25]

154.     According to Pfizer, its VBGT contains messenger mRNA, a kind of genetic material, and a piece of the SARS-CoV-2 virus' genetic material that instructs cells in the body to make the virus' distinctive "spike" protein and trigger the immune system to learn to react defensively, producing an immune response against the virus.[26] The Johnson & Johnson VBGT uses viral vector technology to instruct the cells, and causes similar gene altering effects, much like the other two gene therapies.

---

[24] *See*, https://www.cdc.gov/coronavirus/2019-ncov/downloads/vaccines/COVID-19-mRNA-infographic_G_508.pdf

[25] See, https://www.genome.gov/genetics-glossary/messenger-rna

[26] *See*, https://www.pfizer.com/science/innovation/mrna-technology; *See also,* https://www.pfizer.com/news/articles/what_makes_an_rna_vaccine_different_from_a_convent ional_vaccine; *See also*, https://www.pfizer.com/news/articles/understanding_six_types_of_vaccine_technologies

**Amended Complaint and**
**Demand For Jury Trial-- 25**

155.     Accordingly, the three COVID-19 VBGT's change the patient's genetic composition.[27]

156.     As such, the use of the word "vaccine" to describe these products is a misnomer and those who have been injected with a COVID-19 VBGT necessarily possess different genetic material or genetic information from those who were not injected. Defendants employment practices further discriminated and/or provided unequal opportunities against Plaintiffs because of this genetic difference resulting from having not been injected with these VBGT's.  This wrongful conduct was in violation of the Genetic Information Non-Discrimination Act ("GINA").[28]

157.     These genetic alterations are prohibited by Plaintiffs who have sincerely held religious beliefs and objections to these alterations.  Further, these VBGT's were developed using stem cells harvested from human embryos.  Plaintiffs have a conscientious duty to refuse participation in activities repugnant to human life and dignity.

---

[27] *See*, Zhang L., et. al., "Reverse-transcribed SARS-CoV-2 RNA can integrate into the genome of cultured human cells and can be expressed in patient-derived tissues." *PNAS,* 2021.Vol. 118, No. 21 e2105968118 https://doi.org/10.1073/pnas.2105968118; *See also*, Alden, M. et al., "Intracellular Reverse Transcription of Pfizer BioNTech COVID-19 mRNA Vaccine BNT162b2 In Vitro in Human Liver Cell Line." *Curr. Issues Mol. Biol.* 2022, Vol.44, 1115–1126. https://doi.org/10.3390/cimb44030073

[28] See, 42 U.S.C. § 2000ff-1, *et seq.*

**Amended Complaint and**
**Demand For Jury Trial-- 26**

158.    Some Plaintiffs are legally prohibited from taking the experimental vaccine since none of them have been approved by the Federal Aviation Administration ("FAA").[29] Only "FAA-approved" drugs may be taken by pilots.  Pilots must declare any drugs or medical procedures they have taken since their last flight physical.[30] If a pilot takes an unapproved medical product, the issuing flight surgeon must take administrative measures to revoke or deny issuance of a flight physical certificate until the FAA rules on the safety of that product. Typically, it takes twelve months for an FDA approved drug to be approved by the FAA.[31] The use of, or administration of a drug not approved by the FAA is a violation of federal aviation

---

[29] See, attached exhibit entitled "Vaccines" (noting that COVID-19 vaccines are not included in the list of FAA approved vaccines).

[30] See, FAA's Guide for Aviation Medical Examiners https://www.faa.gov/about/office_org/headquarters_offices/avs/offices/aam/ame/guide/pharm/; *See also*, FAA's Guide for Aviation Medical Examiners- Pharmaceuticals (Therapeutic Medications) Do Not Issue - Do Not Fly https://www.faa.gov/about/office_org/headquarters_offices/avs/offices/aam/ame/guide/pharm/dni_dnf/

[31] Note that the FAA cannot approve the COVID vaccines because they have not been officially "approved" by the FDA.

**Amended Complaint and**
**Demand For Jury Trial-- 27**

regulation.[32] Nonetheless, Defendants encouraged, coerced and even paid pilots to violate federal law, yet the ones who refused to break the law were the ones punished and discriminated against, as set forth below.

159.    The FDA approved the Pfizer Comirnaty vaccine on August 23, 2021. And, on September 9, 2021, Biden signed EO 14042.  Thus, Defendant Goodwin-Peters sent an electronic communication to all Atlas employees (following up on a communication sent by Dietrich) and announced all Plaintiffs would be required to be "fully vaccinated" with a COVID-19 VBGT pursuant to EO 14042 by December 8, 2021.

160.    Goodwin-Peters also announced that Plaintiffs were required to report their VBGT status to the company. According to the notice, "per the Centers for Disease Control and Prevention (CDC), people are considered fully vaccinated two weeks after their second dose of

---

[32] *See*, 14 C.F.R. § 61.53, which states in pertinent part, "no person who holds a medical certificate…may act as pilot in command, or in any other capacity as a required pilot flight crewmember, while that person:

(1) Knows or has reason to know of any medical condition that would make the person unable to meet the requirements for the medical certificate necessary for the pilot operation; or

(2) Is taking medication or receiving other treatment for a medical condition that results in the person being unable to meet the requirements for the medical certificate necessary for the pilot operation.

**Amended Complaint and**
**Demand For Jury Trial-- 28**

the Pfizer-BioNTech or Moderna COVID-19 [VBGT], or two weeks after the single-dose

Johnson & Johnson's Janssen COVID-19 [VBGT]."

161.    Goodwin-Peters' announcement of the VBGT policy demonstrated Atlas'

disingenuousness from the beginning as she purported to stand for personal choice regarding

COVID-19 vaccines:

> As a Company, we support the views of health experts that [the
>
> VBGT] reduce the impact and spread of COVID-19. That said, we
>
> have been consistent in our position that [a VBGT] is a personal
>
> choice and we were not planning to mandate [VBGT's] for our
>
> employees. However, we are now required to comply with [EO
>
> 14042].[33]

162.    However, Defendants' concerns about safety overwhelmingly support Plaintiffs'

decisions to *not* be injected with a COVID-19 VBGT.

163.    If safety had been Defendants' real objective, they would have grounded all

flights until it was safe to fly. In truth, Defendants' objective was to increase profit through

rent-seeking activities in-spite-of perceived dangers.

164.    This was made obvious by Defendants' own actions, since Defendants (i) did not

mandate any passenger flying on its aircraft or interacting with its staff to be vaccinated;

---

[33] After the Biden Administration's mandate was enjoined by various federal courts, Atlas

immediately reverted to a company-directed mandate.

**Amended Complaint and
Demand For Jury Trial-- 29**

(ii) did not mandate VBGT's for employees from other countries, (even though many Plaintiffs worked on the same aircraft and had contact with them); (iii) did not mandate VBGT's for pilots from other airlines allowed to ride in the "jump seat" of any Atlas aircraft.

165.     To intimate compliance with Title VII, Defendants sent electronic communications to Plaintiffs informing them that they must file for religious or medical exemption to avoid VBGT inoculation.  Defendants also created a Crewmember Vaccine Portal.  Plaintiffs were required to upload their VBGT status to the portal, and were told the information would be protected.

166.     Defendants directed that October 22, 2021, was the deadline "for [Plaintiffs] to request an exemption due to medical or religious reasons."

167.     However, many of Plaintiffs religious or medical objections were not triggered until after October 22, 2021, upon discovery of the VBGT's gene therapy effects, adverse health consequences, and the stem cell development practices that brought these products to market.

168.     Defendants directed that October 27, 2021, was the deadline for Plaintiffs to receive their "first [VBGT] if electing to receive the Pfizer BioNTech or Moderna [VBGT] that requires two shots."

169.     Defendants directed that November 24, 2021, was the deadline for Plaintiffs to "receive [their VBGT] if electing to receive the Johnson & Johnson's Janssen vaccine that requires one shot."

170.     Defendants directed that November 24, 2021, was the deadline for Plaintiffs to "receive [their] second [VBGT] if electing to receive the Pfizer BioNTech or Moderna [VBGT] that requires two shots."

**Amended Complaint and
Demand For Jury Trial-- 30**

171.     Defendants directed that November 25, 2021 was the deadline for Plaintiffs to "report [their VBGT] status to the Company."

172.     FSI, whose sole business and source of revenue is through Atlas contracts, quickly followed suit and in early September 2021, FSI President Joni French sent an e-mail to Plaintiffs that made brazenly explicit the disparate treatment and hostility toward Plaintiffs. She wrote:

> The health and safety of all our Cabin Crewmembers remains a top priority for FSI. To support your well-being, as well as that of your work colleagues, we encourage everyone to pursue the [VBGT]. Cabin Crewmembers who have proof of [VBGT] will increasingly be able to operate with more flexibility under less restrictive quarantine rules.

> We are pleased to let you know that we will now provide 5 hours of additional compensation to every FSI Flight Attendant who receives [a VBGT] and submits a copy of their vaccination card.

173.     The lives of Plaintiffs were effectively put on hold after October 2021 with constant threats of unpaid leave and termination by Defendants against Plaintiffs.

174.     Most Plaintiffs applied for medical and/or religious accommodation from the vaccine mandate prior to October 22, 2021.

175.     On January 13, 2022, The Supreme Court of the United States blocked the OSHA mandate requiring businesses with over 100 employees to impose vaccine and testing requirements.

**Amended Complaint and**
**Demand For Jury Trial-- 31**

176.     On or about January 25, 2022, in light of the Supreme Court's ruling, OSHA announced it was withdrawing its vaccine and testing requirements that were at issue. However, Biden called upon businesses to voluntarily impose the mandates themselves.[34]

177.     Because Defendants (and the Biden Administration) no longer had the cover of EO 14042– and despite their previous statements that they believed in personal choice when it came to the VBGT mandate issues and were only reluctantly following federal law – Defendants immediately obeyed the commands of the Biden Administration and announced, through electronic communications to Plaintiffs, that they would do the President's bidding.

178.     On January 25, 2022, Goodwin-Peters sent out a communication stating:

> Earlier today, you received notice that all U.S. employees who must travel as an essential function of their position must be fully vaccinated by May 1, 2022. *This policy applies to you*. We recognize that you previously sought an accommodation from the COVID-19 [VBGT] mandates the company previously implemented to comply with [EO 14042] (applicable to federal contractors) and OSHA's Emergency Temporary Standard (applicable to employers with more than 100 employees).

(Emphasis added).

---

[34] *See* https://khn.org/morning-breakout/biden-disappointed-by-courts-decision-urges-employers-to-require-covid-shot/

**Amended Complaint and
Demand For Jury Trial– 32**

179.     Goodwin-Peters in the same communication indicated that Plaintiffs would not be allowed to submit new medical or religious accommodation requests.  Only those previously filed by October 22, 2021, would be processed:

> Given your requests for accommodation from the Company's previous COVID-19 vaccination mandates, the Company is assuming you are seeking a request for accommodation from the vaccine policy that will take effect May 1, unless you respond to this email and indicate otherwise by Friday, January 28, 2022. If you do not respond by January 28, the Company will process your new request for accommodation based on the information already in its possession and follow-up with you thereafter to identify any reasonable accommodations the Company can offer without undue hardship.

180.     Plaintiffs who were unvaccinated were left in a continued state of legal, emotional and career limbo.

181.     Plaintiffs who had not previously filed a for religious or medical exemption, and who discovered new information triggering their conscientious objections, were denied the opportunity to file and were left with the impossible choice of taking COVID-19 VBGT at the expense of their deeply held religious beliefs or be terminated.

182.     After the implementation of the VBGT mandate, Plaintiffs were subjected to repeated harassment and disparate treatment within the company for their deeply held religious beliefs.

**Amended Complaint and
Demand For Jury Trial-- 33**

183.   Defendants required Plaintiffs to wear symbols that distinguishing them from their peer groups and amplified their individually identifiable health information to their peers and to the public.

184.   Dietrich openly encouraged harassing behavior by making written and oral statements that employees were unsafe around Plaintiffs whose religious beliefs or medical circumstances barred inoculation.  Theoretically, a "vaccinated" employee should have immunity to the disease and therefore bare no risk of the medical choices of another.  Thus, this culture of finger pointing was perpetrated by Defendants for the sole purpose of harassing Plaintiffs and providing cover for Defendants rent-seeking activities.

185.   For example, Plaintiff Richard Bullock, a pilot who often flew cargo to southeast Asia, found himself subjected to retaliatory discipline after he became known throughout the company for having religious beliefs that barred him from taking VBGT's.

186.   Defendants were attempting to get Plaintiff Jimmy Villella to change, alter, or abandon his religious beliefs (evident from his Oct 12th, 2021 religious exemption letter), to

**Amended Complaint and**
**Demand For Jury Trial-- 34**

submit to their COVID-19 testing policy. Villella was subjected to an "Article 19" disciplinary hearing in a blatant act of retaliation, harassment and discrimination.[35]

_____

[35] A harassment and discrimination complaint filed Villella was handled with extreme prejudice against him. Atlas' claim they could not accommodate Villella's accommodation request due to undue hardship was totally meritless. Contrary to Atlas' assertions, Villella operates on domestic flights, and thus no hotel restrictions or other restrictions that apply to international operations are applicable to him. Further, Villella was the only Atlas employee that notified Atlas that his religious beliefs prevented him from getting vaccinated or tested for COVID-19 or any other vaccine/illness.  Villella's accommodation request was to continue operating and following the same process (screening for COVID-19, as the CDC stated was appropriate for people without symptoms for COVID-19) all Atlas Air employees had been following for the entire COVID-19 pandemic up to May 1st, 2022, when the new Atlas testing "policy" took place.  Since Atlas only had to accommodate this single individual, no undue hardship existed as Atlas claims since only one employee requested this accommodation *seven months* prior to the testing policy being implemented, and *two months* prior to the first communication received by Atlas about a mandatory COVID-19 testing policy. Villella asked on several occasions to be returned to flying status despite his "accommodated non-flying position" when he was made aware of Atlas not following its own mandatory COVID-19 testing for pilots, as well as permitting unvaccinated flight attendants to operate as normal without any COVID-19 testing restrictions, unless the specific country they were flying to had COVID-19 testing requirements.

**Amended Complaint and
Demand For Jury Trial-- 35**

187.    For Plaintiffs whose religious and/or medical exemptions were granted, Defendants continuously harassed Plaintiffs to disregard their conscience and/or health and submit to authoritarian enforcement of VBGT's.

188.    Defendants' promulgation of COVID-19 misinformation created a dangerous and hostile work environment throughout the company for Plaintiffs whose conscience challenged Defendants' ability to fulfill the role of a "learned intermediary," a mandatory medium for every patient/pharmaceutical relationship.

189.    Plaintiffs panic-inducing policies produced instances of vicious shouting and screaming among Plaintiffs and their peers during trans-ocean flights, and occasional unsafe episodes of pilots leaving their cockpits to scream at Plaintiffs for their religious beliefs or for voicing questions or criticisms of Defendants' messaging and political symbolism.

190.    Plaintiffs were interrogated by Defendants before beginning their shifts or flight assignments with demands for answers to questions of personal and protected health information.

191.    Defendants disseminated VBGT status of Plaintiffs in emails that were published showing the last name, employee number, and VBGT status of Plaintiffs, and gave public disclosure of protected health information.

192.    Defendants' employees have openly remarked that they look forward to the day that "[[P]laintiffs] will be terminated from the company, thus allowing vaccinated employees to rise in seniority and pay."

193.    Atlas discriminated against Plaintiffs and denied them bids for higher paying flights to certain destinations despite such destinations having no laws or restrictions against unvaccinated Plaintiffs.

**Amended Complaint and
Demand For Jury Trial-- 36**

194.     Both Dietrich and Goodwin-Peters made repeated statements that if Plaintiffs expected to have future employment at Atlas, they would have no choice other than to take the VBGT's. Both Dietrich and Goodwin-Peters also stated that religious and medical exemptions from being "vaccinated" would not be accepted and that "unvaccinated" crews would be placed on unpaid leave or terminated.[36] Defendants' termination threats always came on the heels of Biden Administration publications regarding private employer VBGT mandates.

195.     Defendants created a program to recruit new non-religious hires to replace Plaintiffs if any Plaintiffs were terminated. Atlas and the Teamsters worked together to pay its employees $5,000 per new hire they referred to Atlas to replace Plaintiffs because of their religious beliefs and/or medically exempt status.

196.     On March 8, 2022, after the January 25, 2022 Goodwin-Peters communication, things got worse for the Plaintiffs who worked for FSI, who received a communication from FSI President Joni French stating that if they were not vaccinated by May 1, 2022, they would be placed on an unpaid leave of absence regardless of the fact they had previously requested an accommodation:

> Atlas Air, Inc. has advised FSI that **all** FSI employees who work
>
> on Atlas flights must be fully vaccinated by May 1, 2022.

---

[36] It is worth noting that, used in this paragraph, the term "vaccination" is not a singular occurrence or transaction.  Every new Defendant requirement to take a booster to maintain "vaccination" status constitutes a new occurrence or transaction for the purposes of accommodation analysis under Title VII. Each transaction or occurrence rests upon a different set of operative facts.

**Amended Complaint and
Demand For Jury Trial-- 37**

(Obviously, Atlas is entitled to determine the terms under which FSI's flight attendants are eligible to work on Atlas flights).

We recognize that you previously requested an accommodation (exemption) from the COVID-19 [VBGT] mandates the Company implemented to comply with [EO 14042]…

Unfortunately, if you are unable or unwilling to obtain COVID-19 [VBGT], you will not be eligible to work on Atlas Air flights. In that event, FSI has no other work, including flights for its flight attendants to crew. If we do not receive evidence that you have been fully vaccinated by April 30, 2022, you will be placed on an unpaid leave of absence (LOA).

(Emphasis in original).

197.    On March 25, 2022, the Defendants attempted to mollify Plaintiffs by purporting to assure them that – despite maintaining a private company-wide VBGT mandate – those  who had previously obtained a religious or medical exemption pursuant to EO 14042 would be allowed to return to their regular work duties after the May 1, 2022 company vaccine mandate deadline "so long as they undergo requisite COVID-19 testing at their expense."

198.    Defendants ordered Plaintiffs, even after they had established natural immunity from the disease, to test weekly for COVID-19 unlike employees without religious beliefs who were deemed "vaccinated" by the Defendants.

199.    Plaintiffs were required to take COVID-19 tests numerous times, weekly.

200.    Each COVID-19 test involved the use of ethylene oxide, a known carcinogenic, to sterilize the swabs prior to having them scrubbed on Plaintiffs mouth and nasal cavity.

**Amended Complaint and**
**Demand For Jury Trial-- 38**

201.    Defendants did not inform the Plaintiffs of the potential hazards of COVID-19 testing.

202.    Plaintiffs were required to pay for COVID-19 testing despite language in the Agreement indicating vaccines and testing is to be provided at no cost by Defendants. Employees deemed "vaccinated" by Defendants were not required to pay for COVID-19 testing.

203.    Some Plaintiffs took the VBGT upon Defendants' misinformation and coercion without informed consent but refused to take the boosters after learning information about the gene-therapy effects of these medical products and lack of liability for a learned intermediary. Absent this new knowledge, objections to VBGT's from Plaintiffs founded on religious beliefs were otherwise dormant.

204.    On March 31, 2022, Goodwin-Peters sent another e-mail underscoring the hostility and disparate treatment that would persist at Atlas. It mandated that Plaintiffs would undergo testing at their own expense and wear individually identifiable political symbols; differentiating them from their peers while simultaneously giving public disclosure to Plaintiffs protected health information.

205.    On April 21, 2022 Goodwin-Peters sent Plaintiffs an updated Atlas Worldwide COVID-19 Vaccination & Testing Policy, along with Atlas Worldwide COVID-19 Vaccine Policy Frequently Asked Questions ("FAQ").  In addition to testing at Plaintiffs expense, Defendants mandated that all COVID-19 testing be videotaped and retained by Defendants, so and that the videos be sent to the company if requested.

206.    The Policy stated that:

Employees who travel as an essential function of their <u>position</u>

**Amended Complaint and**
**Demand For Jury Trial-- 39**

> <u>must be fully vaccinated against COVID-19 by May 1, 2022</u>…[e]mployees not in compliance with this Policy may be subject to discipline, up to and including termination pursuant to applicable law…
>
> Essential-travel employees who do not choose to be vaccinated, and who are not in compliance with the Policy as of the effective date of May 1, 2022, may not be permitted to continue traveling and may be placed in an alternate position or subject to an unpaid leave status.

(Emphasis in original).

207.    Defendants had knowledge of reports of vaccine injuries as reported in the VAERS database and purposely omitted information indicating the potentially lethal effects of VBGT's in their communications to Plaintiffs.

208.    On March 25, 2022, Defendants sent an electronic communication to Plaintiffs that made clear that Defendants have not changed their policies of discriminating against Plaintiffs with religious beliefs or medical objections. Specifically, Goodwin-Peters stated:

> As a reminder, employees who travel as an essential function of their position *must* be vaccinated by May 1 pursuant to the Company's Policy…
>
> to protect [already vaccinated] employees…
>
> The Company maintains the right to revise this Policy as appropriate and at its sole discretion, including based on changing

**Amended Complaint and
Demand For Jury Trial-- 40**

> domestic and global regulations and the state of the pandemic. We
> will continue to closely watch the global vaccination and testing
> requirements and metrics tied to the pandemic, and communicate
> any necessary changes to our policies as appropriate.

(Emphasis added).

209.    Plaintiffs were not offered subsequent opportunities to initiate and/or modify any request(s) for religious and/or medical exemption.

210.    Further, the FAQ document made unequivocally clear that the prior medical and religious accommodations obtained by employees – which Defendants indicated on January 25, 2022 would be applicable going forward – would *no longer be recognized*:

> If you were previously granted an accommodation from a
> Company policy or practice designed to comply with the federal
> Executive Order mandating vaccination, *your accommodation is
> no longer effective*. The Executive Order has been stayed by a
> federal court and is not applicable to us at this time…

(Emphasis added).

## **DEFENDANTS' FAILURE TO ACCOMMODATE, DISPARATE TREATMENT AND CREATION OF A HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII**

211.    Defendants' actions against Plaintiffs have violated Title VII's prohibition against the denial of equal opportunity, discrimination and the perpetuation of a hostile work environment.

**Amended Complaint and
Demand For Jury Trial-- 41**

212.     Title VII of the Civil Rights Act of 1964 prohibits Defendants from engaging in numerous forms of discrimination in virtually every employment circumstance.  Specifically, Title VII provides, in relevant part:

> It shall be an unlawful employment practice for an employer…to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, *religion*, sex, or national origin…[37]

(Emphasis added).

213.     Regardless of whether the VBGT mandate was held Constitutional (for healthcare workers), employers are still bound to fulfill their obligations to employees pursuant to Title VII.  These obligations prescribe that the employer, *inter alia*, not engage in discriminatory, harassing or retaliatory conduct.

214.     As such, not only does Title VII of the Civil Rights Act of 1964 prohibit Defendants from engaging in numerous forms of discrimination but the statute also protects employees from being subject to other unlawful employment practices, such as the creation of a hostile work environment or harassment.

215.     Given the foregoing disparate treatment set forth in the facts herein, Defendants' conduct had a disparaging impact on Plaintiffs.

---

[37] 42 U.S.C. § 2000e-2

**Amended Complaint and
Demand For Jury Trial-- 42**

216.     Defendants' conduct satisfies the elements for claims of religious discrimination due to disparate treatment, failure to provide accommodations, harassment, and the creation of a hostile work environment.

## CONFLUENCE OF ATLAS, FSI, ECA AND THE UNITED STATES GOVERNMENT

217.     Throughout the entire course of the foregoing events, Atlas, FSI and ECA engaged in conduct orchestrated by the U.S. Government.

218.     Atlas is the largest customer of the Department of Defense ("DOD") Air Mobility Command ("AMC"). Atlas carries more U.S. troops and military material than any other airline in the world.

219.     Atlas receives many millions of dollars from the DOD and AMC.

220.     Atlas flies more revenue freight ton miles internationally than UPS or FedEx. In this respect it is the largest air freight carrier in the world.

221.     Atlas is a behemoth in the air cargo and VIP charter industry.

222.     Atlas intentionally negotiated in bad faith with Teamsters 1224 and 2750, avoiding renewing their contract from 2016 to 2021, enabling the Defendant executives to keep hundreds of millions of dollars. This made Atlas management the highest compensated aviation executives in the world.

**Amended Complaint and**
**Demand For Jury Trial-- 43**

223.     In 2020, Atlas made eight times the net profit they made from the previous record year in 2019.[38] During this time, CEO John Dietrich applied for and successfully lobbied and received $407,000,000 in COVID-19 bailout monies from American taxpayers.[39]

224.     Atlas has been involved in market manipulations and price-fixing schemes before and in 2016 agreed to pay $100,000,000 to settle an international cargo price fixing scheme to avoid going to trial.[40] They finished paying off the $100,000,000 in 2020, the same year they received the $407,000,000 in taxpayer bailout money from the U.S. Government.

225.     To induce compliance with its VBGT mandate, Defendants even colluded with unions.

226.     On September 10, 2021, Atlas, Teamsters Local 2750 and the International Brotherhood of Teamsters Airline Division negotiated a new Collective Bargaining Agreement (the "Agreement") that was signed and executed by Atlas, the Teamsters, and flight deck crew members. The final agreement plainly gave the company no authority to impose vaccination mandates upon Plaintiffs (or any other invasions of Plaintiffs medical privacy). The only section specifically addressing vaccinations was Article 27 F,[41] which provides:

> [Atlas] shall provide, at no cost to Crew Members, an

---

[38] *See* https://www.freightwaves.com/news/atlas-air-refuses-to-repay-us-bailout-funds

[39] *See* https://web.archive.org/web/20220318105916/https://www.businessinsider.com/atlas-air-amazon-air-contractor-receives-coronavirus-bailout-2020-6

[40] *See* https://aircargoeye.com/atlas-air-coughs-100m-price-fixing-settlement/

[41] Article 27 of the CBA is titled "Insurance Benefits."

**Amended Complaint and
Demand For Jury Trial-- 44**

> immunization plan that includes, at a minimum, the following
>
> vaccinations . . . (Yellow fever, Hepatitis, Typhoid, Tetanus, etc.).

227.    Art. 27 F(10) of the Agreement provides that Atlas shall "provide," a benefit at no cost, along with "[a]ny other [benefits] recommended by the current [CDC]'Advice for International Travel' document." The plain language of Section F's benefits package requires Atlas to "provide" immunizations, not "mandate" them. Nor does the Agreement deprive Plaintiffs rights to exercise informed consent.[42]

228.    The Agreement date is significant insofar as coincided with Biden's EO 14042, signed on September 9, 2021.

229.    Following the September communication from Goodwin-Peters, on October 5, 2021, Defendant Dietrich sent an email to Plaintiffs saying:

> Biden recently signed [EO 14042] providing for certain mandates
>
> related to COVID-19 for federal contractors and subcontractors,
>
> and the U.S. government has now issued further guidance for
>
> implementing this Order…[t]hrough the course of the pandemic,

---

[42] The referenced "Advice for International Travel" document of the CDC appears to be several documents and/or web pages, none of which mandate COVID-19 vaccinations for U.S. Citizens. Indeed, the CDC's published instructions (https://www.cdc.gov/coronavirus/2019-ncov/travelers/proof-of-vaccination.html) contains a section dedicated to airline crew members. The Technical Instructions applicable to crew members plainly do not mandate airline pilots or crew members to be injected with COVID-19 vaccine treatments; *see also* https://www.cdc.gov/quarantine/order-safe-travel/technical-instructions.html.

**Amended Complaint and**
**Demand For Jury Trial-- 45**

we've been very clear in our intention that we would not mandate that our employees be vaccinated. However, as a federal contractor who flies the military and their equipment, we will be *required* to comply with the Order issued by the President…[EO 14042] requires that <u>we determine the vaccination status of all of our U.S.-based employees. Therefore, we are now requiring all of our U.S. workforce to provide us with your vaccination status</u>."

(Emphasis in original).

230.    Dietrich's email went further and announced that Plaintiffs were required to have "electronic proof of [ ] vaccination" and that vaccinated employees would be paid an additional "five hours of compensation" while Plaintiffs would not.

231.    There have been numerous, private meetings between Defendants and the U.S. Government regarding VBGT mandate policies.

232.    Defendants' DOD logistics operations serve a traditionally public function.

233.    Whether by incentive or threat, Defendants conduct was significantly encouraged by the Biden Administration.

234.    Defendants financially benefited when the Biden Administration pumped in $407,000,000 in COVID-19 bailout money to already profitable Defendants. In exchange, Defendants imposed the political ambitions of the Biden Administration onto Plaintiffs.

235.    Defendants were joint participants with the Biden Administration in the universal inoculation of the COVID-19 "vaccines."

**Amended Complaint and**
**Demand For Jury Trial– 46**

236.     Thus, each Defendant is a "person" and a "state actor" for the purposes of 42 U.S.C. § 1983.[43]

237.     Controlled by the U.S. Government, Defendants became joint participants with the Biden Administration's agenda of masking (compelled wearing of political symbols), social distancing, testing, and ultimately the Biden Administration's ambition of universal inoculation with experimental VBGT's.

238.     The Biden Administration delegated its authority to the private sector and sought Defendants to do its bidding. In turn, Defendants gave its employees an unconscionable ultimatum: choose between their jobs or take an experimental, life-threatening VBGT, for a disease known to have a very high survivability rate and for which effective alternative treatments exist.

239.     The Government has acted in concert with Defendants to publicly support its private employer vaccine mandate.  Defendants are engaged in a *quid pro quo* arrangement whereby Defendants are enforcing the agenda of the government.  In exchange, the Biden Administration is lining the pockets of Defendants at the expense of Plaintiffs' lives.

---

[43] *H.H. v. Garland*, 52 F.4th 8 (C.A.1, 2022) (noting that private party can be treated as "state actor," for purpose of determining whether private party acts under color of law, in § 1983 context, in circumstances falling into three categories: (1) if a private party assumes traditional public function when performing the challenged conduct, (2) if the private party's conduct is coerced or significantly encouraged by the state, or (3) if the private party and state have become so intertwined that they were effectively joint participants in challenged conduct).

**Amended Complaint and
Demand For Jury Trial-- 47**

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S ("EEOC") FAILURE TO MITIGATE INJURY AND PLAINTIFFS ONGOING IRREPARABLE HARM

240.     All Plaintiffs have exhausted administrative remedies.

241.     The EEOC has taken the position that they do not and will not interfere with or prevent employers from following the guidelines and suggestions made by the CDC or state/local public health authorities about steps employers should take regarding COVID-19:

> The EEOC has received many inquiries from employers and employees about the type of authorization granted by the U.S. Department of Health and Human Services ("HHS") [FDA] for the administration of three COVID-19 vaccines. These three vaccines were granted [EUA] by the FDA. It is beyond the EEOC's jurisdiction to discuss the legal implications of EUA or the FDA approach. Individuals seeking more information about the legal implications of EUA or the FDA approach can visit the FDA's EUA page.[44]

242.     The EEOC has not taken any actions much less made any public statements condemning these patently unlawful employment practices. For these reasons and others set forth below, Plaintiffs have exhausted recourse via the EEOC prior to bringing their discrimination and/or employment claims.

---

[44] *See* https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#K

**Amended Complaint and
Demand For Jury Trial-- 48**

243.     Also, irreparable harm has already resulted from the delays associated with exhaustion of administrative remedies. Millions of people have been hurt and thousands have been killed due to the VBGT's that Defendants mandated Plaintiffs take. Not only can these VBGT's cause injury generally, but the gene therapies pose specific harm to Plaintiffs working in the airline industry, which has requirements that Plaintiffs maintain a certain standard of health to perform their jobs. Waiting 180 days for the EEOC process to complete or to receive a right to sue letter is not a viable option as irreparable harm is imminent not only for their jobs, but also for their safety and the safety of consumers.

244.     Additionally, the EEOC lacks the institutional capacity to resolve the particular types of issues presented given there are millions of employees across the United States who seek to challenge these mandated practices, and the EEOC does not have enough staff/personnel to review all of the claims. Also, the EEOC does not have the authority to address the Constitutionality of all the claims associated with the employment practices at issue and does not possess the institutional knowledge or authority to redress those matters relating to health, safety and welfare. Therefore, requiring Plaintiffs to exhaust administrative remedies would be futile, useless and inadequate to redress Plaintiff's employment issues and to prevent the irreparable harm.

## CAUSES OF ACTION

## ---- COUNT I ----

### Invasion of Privacy - Public Disclosure of Private Facts

**ALL PLAINTIFFS**
**VS.**
**ALL DEFENDANTS**

245.     Plaintiffs reallege and incorporates all paragraphs above as if fully set forth herein.

246.     Defendants gave publicity to Plaintiffs protected health information ("PHI") by publishing the PHI throughout the company and by forcing Plaintiffs to wear political symbols; effectively amplifying and broadcasting their PHI to other employees and consumers.

247.     The publication of Plaintiffs PHI would be highly offensive to a reasonable person and is of no legitimate public concern.

248.     As a proximate result of Defendants' public disclosure of Plaintiffs PHI, Plaintiffs have suffered injury. Defendants are liable to Plaintiffs for punitive damages because the acts herein described constitute actual malice and oppression.  Because Defendants deliberately proceeded to act in conscious or intentional disregard of the high probability of injury to the Plaintiffs or, conversely, deliberately proceed to act with indifference to the high probability of injury to the Plaintiffs.

**---- COUNT II ----**

**Negligence**

**ALL PLAINTIFFS**

**VS.**

**ALL DEFENDANTS**

249.     Plaintiffs reallege and incorporates all paragraphs above as fully set forth herein.

250.     Defendants owe a duty of reasonable care during the course of operating their business.

251.     This duty includes protecting Plaintiffs PHI via appropriate means and procedures.

252.     Defendants breached their duty of care when by publishing Plaintiffs PHI throughout the company and by forcing Plaintiffs to wear political symbols; effectively amplifying and broadcasting their PHI to other employees and consumers.

253.     Defendants negligence was in violation of state and federal laws designed to protect Plaintiffs against the type of harm caused by the Defendants conduct.

254.     As a proximate cause of Defendants negligence, Plaintiffs have suffered injury.

**---- COUNT III ----**

**Breach of the Collective Bargaining Agreement**

**ESTATE OF LANE CAVINESS, PATRICK AKERLUND,  MICHAEL ALZATI, ERIC W. ANDERSON,  MICHAEL G. BALLARD JR.,  LARRY JAMES BEARCE JR.,  ROBERT BELLMAN,  BENJAMIN BENDIBURG,  DOUGLAS BERRY,  GREGORY BERRY,  LYNETTE BOTHA,  CALEB BUEHRER,  RICHARD BULLOCK, JON CARROLL,  VERGIL CASKEY,  JAMES CASTOR, NATHAN CHARBONEAU,  SHAWN CHURCHEL,  JOEL COLON,  MARK CONNOR,  MATTHEW CRONAUER,  FRED CUNNINGHAM,  ROYAL DANZA,  ELLIOT DE SOUSA, ERIC DESANDRO,  STEVE DIXON,  JAMES ERICKSON,  LUIS ESQUIVIA,  LEE ESTES,  ROBERT FRATTI,  JASON FRISBIE, JONATHAN FUSSLE,  TONY GAMBOA,  DENNIS GEBHARD,  REZA**

GHODS, MARK GILMAN, ROBERT GIUDICE, ERIC GORDON, GREG GORDON, DANIEL GREER, REXFORD T. HEIVILIN, JASON HENNING, DAVID HEWSON III, TODD HONTZ, DANIEL HUDSON, ROGER JUSTICE, VENANCIUS KASSANDJI, JOHN KEARINS, RICKY KINDER, BETH KIRBY, ANDREAS N. KOUSTAS, CHAD KRAVETZ, CARL LINDBERG, JOSEPH LOSCHIAVO, ANDREW LUTZ, BLYTHE LUTZ, RAFAEL MACARIO, APRIL MCQUILLEN, CHRISTOPHER MCQUILLEN, STEVEN MEISSNER, JEFFREY MICHONSKI, ANDREW MICKLER, COREY MORRIS, STEVEN MURATORE, GREGORY MYERS, PETER NAPORA, PATRICK PHILLIPS, GLEN PRONK, CHARLES RANDALL, PETER RAYMOND, JOSHUA ROBERTS, JASON ROGERS, WILLIAM SERRITELLA, GENTRY SHELTON, TODD SNAZA, DONALD SORRENTINO, MARK SOUTH, MICHAEL STARK, FORREST STOWELLS, JOHN SWIFT, NICK TAYLOR, WILLIAM THOMPSON, GUSTAVO VERDES, JAMES VILLELLA, FARSHAD ZARRABIAN

**VS.**

**ATLAS**

255.    Plaintiffs reallege and incorporates all paragraphs above as fully set forth herein.

256.    Defendants' actions against Plaintiffs have violated, and continue to violate, several sections of the Collective Bargaining Agreement, including Article 1(A)(4) ("[Atlas] and Union will each comply with all applicable laws prohibiting discrimination against any Crew Member who is now, or may become, subject to the terms of this Agreement including age, race, sex… religion… handicap or disability, or any other characteristic protected by applicable local, state or federal law.")

257.    Under the Agreement, Defendants rights are laid out in Art. 1(G)(1), which provides a long list of rights retained by the Defendants, including to "direct its Crew Member workforce; determine the appropriate number of Crew Members; hire, promote, and discharge Crew Members; establish and enforce rules of conduct; maintain discipline and efficiency; introduce new equipment; determine the location(s) of the work force," etc.  Under the ancient legal maxim *Expressio unius est exclusio alterius* ("the express mention of one thing excludes

all others"), when a law or agreement includes a list of specific items, that list is presumed to be exclusive.[45]

258.     Art. 26(R) of the Agreement plainly forbids Atlas from exposing Plaintiffs to Unsafe Conditions: "[n]othing in this Agreement will be construed to require a Crew Member to take any action if he reasonably believes that such action will result in substantial and imminent risk of harm to the Crew Member or his equipment."

259.     According to the U.S. government's VAERS database, the vaccines have already led to the deaths of 26,000 Americans. Scholarly, peer-reviewed estimates suggest the VAERS database underreports adverse events from vaccines by a ratio of 90%.  At trial, Plaintiffs will

---

[45] Nothing in the Agreement's list of Defendants rights allows the Defendants to violate Plaintiffs' bodily integrity and conscience by mandating injections of dangerous experimental VBGT's which do not provide immunity or prevent transmission. Nor can there be any "emergency" exception argument allowing for Defendants to impose a VBGT mandate.  Art. 22H even provides a list of natural disasters and acts of God which may constitute exceptions over which "the [Defendant] has no control," including a natural disaster, a labor dispute, grounding of a substantial number of the Defendants aircraft by government agency, war emergency, or acts of terrorism. The Agreement's specification of a "war emergency" evidence that other, contrived "emergencies," such as a "pandemic" that is as lethal, if not less, than the common flu fall outside the scope of this provision; Defendants conduct was fully within their own control.

show that a number of vaccinated coworkers within the Atlas company have already suffered adverse effects and injuries following VBGT's.

260.     Art. 15(A)(1) of the Agreement plainly states that "The physical standards required of a Crew Member shall be the standards required by the Federal Aviation Administration (as outlined in 14 CFR Part 67 and as may be amended)…"  Current FAA standards preclude VBGT's for air crew members.

261.     Art. 15(C)(12) provides that "[m]edical records and other information obtained as a result of a Company required medical examination" or testing shall be "subject to safeguards as to their confidentiality in accordance with applicable law." Yet Atlas has repeatedly violated the medical privacy of Plaintiffs.

262.     Atlas has also violated the JUST CAUSE, DISCIPLINE, DISCHARGE AND PROBATION provisions of Article 19 of the Agreement. Plaintiffs have simply been told that they will be terminated on May 1 unless they submit to the experimental injections.

263.     Further, Atlas and the Defendant Atlas executives have violated Article 22, which requires that "[e]xcept as may otherwise be provided in this Agreement, seniority will govern with respect to upgrade and downgrade, filling of vacancies, displacements, reduction in force (furlough), recall from furlough, Base and aircraft assignments due to expansion or reduction in aircraft and Base staffing, monthly schedules, vacation bidding and when otherwise required by the Agreement." Article 22D requires that Atlas employees may lose their seniority ranks only upon proper discharge, retirement, death, resignation, extended absence or other terminal events.

264.     Defendants have paid vaccinated employees more than unvaccinated employees, and have maneuvered to terminate large numbers of seniority-status Plaintiffs.

**Amended Complaint and**
**Demand For Jury Trial-- 54**

265.     Article 25X forbids Defendants from discrimination "against any Crew Member because of race, color, national origin, *religion*, creed, sex, age, *disability,* veteran status, marital status, or sexual orientation." (Emphasis added).

266.     The Atlas Plaintiffs are third-party beneficiaries of the Collective Bargaining Agreement.

267.     Several of the Plaintiffs have either religious or medical objections or exemptions to the COVID-19 treatment injections.  Yet Defendants have continued to demand that they be injected with a dangerous VBGT without an accompanying warnings of potential side effects.

268.     Additionally, the Collective Bargaining Agreement must comply with state and federal law, including Title 7.  Defendants violated the Collective Bargaining Agreement by interpreting it in a manner repugnant to state and federal law, as described above.

**---- COUNT IV ----**

**Violation of Florida Private Whistleblower Act, Section 448.102(3),**
***et seq*, Florida Statutes.**

**Defendants Retaliation for Refusal to Participate in a Prohibited Activity**

**ESTATE OF LANE CAVINESS (LANDON CAVINESS AND MORGAN CAVINESS), PATRICK AKERLUND,  MICHAEL ALZATI,  ERIC W ANDERSON, MICHAEL G. BALLARD JR. ,  CINDY BARRIONUEVO,  LARRY JAMES BEARCE JR.,  ROBERT BELLMAN, BENJAMIN BENDIBURG,  DOUGLAS BERRY,  GREGORY BERRY, LYNETTE BOTHA,  CALEB BUEHRER,  RICHARD BULLOCK, JON CARROLL, VERGIL CASKEY,  JAMES CASTOR,  NATHAN CHARBONEAU, SHAWN CHURCHEL,  JOEL COLON, MARK CONNOR,  MATTHEW CRONAUER,  FRED CUNNINGHAM, ROYAL DANZA,  ELLIOT DE SOUSA, ERIC DESANDRO,  STEVE DIXON, JAMES ERICKSON,  LUIS ESQUIVIA, LEE ESTES,  ROBERT FRATTI, TIMOTHY FRYE,  JONATHAN FUSSLE, DENNIS GEBHARD, MARK GILMAN, ROBERT GIUDICE, ERIC GORDON,  DANIEL GREER,  REXFORD T. HEIVILIN, JASON HENNING,  DAVID HEWSON III,  TODD HONTZ,  DANIEL HUDSON, ROGER JUSTICE, VENANCIUS KASSANDJI, JOHN KEARINS,  BETH KIRBY, JOSEPH LOSCHIAVO,  ANDREW LUTZ, BLYTHE LUTZ,  RAFAEL MACARIO, DOUGLAS P. MAYO JR., STEVEN MEISSNER,  JEFFREY MICHONSKI, ANDREW MICKLER,  COREY MORRIS,  STEVEN MURATORE, GREGORY MYERS,  PETER**

**NAPORA, JOEL PARDO, LANCE PHILLIPS, PATRICK PHILLIPS, GLEN PRONK, CHARLES RANDALL, REBECCA ROBERTSON, JASON ROGERS, KIMBERLY SCHRECK, WILLIAM SERRITELLA, GENTRY SHELTON, TODD SNAZA, DONALD SORRENTINO, MARK SOUTH, MICHAEL STARK, ELIZABETH STONEKING, FORREST STOWELLS, BARBARA JANEICE SURBER, JOHN SWIFT, NICK TAYLOR, MARK THIEN, WILLIAM THOMPSON, BRANDON THOROUGHMAN, GERI TONDA, RICARDO TORRES ABARCA, JAMES VILLELLA, FARSHAD ZARRABIAN**

**VS.**

**ATLAS, FSI, ECA**

269.     Plaintiffs reallege and incorporates all paragraphs above as fully set forth herein.

270.     Plaintiffs refused to participate in Defendants VBGT mandate program that violates 14 C.F.R. § 61.53, *et seq*. and other Constitutional, statutory and common law provisions.

271.     Defendants retaliated against Plaintiffs for their refusal to participate in a prohibited activity as set forth above, including constructively discharging certain Plaintiffs.

272.     As a proximate cause of Defendants retaliation, Plaintiffs have suffered injury.

273.     Defendants are liable to Plaintiffs for punitive damages because the acts herein described constitute actual malice and oppression.  Because Defendants deliberately proceeded to act in conscious or intentional disregard of the high probability of injury to the Plaintiffs or, conversely, deliberately proceed to act with indifference to the high probability of injury to the Plaintiffs.

---- COUNT V ----

Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*

Defendants' Failure to Accommodate – Religious Discrimination

ESTATE OF LANE CAVINESS (LANDON CAVINESS AND MORGAN CAVINESS), PATRICK AKERLUND, MICHAEL ALZATI, ERIC W ANDERSON, MICHAEL G. BALLARD JR., CINDY BARRIONUEVO, LARRY JAMES BEARCE JR., ROBERT BELLMAN, BENJAMIN BENDIBURG, DOUGLAS BERRY, GREGORY BERRY, LYNETTE BOTHA, CALEB BUEHRER, RICHARD BULLOCK, JON CARROLL, VERGIL CASKEY, JAMES CASTOR, NATHAN CHARBONEAU, SHAWN CHURCHEL, JOEL COLON, MARK CONNOR, MATTHEW CRONAUER, FRED CUNNINGHAM, ROYAL DANZA, ELLIOT DE SOUSA, ERIC DESANDRO, STEVE DIXON, JAMES ERICKSON, LUIS ESQUIVIA, LEE ESTES, ROBERT FRATTI, JASON FRISBIE, TIMOTHY FRYE, JONATHAN FUSSLE, TONY GAMBOA, DENNIS GEBHARD, REZA GHODS, MARK GILMAN, ROBERT GIUDICE, ERIC GORDON, GREG GORDON, DANIEL GREER, REXFORD T. HEIVILIN, JASON HENNING, DAVID HEWSON III, TODD HONTZ, DANIEL HUDSON, ROGER JUSTICE, VENANCIUS KASSANDJI, JOHN KEARINS, RICKY KINDER, BETH KIRBY, ANDREAS N. KOUSTAS, CHAD KRAVETZ, CARL LINDBERG, JOSEPH LOSCHIAVO, ANDREW LUTZ, BLYTHE LUTZ, RAFAEL MACARIO, DOUGLAS P. MAYO JR, APRIL MCQUILLEN, CHRISTOPHER MCQUILLEN, STEVEN MEISSNER, JEFFREY MICHONSKI, ANDREW MICKLER, COREY MORRIS, STEVEN MURATORE, GREGORY MYERS, PETER NAPORA, JOEL PARDO, LANCE PHILLIPS, PATRICK PHILLIPS, GLEN PRONK, CHARLES RANDALL, PETER RAYMOND, JOSHUA ROBERTS, REBECCA ROBERTSON, JASON ROGERS, KIMBERLY SCHRECK, WILLIAM SERRITELLA, GENTRY SHELTON, TODD SNAZA, DONALD SORRENTINO, MARK SOUTH, MICHAEL STARK, ELIZABETH STONEKING, FORREST STOWELLS, BARBARA JANEICE SURBER, JOHN SWIFT, NICK TAYLOR, MARK THIEN, WILLIAM THOMPSON, BRANDON THOROUGHMAN, GERI TONDA, RICARDO TORRES ABARCA, GUSTAVO VERDES, JAMES VILLELLA, FARSHAD ZARRABIAN

VS.

ATLAS, FSI, ECA.

274.    Plaintiffs reallege and incorporates all paragraphs above as fully set forth herein.

275.    Defendants engaged in unlawful business practices in violation of Title VII § 42 U.S.C. § 2000e, et seq.

**Amended Complaint and Demand For Jury Trial-- 57**

276.     Defendants' actions left Plaintiffs with the impossible choice of either taking multiple of the three COVID-19 VBGT's, at the expense of their religious beliefs, or losing their livelihoods.  In doing so, Defendants have violated Title VII of the Civil Rights Act of 1964 by taking a tangible employment action against Plaintiffs based on their sincerely held religious beliefs and failing to engage in the interactive process.

277.     Plaintiffs are entitled to exercise their fundamental right to practice their religion, secured to them under the First Amendment of the Constitution of the United States.

278.     Plaintiffs are members of a protected class.

279.     Plaintiffs possess sincerely held religious beliefs that preclude them from receiving any of the experimental VBGT's for the multitude of reasons provided for in this Complaint.

280.     Plaintiffs were qualified to perform their duties as demanded by their employment.

281.     In good-faith, Plaintiffs undertook all requisite and applicable procedures to engage in the accommodation process with Defendants; however, Defendants failed to meet its obligations.

282.     Plaintiffs made repeated and passionate attempts dictated through both informal and formal mediums to prove and educate Defendants on their sincerely held religious beliefs as well as the repeated acts of filing formal declinations and religious accommodation requests and are qualified for religious protection that is cognizable under Title VII of the Civil Rights Act of 1964.

**Amended Complaint and**
**Demand For Jury Trial-- 58**

283.     Plaintiffs informed Defendants of their sincerely held religious beliefs and requested religious exemptions from the vaccine mandate that is applicable to them but were met with disdain.

284.     Defendant refused to engage in meaningful discussions regarding their beliefs, to identify any potential accommodations, and undertook tangible employment actions that disparately effected Plaintiffs on the basis of their religious beliefs.

285.     During the course of Plaintiffs' employment with Defendants and since the announcement of Defendants' VBGT mandate, Plaintiffs were subjected to discrimination, prejudice, hostility, harassment, and a hostile work environment because of their religious beliefs.  Disparate treatment for their religious beliefs included, but was not limited to:

(i)     Disparaging and unfavorable treatment by employees, supervisors, managers, and agents of Defendants as compared to similarly situated employees who received VBGT's;

(ii)    Harassing statements, threats, humiliation, and constructively stripping Plaintiffs of their important responsibilities, which were extended to other employees, and undermined their ability to effectively perform their job duties with Defendants as compared to similarly situated employees who received VBGT's;

(iii)   Consistent denial of Plaintiffs' religious accommodation requests;

(iv)    The arbitrary nature of granting and/or revocation of Plaintiffs' religious accommodation requests without substantive justification;

(v)     Plaintiffs were arbitrarily forced to wear political symbols, differentiating them from other employees who received one of the three experimental vaccines; and/or

(vi)    Certain Plaintiffs being constructively discharged for not receiving one of the three experimental vaccines, which are against their sincerely held religious beliefs.

286.    Defendants refused to engage in a meaningful interactive process with Plaintiffs regarding their religious accommodation requests; instead, only responded to Plaintiffs with incorrect conclusions reached by irrelevant logical fallacies or misunderstanding of Plaintiffs' sincerely held religious beliefs.

287.    Defendants did not engage with Plaintiffs regarding clarification of their requested relief but instead made broad assumptions based on misattributed facts in rendering its conclusions.

288.    Through Defendants actions, policies, employment practices, and conduct directed at Plaintiffs' religious faith, Defendants deprived the Plaintiffs of their Constitutional right to protection under law in violation of Title VII of the Civil Rights Act of 1964. Moreover, this deprivation was done intentionally, purposefully, and willfully.

289.    Defendants are liable to Plaintiffs for punitive damages because the acts herein described constitute actual malice and oppression.  Because Defendants deliberately proceeded to act in conscious or intentional disregard of the high probability of injury to the Plaintiffs or, conversely, deliberately proceed to act with indifference to the high probability of injury to the Plaintiffs.

290.     As a result of Defendants wrongful conduct, Plaintiffs have been and continue to be injured, suffering distress, humiliation, loss of prestige, mental anguish, emotional pain and suffering, and monetary and economic losses.

---- COUNT VI ----

**Violation of Title VII, 42 U.S.C. § 2000e, *et seq*.**
**Defendant's Disparate Treatment – Religious Discrimination**

**ESTATE OF LANE CAVINESS (LANDON CAVINESS AND MORGAN CAVINESS), PATRICK AKERLUND, MICHAEL ALZATI, ERIC W ANDERSON, MICHAEL G. BALLARD JR., CINDY BARRIONUEVO, LARRY JAMES BEARCE JR., ROBERT BELLMAN, BENJAMIN BENDIBURG, DOUGLAS BERRY, GREGORY BERRY, LYNETTE BOTHA, CALEB BUEHRER, RICHARD BULLOCK, JON CARROLL, VERGIL CASKEY, JAMES CASTOR, NATHAN CHARBONEAU, SHAWN CHURCHEL, JOEL COLON, MARK CONNOR, MATTHEW CRONAUER, FRED CUNNINGHAM, ROYAL DANZA, ELLIOT DE SOUSA, ERIC DESANDRO, STEVE DIXON, JAMES ERICKSON, LUIS ESQUIVIA, LEE ESTES, ROBERT FRATTI, JASON FRISBIE, TIMOTHY FRYE, JONATHAN FUSSLE, TONY GAMBOA, DENNIS GEBHARD, REZA GHODS, MARK GILMAN, ROBERT GIUDICE, ERIC GORDON, GREG GORDON, DANIEL GREER, REXFORD T. HEIVILIN, JASON HENNING, DAVID HEWSON III, TODD HONTZ, DANIEL HUDSON, ROGER JUSTICE, VENANCIUS KASSANDJI, JOHN KEARINS, RICKY KINDER, BETH KIRBY, ANDREAS N. KOUSTAS, CHAD KRAVETZ, CARL LINDBERG, JOSEPH LOSCHIAVO, ANDREW LUTZ, BLYTHE LUTZ, RAFAEL MACARIO, DOUGLAS P. MAYO JR, APRIL MCQUILLEN, CHRISTOPHER MCQUILLEN, STEVEN MEISSNER, JEFFREY MICHONSKI, ANDREW MICKLER, COREY MORRIS, STEVEN MURATORE, GREGORY MYERS, PETER NAPORA, JOEL PARDO, LANCE PHILLIPS, PATRICK PHILLIPS, GLEN PRONK, CHARLES RANDALL, PETER RAYMOND, JOSHUA ROBERTS, REBECCA ROBERTSON, JASON ROGERS, KIMBERLY SCHRECK, WILLIAM SERRITELLA, GENTRY SHELTON, TODD SNAZA, DONALD SORRENTINO, MARK SOUTH, MICHAEL STARK, ELIZABETH STONEKING, FORREST STOWELLS, BARBARA JANEICE SURBER, JOHN SWIFT, NICK TAYLOR, MARK THIEN, WILLIAM THOMPSON, BRANDON THOROUGHMAN, GERI TONDA, RICARDO TORRES ABARCA, GUSTAVO VERDES, JAMES VILLELLA, FARSHAD ZARRABIAN**

**VS.**

**ATLAS, FSI, ECA**

291.    Plaintiffs reallege and incorporates all paragraphs above as if fully set forth

herein.

292.    Defendants engaged in unlawful business practices in violation of Title VII § 42

U.S.C. § 2000e, et seq.

293.    Defendants' actions left Plaintiffs with the impossible choice of either taking

multiple of the three (3) COVID-19 vaccines, at the expense of their religious beliefs, or losing

their livelihoods.  In doing so, Defendants have violated Title VII of the Civil Rights Act of

1964 by taking a tangible employment action against Plaintiffs based on their sincerely held

religious beliefs and failing to engage in the interactive process.

294.    Plaintiffs are entitled to exercise their fundamental right to practice their

religion, secured to them under the First Amendment of the Constitution of the United States.

295.    Plaintiffs are members of a protected class.

296.    Plaintiffs possess sincerely held religious beliefs that preclude them from

receiving any of the experimental COVID-19 vaccines for a multitude of aforementioned

reasons.

297.    Plaintiffs were qualified to perform their duties as demanded by their

employment.

298.    In good-faith, Plaintiffs undertook all requisite and applicable procedures to

engage in the accommodation process with Defendants; however, Defendants failed to meet its

obligations.

299.    Plaintiffs made repeated and passionate attempts dictated through both informal

and formal mediums to prove and educate Defendants on their sincerely held religious beliefs

as well as the repeated acts of filing formal declinations and religious accommodation requests and are qualified for religious protection that is cognizable under Title VII of the Civil Rights Act of 1964.

300.     Plaintiffs informed Defendants of their sincerely held religious beliefs and requested religious exemptions from the vaccine mandate that is applicable to them but were met with disdain.

301.     Defendant refused to engage in meaningful discussions regarding their beliefs, to identify any potential accommodations, and undertook tangible employment actions that disparately effected Plaintiffs on the basis of their religious beliefs.

302.     During the course of Plaintiffs' employment with Defendants and since the announcement of Defendants' VBGT mandate, Plaintiffs were subjected to discrimination, prejudice, hostility, harassment, and a hostile work environment because of their religious beliefs.  Disparate treatment for their religious beliefs included, but was not limited to:

(i)     Disparaging and unfavorable treatment by employees, supervisors, managers, and agents of Defendants as compared to similarly situated employees who received one or more of the three VBGT's;

(ii)     Harassing statements, threats, humiliation and constructively stripping Plaintiffs of their important responsibilities, which were extended to other employees, and undermined their ability to effectively perform their job duties as compared to similarly situated employees who received one of the three VBGT's;

(iii)     Seeking to replace Plaintiffs' employment positions by individuals who did not seek religious and/or medical accommodation.

**Amended Complaint and
Demand For Jury Trial-- 63**

(iv)     Defendants disproportionately compensated employees who did not seek religious and/or medical accommodation.

(v)      Defendants disclosed medical documentation, medical information, and vaccine status to customers, Defendants employees, agents, and supervisors by forcing Plaintiffs to wear identifying political symbols, differentiating them from other employees who received one of the three VBGT's; and/or

(vi)     Certain Plaintiffs being constructively discharged for not receiving one of the three VBGT's, which are against their sincerely held religious beliefs as Christians.

303.     Defendants refused to engage in a meaningful interactive process with Plaintiffs regarding their religious accommodation requests; instead, only responded to Plaintiffs with incorrect conclusions reached by irrelevant logical fallacies or misunderstanding of Plaintiffs' sincerely held religious beliefs.

304.     Plaintiffs' sincerely held religious beliefs, synonymous with Title VII's meaning of the word "religion," were the motivating factor by which defendant engaged in such discriminatory conduct against Plaintiff.

305.     But-for Plaintiffs' religious beliefs, Defendant would not have engaged in such conduct that had a disparaging effect upon Plaintiffs and only individuals similarly situated to Plaintiffs.

306.     Defendants' conduct is evident that Defendants have engaged in a pattern or practice of discriminating against otherwise qualified individuals on the basis of their religion.

307.     This pattern of discrimination has a direct and disproportionate effect upon those individuals seeking religious protections based upon their sincerely held religious beliefs.

**Amended Complaint and
Demand For Jury Trial-- 64**

308.     Defendants' policies are only targeted at Plaintiffs and like-situated persons with conscientious objections to VBGT's.

309.     Through Defendants actions, policies, employment practices, and conduct directed at Plaintiffs' religious faith, Defendants deprived the Plaintiffs of their Constitutional right to protection under law in violation of Title VII of the Civil Rights Act of 1964. Moreover, this deprivation was done intentionally, purposefully, and willfully.

310.     Defendants are liable to Plaintiffs for punitive damages because the acts herein described constitute actual malice and oppression.  Because Defendants deliberately proceeded to act in conscious or intentional disregard of the high probability of injury to the Plaintiffs or, conversely, deliberately proceed to act with indifference to the high probability of injury to the Plaintiffs

311.     As a result of Defendants wrongful conduct, Plaintiffs have been and continue to be injured, suffering distress, humiliation, loss of prestige, mental anguish, emotional pain and suffering, and monetary and economic losses.

#### ---- COUNT VII ----

**Violation of Title VII, 42 U.S.C. § 2000e, *et seq*.**
**Defendants' Creation of a Hostile Work Environment**

**ESTATE OF LANE CAVINESS (LANDON CAVINESS AND MORGAN CAVINESS), PATRICK AKERLUND,  MICHAEL ALZATI,  ERIC W ANDERSON, MICHAEL G. BALLARD JR.,  CINDY BARRIONUEVO,  LARRY JAMES BEARCE JR.,  ROBERT BELLMAN, BENJAMIN BENDIBURG,  DOUGLAS BERRY,  GREGORY BERRY, LYNETTE BOTHA,  CALEB BUEHRER,  RICHARD BULLOCK,  JON CARROLL, VERGIL CASKEY,  JAMES CASTOR,  NATHAN CHARBONEAU, SHAWN CHURCHEL,  JOEL COLON, MARK CONNOR,  MATTHEW CRONAUER,  FRED CUNNINGHAM, ROYAL DANZA,  ELLIOT DE SOUSA, ERIC DESANDRO,  STEVE DIXON, JAMES ERICKSON,  LUIS ESQUIVIA, LEE ESTES,  ROBERT FRATTI, JASON FRISBIE, TIMOTHY FRYE,  JONATHAN FUSSLE,  TONY GAMBOA, DENNIS GEBHARD,  REZA GHODS, MARK GILMAN,  ROBERT GIUDICE, ERIC GORDON,  GREG GORDON, DANIEL GREER,  REXFORD T. HEIVILIN,  JASON HENNING,  DAVID HEWSON III,  TODD HONTZ,  DANIEL HUDSON,  ROGER**

**JUSTICE, VENANCIUS KASSANDJI, JOHN KEARINS, RICKY KINDER, BETH KIRBY, ANDREAS N. KOUSTAS, CHAD KRAVETZ, CARL LINDBERG, JOSEPH LOSCHIAVO, ANDREW LUTZ, BLYTHE LUTZ, RAFAEL MACARIO, DOUGLAS P. MAYO JR, APRIL MCQUILLEN, CHRISTOPHER MCQUILLEN, STEVEN MEISSNER, JEFFREY MICHONSKI, ANDREW MICKLER, COREY MORRIS, STEVEN MURATORE, GREGORY MYERS, PETER NAPORA, JOEL PARDO, LANCE PHILLIPS, PATRICK PHILLIPS, GLEN PRONK, CHARLES RANDALL, PETER RAYMOND, JOSHUA ROBERTS, REBECCA ROBERTSON, JASON ROGERS, KIMBERLY SCHRECK, WILLIAM SERRITELLA, GENTRY SHELTON, TODD SNAZA, DONALD SORRENTINO, MARK SOUTH, MICHAEL STARK, ELIZABETH STONEKING, FORREST STOWELLS, BARBARA JANEICE SURBER, JOHN SWIFT, NICK TAYLOR, MARK THIEN, WILLIAM THOMPSON, BRANDON THOROUGHMAN, GERI TONDA, RICARDO TORRES ABARCA, GUSTAVO VERDES, JAMES VILLELLA, FARSHAD ZARRABIAN**

**VS.**

**ATLAS, FSI, ECA**

312.    Plaintiffs reallege and incorporates all paragraphs above as if fully set forth herein.

313.    Defendants engaged in unlawful business practices in violation of Title VII § 42 U.S.C. § 2000e, et seq.

314.    Plaintiffs suffered mistreatment based on their protected religious characteristics.

315.    Defendants conduct was so severe or pervasive that it altered the terms, conditions, or privileges of employment.

316.    Plaintiffs were qualified to perform their duties as demanded by their employment.

317.    In good-faith, Plaintiffs undertook all requisite and applicable procedures to inform Defendant of the harassment and toxicity that was pervasive around the workplace.

318.    In an effort to achieve Defendants' political goal in conjunction with the Biden Administration, of total compliance to the vaccine mandate, Defendants' actions perpetuated a

work environment that an average person of ordinary sensibilities would find discriminatory through its egregious harassing conduct.

319.    Plaintiffs are entitled to exercise their fundamental right to practice their religion, secured to them under the First Amendment of the Constitution of the United States.

320.    Plaintiffs are members of a protected class.

321.    Plaintiffs possess sincerely held religious beliefs that preclude them from receiving any of the experimental COVID-19 vaccines for a multitude of aforementioned reasons and the Defendants repeated attempts to coerce Plaintiffs to go against their religious beliefs was unwelcomed harassment.

322.    Additionally, after refusal to submit to unwelcomed and offensive actions against Plaintiffs religious beliefs, Plaintiffs were subjected to such consistent discriminatory, harassing, coercing, and intimidating conduct undertaken by Defendants and was based on their sincerely held religious beliefs as a protected class under Title VII.  Plaintiffs were subjected to discriminatory and coercive conduct including but not limited to:

(i)      Offensive or derogatory jokes in the office;

(ii)     Severe and persistent pressure to take VBGT's;

(iii)    Unwelcomed comments about Plaintiffs' religious beliefs;

(iv)    Defendants intentional dissemination of Plaintiffs' PHI and vaccination status to customers, Defendants employees, agents, and supervisors by forcing Plaintiffs to wear identifying political symbols and badges, differentiating them from other employees who received VBGT's;

(v)     Abuse of power by Defendants, who compelled managers and supervisors to make unreasonable demands of Plaintiffs during the course of their job

**Amended Complaint and**
**Demand For Jury Trial— 67**

responsibilities;

(vi)     Psychological harassment by excluding Plaintiffs from staff gatherings, blatant

rejection of Plaintiffs' input on matters, and consistent letters and memoranda

threatening to terminate Plaintiffs.

(vii)    Retaliatory conduct in response to Plaintiffs' filing declination of vaccination

forms and filing religious accommodation forms;

(viii)   Defendants' creation of inflexible policies that directly target Plaintiffs on the

basis of their religion;

(ix)     Defendants' inability to train its agents, employees,  managers, or supervisors

concerning Title VII of the Civil Rights Act of 1964;

(x)      Failing to participate in a meaningful manner or otherwise engage with

Plaintiffs regarding their religious accommodation; and/or

(xi)     Certain Plaintiffs being constructively discharged for not receiving one of the

three VBGT's, which are against their sincerely held religious beliefs as

Christians.

323.     Plaintiffs' subjugation to such conduct was motivated on religious grounds that

were authorized, ratified, encouraged, and condoned by Defendants.

324.     Defendants egregious conduct toward Plaintiffs was so consistent, severe, and

pervasive that it altered the terms and conditions of employment and created a discriminatory

and abusive working environment.

325.     Defendants are responsible for the creation of a hostile work environment under

a theory of vicarious liability or direct liability.

**Amended Complaint and
Demand For Jury Trial-- 68**

326.    Defendants' were directly engaged in the consistent harassment and directly contributed to the creation of a hostile work environment.

327.    Accordingly, Defendants had actual knowledge of the actions of its managers and supervisors based on its involvement or, conversely, had constructive knowledge of such conduct based on the internal organizational policies advanced by Defendants.

328.    Over the course of their employment, Plaintiffs made numerous good-faith oral and written statements and/or complaints to their supervisors regarding Defendants' conduct toward Plaintiffs and their disparate treatment.

329.    Defendants, its supervisors, managers, and/or human resources department did not take any steps to assist in the alleviation of this harassing behavior and were in fact the primary sources of the harassment.

330.    Defendants, through its agents and employees, developed and encouraged animus against Plaintiffs because of their conscientious objections.

331.    The systematic discrimination, as previously set forth, further adversely affected the Plaintiffs through Defendants' promotion and reinforcement of religious stereotypes in the workplace by equating one's religious beliefs to that of an "Anti-Vaxxer."

332.    Defendant failed to take any prompt and effective action reasonably calculated to result in the prevention and remedy of this religious harassment, religious discrimination, and/or creation of a hostile work environment.

333.    Defendants' egregious discriminatory conduct, given the totality of circumstances, raises to a level that an objectively reasonable person could find constitutes a hostile work environment.

334.    The actions of Defendants, as set out herein, violate Title VII.

**Amended Complaint and
Demand For Jury Trial-- 69**

335.     As a result of Defendants conduct, Plaintiffs have been and continue to be injured, suffering distress, humiliation, loss of prestige, mental anguish, emotional pain and suffering, and monetary and economic loss.

336.     Defendants are liable to Plaintiffs for punitive damages because the acts herein described constitute actual malice and oppression.  Because Defendants deliberately proceeded to act in conscious or intentional disregard of the high probability of injury to the Plaintiffs or, conversely, deliberately proceeded to act with indifference to the high probability of injury to the Plaintiffs

337.     Filing complaints or charges with the EEOC is futile, however, most Plaintiffs have done so, and the remainder are in the process of doing so.


**---- COUNT VIII ----**

**Violation of Title 42 U.S.C. § 2000ff-1(a)(1) and (a)(2)**
**Defendants' Discrimination Based on Genetic Information**

**ALL PLAINTIFFS**
**VS.**
**ATLAS, FSI, ECA**

338.     Plaintiffs reallege and incorporates all the above paragraphs as if fully set forth herein.

339.     The Genetic Information Non-Discrimination Act ("GINA") prohibits discrimination based on genetic information. Specifically, it is an unlawful employment practices for an employer to fail to refuse to hire, or to discharge, any employee, or otherwise to discriminate against any employee with respect to the compensation, terms, conditions, or privileges of employment of the employee because of genetic information.

**Amended Complaint and**
**Demand For Jury Trial-- 70**

340.     GINA also prohibits employers from limiting, segregating, or classifying the employees of the employer in any way that would deprive or tend to deprive any employee of employment opportunities or otherwise adversely affect the status of the employee because of genetic information.

341.     Defendants Atlas, FSI, and ECA are employers within the meaning of GINA and at all times relevant hereto were engaged in an industry affecting commerce and has at all times had fifteen or more employees.

342.     Plaintiffs are employees as defined by GINA.

343.     Defendants have and continue to violate GINA by discriminating against Plaintiffs and other employees based on whether they have taken a VBGT.

344.     Defendants unlawfully discriminated and violated GINA when they took adverse employment actions against Plaintiffs because of their refusal to receive VBGT's.

345.     Defendants unlawfully discriminated and violated GINA when they afforded better opportunities (i.e., routes, schedules and benefits) and greater compensation to those who received VBGT's than Plaintiffs who did not, and requiring Plaintiffs to wear political symbols.

346.     Defendants engaged in these practices with malice and indifference to Plaintiffs' right to be free from discriminatory employment practices.

347.     Defendants are liable to Plaintiffs for punitive damages because the acts herein described constitute actual malice and oppression.  Because Defendants deliberately proceeded to act in conscious or intentional disregard of the high probability of injury to the Plaintiffs or, conversely, deliberately proceed to act with indifference to the high probability of injury to the Plaintiffs

**Amended Complaint and**
**Demand For Jury Trial-- 71**

348.     Defendants discrimination has harmed and will continue to harm Plaintiffs.

349.     Filing complaints or charges with the EEOC is futile, however, most Plaintiffs have done so and the remainder are in the process of doing so.

---- COUNT IX ----

**Violation of Title 42 U.S.C. § 2000ff-1(b)**
**Defendants' Acquisition of Genetic Information**

**ALL PLAINTIFFS**

**VS.**

**ATLAS, FSI, ECA**

350.     Plaintiffs reallege and incorporates all paragraphs above as if fully set forth herein.

351.     GINA makes it unlawful for an employer to request, require or purchase genetic information with respect to an employee or a family member of the employee.

352.     Polymerase Chain Reaction ("PCR") tests are used to amplify small segments of DNA which is genetic material. This is the same sort of test used for forensics, cloning, genome projects for mapping genes and DNA sequencing. Genetic test means a test that analyzes DNA, RNA or chromosomes for purposes of such as the prediction of disease or vertical transmission risks, or monitoring, diagnosis or prognosis.

353.     For genetic tests, the first step is extraction of genetic material from a human specimen either through blood, hair, or oral swab. This is the exact same process used in the PCR test required and requested by Defendants to detect the genetic material of COVID-19.

354.     Defendants have and continue to violate GINA when requesting and requiring the genetic information from their employees by mandating they take the PCR test. Defendants violated GINA by requiring Plaintiffs to have their genetic information collected via

**Amended Complaint and**
**Demand For Jury Trial-- 72**

nasopharyngeal or nasal swab (the swab scrapes the cells from inside the nasal cavity which has the genetic material from the person for whom the specimen is collected).

355.    Defendants violated GINA when they requested Plaintiffs VBGT status because they are asking for their genetic information.

356.    Defendants limited, segregated, discriminated or classified Plaintiffs based on their genetic information.

357.    Defendants have engaged in these practices with malice and indifference to Plaintiffs' right to be free from discriminatory employment practices.

358.    Defendants are liable to Plaintiffs for punitive damages because the acts herein described constitute actual malice and oppression.  Because Defendants deliberately proceeded to act in conscious or intentional disregard of the high probability of injury to the Plaintiffs or, conversely, deliberately proceed to act with indifference to the high probability of injury to the Plaintiffs

359.    Defendants discrimination has harmed and will continue to harm Plaintiffs.

360.    Filing complaints or charges with the EEOC is futile, however, most Plaintiffs have done so, and the remainder are in the process of doing so.

---- **COUNT X** ----

**Amended Complaint and
Demand For Jury Trial-- 73**

**Violation of Title 42 U.S.C. § 1983,** *et seq.*
**Defendants' Invasion of Privacy, Denial of Equal Protection and Due Process of Law**

**ALL PLAINTIFFS**

**VS.**

**ATLAS, FSI, ECA**

361.     Plaintiffs reallege and incorporates all paragraphs above as if fully set forth herein.

362.     Plaintiffs are citizens of the United States.

363.     At all times relevant hereto, Defendants were a government actor and a person acting under the color of law. That is, Defendants have taken decisive employment actions that have caused Plaintiffs harm that is so impregnated with governmental character that it can be regarded as government action. The government is compelling Defendants actions whether through incentive or threat.

364.     Defendants are also acting under color of law as they have conspired with Government officials to leverage Plaintiffs' Constitutional rights against them in an effort to achieve the Biden Administration's goal of achieving universal vaccination and to acquire Plaintiffs personal, genetic information.  Defendants and the U.S. Government have acted in lockstep and set in motion a series of acts inflicting violations of Plaintiffs' Constitutional rights. Through private and public meetings, executive orders, and unlawful coercion and duress, Defendants have acted in concert with the federal government at the expense of their employees including Plaintiffs.

365.     First, the right to privacy. The U.S. Supreme Court has recognized a right to personal privacy or a guarantee of certain areas or zones of privacy in the penumbra of the Bill of Rights, including the First, Fourth, Fifth and Ninth Amendments, and in the concept of liberty guaranteed by the first section of the Fourteenth Amendment. The applicable cases hold

**Amended Complaint and**
**Demand For Jury Trial-- 74**

that personal rights can be deemed fundamental or implicit in the concept of ordered liberty, and included in this is the guarantee of personal privacy.

366.     Article I, Section 23 of the Constitution of the State of Florida provides heightened privacy protections; greater than those provided in the Constitution of the United States

367.     Applied here, Plaintiffs fundamental right to privacy includes a reasonable expectation to be free from coercion or to be put in a state of undue influence and subjected to battery by Defendants by injection of an unwanted, experimental, VBGT into their body as a condition of employment.

368.     This privacy right also includes Plaintiffs' individual freedom to choose what information they want to share or disclose that is personal in nature; and the right to control the extent to which their medical information is shared and released. As a means of coercion, Defendants violated Plaintiffs' privacy rights when they broadcast their private information in memos, and published Plaintiffs PHI by forcing them to wear symbols.

369.     Next, equal protection. The Fourteenth Amendment, Section 1, to the United States Constitution provides:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

**Amended Complaint and**
**Demand For Jury Trial-- 75**

370.     After the announcement of EO 14042, vaccinated employees received preferential treatment compared to Plaintiffs who had not been vaccinated, which included increase in pay, preferential scheduling, additional benefits and privileges.

371.     Defendants knowingly and willfully discriminated against Plaintiffs who expressed religious concerns and treated persons who were vaccinated differently without lawful justification.

372.     Defendants, by allowing similarly situated Plaintiffs (those who are vaccinated) to retain their jobs, be paid more, have greater privileges/schedules, and not be required to wear political symbols, engaged in a facial deprivation of equal protection.

373.     While the vaccine mandate appeared neutral on its face, in practice it denies Plaintiffs equal protection under the law.

374.     Mandated VBGT's, compelled wearing of political symbols and repeated PCR testing are substantial burdens and are employment practices that fail to offer any significant health or safety benefit; thus there is no legitimate public interest promoted by Defendants conduct.

375.     Finally, substantive due process. The Fourteenth Amendment provides heightened protection against interference with certain fundamental rights and liberty interests. The liberty interests protected by the Due Process Clause of the Fifth Amendment includes not only the privileges and rights expressly enumerated by the Constitution and Bill of Rights, but also includes those fundamental human rights implicit in structured liberty.

376.     Plaintiffs have a fundamental liberty interest and right to bodily integrity and informed consent. This notion of bodily integrity has been embodied in the requirement that

**Amended Complaint and**
**Demand For Jury Trial— 76**

informed consent is a substantive component of due process and is generally required for medical treatment.

377.    The United States Constitution guarantees that government shall not "deprive any person of life, liberty, or property without due process of law," and precludes Defendants as State Actors from infringing certain fundamental liberty interests no matter the process provided, unless the infringement serves a compelling state interest and is narrowly tailored to achieve that interest.

378.    Here, Defendants actions are those of a State Actor and, while courts have recognized a compelling state interest in controlling the spread of infections, Defendants lack a compelling state interest to impose a VBGT mandate because the VBGT's produce negative sum outcomes.

379.    Assuming the VBGT's could be said to satisfy the interest of preserving public health, Defendants mandate is not narrowly tailored since it is not the least restrictive means necessary as numerous, less restrictive means exist that serve the public interest of protecting the public's health against COVID-19. For instance, antibodies acquired through prior infection provide protection, and as stated throughout, natural immunity has shown to provide greater protection than the COVID-19 vaccines. Service to the public interest can be accomplished through safer, less restrictive treatments, preventatives for early treatment, or medications, like the use of hydroxychloroquine, zinc and ivermectin.

380.    As a direct and proximate result of Defendants policies, practices, regulations and conduct, Plaintiffs have suffered harm.

381.    The conduct of Defendants as described herein represents a willful and conscious disregard for the treatment of private citizens under the law as to their right to privacy; and

**Amended Complaint and**
**Demand For Jury Trial– 77**

their actions shock the conscience of the average person and constitute an abuse of power that is malicious and purposeful.

382.     Defendants are liable to Plaintiffs for punitive damages because the acts herein described constitute actual malice and oppression.  Because Defendants deliberately proceeded to act in conscious or intentional disregard of the high probability of injury to the Plaintiffs or, conversely, deliberately proceed to act with indifference to the high probability of injury to the Plaintiffs.

#### ----  COUNT XI  ----

**Violation of Title 42 U.S.C. § 12101, *et seq*. and 29 U.S.C. § 794**
**Americans With Disabilities Act and Rehabilitation Act**

**MICHAEL ALZATI, MICHAEL G. BALLARD JR., GREGORY BERRY, ROYAL DANZA, LEE ESTES, DENNIS GEBHARD, LANCE PHILLIPS, JASON ROGERS**

**VS.**

**ATLAS**

383.     Plaintiffs reallege and incorporates all paragraphs above as if fully set forth herein.

384.      Defendant Atlas engaged in unlawful business practices in violation of Title 42 U.S.C. § 12101, *et seq*. and 29 U.S.C. § 794.

385.      Defendants' actions left Plaintiffs with the impossible choice of either taking multiple of the three COVID-19 VBGT's, contrary to medical advice, or losing their livelihoods.  In doing so, Defendants have violated the American Disabilities Act and Rehabilitation Act by taking a tangible employment action against Plaintiffs based on their medical conditions and failing to engage in the interactive process.

386.      Plaintiffs are members of a protected class.

387.     Plaintiffs medical conditions that precluded them from receiving any of the experimental VBGT's.

388.     Plaintiffs were qualified to perform their duties as demanded by their employment.

389.     In good-faith, Plaintiffs undertook all requisite and applicable procedures to engage in the accommodation process with Defendants; however, Defendants failed to meet its obligations.

390.     Plaintiffs made repeated and passionate attempts dictated through both informal and formal mediums to prove and educate Defendants on their medical conditions.

391.     Plaintiffs informed Defendants of their medical conditions and requested medical exemptions from the vaccine mandate that is applicable to them but were met with disdain.

392.     Defendant refused to engage in meaningful discussions regarding medical conditions.

393.     During the course of Plaintiffs' employment with Defendants and since the announcement of Defendants' VBGT mandate, Plaintiffs were subjected to discrimination, prejudice, hostility, harassment, and a hostile work environment because of their medical conditions.  Disparate treatment for their religious beliefs included, but was not limited to:

(i)     Disparaging and unfavorable treatment by employees, supervisors, managers, and agents of Defendants as compared to similarly situated employees who received VBGT's;

(ii)     Harassing statements, threats, humiliation, and constructively stripping Plaintiffs of their important responsibilities, which were extended to other

**Amended Complaint and
Demand For Jury Trial-- 79**

employees, and undermined their ability to effectively perform their job duties with Defendants as compared to similarly situated employees who received VBGT's;

(iii)    Consistent denial of Plaintiffs' medical accommodation requests;

(iv)    The arbitrary nature of granting and/or revocation of Plaintiffs' medical accommodation requests without substantive justification;

(v)    Plaintiffs were arbitrarily forced to wear political symbols, differentiating them from other employees who received one of the three experimental vaccines; and/or

(vi)    Certain Plaintiffs being constructively discharged for not receiving one of the three experimental vaccines, which are contrary to medical advice they received from doctors.

394.    Defendants refused to engage in a meaningful interactive process with Plaintiffs regarding their medical accommodation requests; instead, only responded to Plaintiffs with incorrect conclusions reached by irrelevant logical fallacies or misunderstanding of Plaintiffs' medical conditions.

395.    Defendants did not engage with Plaintiffs regarding clarification of their requested relief but instead made broad assumptions based on misattributed facts in rendering its conclusions.

396.    Through Defendants actions, policies, employment practices, and conduct directed at Plaintiffs' religious faith, Defendants deprived the Plaintiffs of their rights under the Americans With Disabilities Act and Rehabilitation Act. Moreover, this deprivation was done intentionally, purposefully, and willfully.

**Amended Complaint and
Demand For Jury Trial-- 80**

397.     Defendants are liable to Plaintiffs for punitive damages because the acts herein described constitute actual malice and oppression.  Because Defendants deliberately proceeded to act in conscious or intentional disregard of the high probability of injury to the Plaintiffs or, conversely, deliberately proceed to act with indifference to the high probability of injury to the Plaintiffs.

398.     As a result of Defendants wrongful conduct, Plaintiffs have been and continue to be injured, suffering distress, humiliation, loss of prestige, mental anguish, emotional pain and suffering, and monetary and economic losses.

---- **COUNT XII** ----

**Intentional Infliction of Emotional Distress**

**ALL PLAINTIFFS**
**VS.**
**ALL DEFENDANTS**

399.     Plaintiffs reallege and incorporates the paragraphs above as if fully set forth herein.

400.     Defendants acted intentionally or recklessly with respect to the conduct set forth in this Complaint.

401.     Defendants conduct has been and continues to be extreme and outrageous.

402.     As a proximate result of Defendants' actions, Plaintiffs have suffered severe emotional distress.

403.     The harm caused by Defendants was a reasonably foreseeable consequence of the Defendants conduct.

**Amended Complaint and**
**Demand For Jury Trial-- 81**

404.     Defendants are liable to Plaintiffs for punitive damages because the acts herein described constitute actual malice and oppression.  Because Defendants deliberately proceeded to act in conscious or intentional disregard of the high probability of injury to the Plaintiffs or, conversely, deliberately proceed to act with indifference to the high probability of injury to the Plaintiffs.

**----  COUNT XIII  ----**

**Negligent Infliction of Emotional Distress**

**ALL PLAINTIFFS**
**VS.**
**ALL DEFENDANTS**

405.     Plaintiffs reallege and incorporates all paragraphs above as if fully set forth herein.

406.     Defendants acted negligently and with "reckless and/or wanton disregard of the interests of Plaintiffs" with respect to the conduct set forth in this Complaint.

407.     As a proximate result of Defendants' conduct, Plaintiffs have suffered serious and/or severe emotional distress.

408.     The harm caused by Defendants was a reasonably foreseeable consequence of the Defendants conduct.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs demand a trial by jury on all issues so triable.

**Amended Complaint and**
**Demand For Jury Trial-- 82**

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

 (i)  An award of compensatory damages in appropriate amounts to be established at trial;

 (ii)  Punitive damages in a maximum amount as permitted by law and as determined by the jury;

 (iii)  Preliminary and permanent injunctive relief enjoining Defendants from any further COVID-19 related mandates or restrictions on Plaintiffs or any prospective future employees;

 (iv)  Awards of damages tailored to make vaccine-injured plaintiffs whole with regard to their manifest and likely future long-term injuries and disabilities;

 (v)  An award of attorneys' fees and costs associated with this action;

Dated: March 2, 2023.     Respectfully submitted,

            **John Pierce Law P.C.**

            By: _/s/ John Pierce_____

             John M. Pierce

             jpierce@johnpiercelaw.com

             21550 Oxnard St., 3rd Fl PMB 172

             Woodland Hills, CA 91367

             Telephone: (213) 349-0054

**Amended Complaint and
Demand For Jury Trial-- 83**